**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ROY THOMAS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 07-892 (RMC)** |
| ) | |
| **NATIONAL LEGAL PROFESSIONAL** ) | |
| **ASSOCIATES,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**MOTION FOR RELIEF FROM THE JUDGMENT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60**

COMES NOW the Defendants herein, NATIONAL LEGAL PROFESSIONAL

ASSOCIATES, CHARLES MURRAY, AND H. WESLEY ROBINSON, by and through the

undersigned counsel, and files this motion requesting that this Honorable Court vacate its order

of July 31, 2008 in which the Defendant's Motion for Leave to File a Late Response to the Show

Cause Order and Motions to Set Aside Defaults and to Dismiss were denied, and the Plaintiff

was granted favorable judgment.  The Defendant submits that the aforementioned Order of this

Court was issued in error, as it was based upon mistake and because the Defendant's possessed

excusable neglect regarding their untimely filings.  In support of this motion, the Petitioner

would show as follows:

1.  The Plaintiff filed a civil complaint against the Defendants herein on May 11,

   2007.

2.  On July 23, 2007, default was entered as to each Defendant, as the Defendants had

   not filed any response to the aforementioned complaint.

3.    On July 27, 2007, the Defendants each filed a motion to set aside the default, arguing that good cause existed to permit the setting aside of the default, that the Plaintiff would not be prejudiced by the set-aside, that the default was not willful, and that the Defendants possessed meritorious defenses.  The Defendants each also filed an answer to the complaint and a motion to dismiss the complaint.

4.    The Plaintiff failed to file timely responses to the Defendants' motions to dismiss and to set aside the default despite being given until October 29, 2007 to file said responses.  The Plaintiff was given an enlargement of time to file responses, until March 1, 2008.  The Plaintiff eventually filed his response on February 19, 2008. The Defendants promptly filed a reply to the response on March 3, 2008.

5.    On February 27, 2008, this Court entered an order for the Defendants to show cause as to why the motions to dismiss should not be denied.  Unfortunately, counsel for the Defendants was unaware that this order had been entered until reference was made to the order in a letter filed with the court by the Plaintiff on April 14, 2008.  Counsel thereafter verified that the order had been entered by reviewing the online docket, and promptly filed a motion for leave to file late response on April 21, 2008.  The Defendants also filed a response to the February 27 order on April 21, 2008.

6.    On July 31, 2008, this Court entered an order denying the Defendants' motions to set aside default and to dismiss, as well as for leave to file a late response.  The order also granted judgment to the Plaintiff.  The Defendants submits, as will be argued in the memorandum of law attached hereto, that the order contains

numerous mistakes that warrant relief from the order, including: (1) the court's finding that the contracted legal research was "erroneous"; (2) that the Plaintiff attempted to fire NLPA and his counsel but NLPA kept preparing "useless legal memoranda until it had exhausted [the Plaintiff's] retainer"; (3) the alleged impossibility of performance of the contract due to the Plaintiff's incarceration; (4) that fraud occurred; (5) that relief could be granted due to a lack of an arbitration agreement between the Plaintiff and Defendants Robinson and Murray; and (6) that the amount in controversy renders federal jurisdiction in this matter appropriate.  Further, the Defendants submits, as referenced in paragraph 5, that excusable neglect exists regarding the late filing to the order to show cause.  As such, the Defendants submit that they are entitled to relief from the July 31, 2008 order pursuant to Federal Rule of Civil Procedure 60(b).

WHEREFORE, in light of the foregoing and the arguments of law contained in the accompanying memorandum, the Defendants request that this Court to exercise its reasonable discretion under Rule 60 of the Federal Rules of Civil Procedure in granting the relief requested.

Respectfully submitted,

Charles A. Murray, Esq.
Attorney for the Defendants
27499 Riverview Center Blvd.,Suite 113
Bonita Springs, Florida 34134
(239) 985-4081 voice
(239) 985-4084 facsimile

3

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that a true and correct copy of the above and foregoing motion and accompanying memorandum has been delivered this 6th day of August, 2008, by regular United States Mail with sufficient postage affixed thereto to insure delivery thereof to the Plaintiff, Roy Thomas, 11340-007, P.O. Box 2068, United States Penitentiary, Inez, Kentucky 41224.

Charles A. Murray, Esq.
Attorney for the Defendants
27499 Riverview Center Blvd., Suite 113
Bonita Springs, Florida 34134
(239) 985-4081 voice
(239) 985-4084 facsimile

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROY THOMAS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 07-892 (RMC)** |
| ) | |
| **NATIONAL LEGAL PROFESSIONAL** ) | |
| **ASSOCIATES,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM OF LAW**

I.      **The Defendants Submit That the July 31, 2008 Order in this Case Was Based upon Mistake by the District Court, Failed to Properly Consider That the Defendants Possessed Excusable Neglect for the Late Filing, and  Would Result in 'Manifest Injustice' if not Vacated, Which Is Prohibited by Fed. R. Civ. P. 60(b).**

Fed. R. Civ. P. 60(b) states that

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . .  or (6) any other reason justifying relief from the operation of the judgment.

A.      **The Order at Issue Was Reached, at Least in Part, as a Result of Judicial Mistake, and must Therefore Be Vacated.**

The Defendants recognize that a Rule 60(b) motion is not a substitute for direct appeal, although such will be taken should this motion be denied.  See Browder v. Director, Illinois Department of Corrections, 434 U.S. 257, 263 n.7 (1978).  Therefore, Rule 60(b) motions seeking relief from judicial "mistakes," when filed after the deadline for an appeal, generally do

not qualify for Rule 60(b) relief.  See, e.g., <u>Scola v. Boat Frances, R., Inc</u>., 618 F.2d 147, 153-54 (1st Cir. 1980).  Fortunately, this motion is being filed before the filing deadline for an appeal, and is therefore appropriately raised under Fed. R.Civ.P. 60(b).  It is unassailable that the federal courts have powers under Rule 60 to correct their errors, within the prescribed time limits, in the exercise of sound discretion.  <u>United States v. Civil Aeronautics Board</u>, 510 F.2d 769 (D.C. Cir. 1975).

In the instant matter, this Court relied upon a number of mistaken beliefs in issuing its July 31, 2008 order.  Such facts include: (1) the court's finding that the contracted legal research was "erroneous"; (2) that the Plaintiff attempted to fire NLPA and his counsel but NLPA kept preparing "useless legal memoranda until it had exhausted [the Plaintiff's] retainer"; (3) the alleged impossibility of performance of the contract due to the Plaintiff's incarceration; (4) that fraud occurred; (5) that relief could be granted due to a lack of an arbitration agreement between the Plaintiff and Defendants Robinson and Murray; and (6) that the amount in controversy renders federal jurisdiction in this matter appropriate.  The Defendants submit that the culmination of these factors colored the decision of this Court, resulting in an unfavorable judgment against the Defendants.

### 1.    "Erroneous" Legal Research

This Court stated that "NLPA prepared, and forwarded to Mr. Murray a motion for sentence reduction, which erroneously argued that Mr. Thomas' sentence was illegal."  Order at 1.  At no point did this Court define what was "erroneous" about the research prepared by NLPA. As reviewed in sub-paragraph B below, NLPA prepared a case evaluation, a motion to correct an illegal sentence pursuant to D.C. Superior Court Criminal Rule 35(a), a successive motion under

D.C. Code § 23-110, and a motion under 28 U.S.C. § 2241. The successive motion under 23-110

and the motion pursuant to 28 U.S.C. § 2241 were undertaken at the Plaintiff's specific request.

As this Court is most likely aware, it is such motions that offer little chance of any success and if

anything was erroneous, it was the Plaintiff's request at having such research prepared against the

advice of counsel and NLPA.

     The Defendants submits that the case evaluation was not erroneous. The case evaluation

consisted of a review of the procedural and factual history of the Plaintiff's case. No claim has

been made that such was in error. The evaluation then reviewed potential procedural options that

could be used to obtain relief from the Plaintiff's conviction and sentence. No claim has been

made that this portion of the evaluation was in error. NLPA reviewed such procedures as a

motion under D.C. Superior Court Rule 35, a successive motion under D.C. Code 23-110, a

motion for new trial, and post-conviction motions under 28 U.S.C. §§ 2254 and 2255. Typically,

an evaluation would consist of a review of potential issues to be raised, but such was not

undertaken in this case, as the Plaintiff did not pay the full fee owed NLPA for the evaluation.

NLPA recommended that the Plaintiff's most viable options would be via a motion to correct his

illegal sentence or a successive motion under D.C. Code § 23-110. (Exhibit A - Partial Case

Evaluation). No claim has been made that this recommendation was in error.

     This Court claims that the motion for sentence reduction was erroneous. The motion was

prepared in July 2005, subsequent to the landmark decisions of Blakely v. Washington, 124 S.Ct.

2531 (2004) and United States v. Booker, 125 S.Ct. 738 (2005) being issued. As this Court is

well aware, these decisions changed the face of federal sentencing. Importantly, these decisions

made clear that the Sentencing Guidelines could not be applied in a mandatory fashion and that

sentences could not be increased beyond the statutory maximum based solely upon judicial fact

finding by a preponderance of the evidence.  Booker, *supra*.  While argument still exists as to the

meaning of "statutory maximum," NLPA argued that D.C. Code § 23-112, which was applied in

a quasi-mandatory fashion against the Plaintiff and gave the sentencing judge the ability to

arguably increase the statutory maximum sentence based upon his own whims, was improper.

(Exhibit B - Motion to Correct Illegal Sentence and Memorandum of Law in Support).

While the argument may have ultimately been unsuccessful, the Defendants submit that

such argument was not erroneous.  The legal principles involved were clearly identified.  In fact,

the research prepared by NLPA specifically noted that § 23-112 was not a mandatory applicable

sentencing stricture.  (Exhibit B - Memorandum at 10).  Would this Court prevent lawyers from

making good faith arguments for the extension of the law?  Such logic would have resulted in

African-American children being kept in separate schools from Caucasian children.  Such logic

would have resulted in the United States Sentencing Guidelines still being applied mandatorily.

Obviously, the law is ever changing, and attorneys must argue for the extension of law.  As such,

the arguments put forth by the Defendants in the motion to correct the illegal sentence were not

erroneous.

### 2.    The Plaintiff "Fired" the Defendants

In the Order at issue, this Court stated that the Plaintiff attempted to fire NLPA and his

counsel but NLPA kept preparing "useless legal memoranda until it had exhausted [the

Plaintiff's] retainer."  (Order at 1).  Such is ridiculous.  First, the Plaintiff did not attempt to fire

the Defendants until well after contracted for services had been provided.  Second, the only

useless legal memoranda prepared were done so at the Plaintiff's specific request and against the

advice of the Defendants.

The first work which was performed by NLPA for the Plaintiff was an evaluation of the Plaintiff's procedural options for seeking post-conviction relief.  Pursuant to an authorization from the Plaintiff, that evaluation was sent to Charles Murray to review.  Murray then notified the Plaintiff that he would review the evaluation and then advise the Plaintiff of the possibility of pursing post-conviction relief.  (Plaintiff's Exhibit A from Original Complaint).

The Plaintiff subsequently contracted with NLPA to provide research regarding a post-conviction action. (Plaintiff's Exhibit D from Original Complaint).  In a letter dated May 2, 2005, the Plaintiff notified Murray that he wished to pursue an action under 28 U.S.C. § 2241.  (Exhibit C - Letter, May 2, 2005).

On July 13, 2005, NLPA sent to Murray a draft of a motion to correct illegal sentence pursuant to D.C. Superior Court Criminal Rule 35(a).  Prior to July 19, 2005, the Plaintiff contacted NLPA and inquired as to why such a motion was prepared, rather than one pursuant to D.C. Code § 23-110.  In a letter dated July 19, 2005, NLPA explained that it was their understanding that a motion pursuant to Rule 35(a) would be more beneficial, given the fact that the Plaintiff had already filed one motion under § 23-110, and it would be more difficult to have issues considered in a successive motion, as such successive motions were not typically entertained.  (Exhibit E - Letter, July 19, 2005).  On July 25, 2005, the Plaintiff sent a letter to NLPA, which was forwarded to Murray.  In this letter, the Plaintiff outlined several problems he had with the research prepared by NLPA.  The Plaintiff stated that he no longer wanted Murray to file anything on his behalf and that he wanted a refund of $4,500 of the $6,500 that was sent to NLPA and $2,000 of the $2,500 that was sent to Murray. (Plaintiff's Exhibit D from Original

Complaint).  The Plaintiff asserts in this letter that the money was sent by him and his family.

The Defendants note that the amount of the requested refund is only $6,500.  Even if the entire

fees paid by the Plaintiff were refunded, the amount paid was only $9,000.  Of course, subtracted

from the $9,000 must be the $1,250 paid for the evaluation, for which no complaints were made

and after reviewing, the Plaintiff was apparently satisfied enough to again hire the Defendants.

For some reason, the Plaintiff was awarded $10,000.

     Without requesting payment of any additional funds, as noted on Additional Sheet Page

Three of the Plaintiff's Complaint, NLPA subsequently prepared additional research, in the form

of a motion under D.C. Code § 23-110.  (Exhibit F - Motion pursuant to D.C. Code § 23-110).

In a letter dated August 8, 2005, the Plaintiff stated that he did not want Murray to file the motion

and again requested a refund.  (Exhibit G - Letter, August 8, 2005).

     NLPA provided still more research, again without requesting any additional payment, in

the form of motion under 28 U.S.C. § 2241, which was sent to Murray on August 23, 2005.

(Exhibit H - Letter, August 23, 2005; Exhibit I - Petition pursuant to 28 U.S.C. § 2241).

     On a letter dated August 26, 2005, NLPA advised that in an good faith effort to

accommodate the Plaintiff, NLPA had prepared the three different motions requested by the

Plaintiff, to wit: D.C. Superior Court Criminal Rule 35(a),  § 23-110 and § 2241. Both Defendant

Murray and NLPA repeatedly advised the Plaintiff that they were committed to continuing to

work with the Plaintiff in making whatever modifications and revisions necessary to properly

present the Plaintiff's issues to the court.  (Exhibit J - Letter, August 26, 2005).

     Even if the successive § 23-110 and § 2241 were useless, these motions were both

requested by the Plaintiff and were completed without the collection of any additional funds.  As

such, the Defendants did not continue to work until the retainer was exhausted, but continued

working well beyond the exhaustion of the retainer.  Further, as noted, the research

recommended and prepared by NLPA was not useless, but argued for a good faith extension of

the law.  It was only the motions requested by the Plaintiff that were ill advised and stood no

chance of success, as was recognized by the Defendants and made aware to the Plaintiff in an

effort to help the Plaintiff obtain relief.  As such, NLPA did not continue to exhaust the retainer

with the preparation of useless research after having been fired.

### 3.    Impossibility of Performance

In the Order at issue, this Court raised the specter of impossibility of performance of the

contract on the part of the Plaintiff.  Order at 2.  Specifically, this Court had concerns that the

Plaintiff would not be able to participate in the agreed upon arbitration should any dispute arise

between the parties at issue.  The agreement to arbitrate, contained in Plaintiff's Exhibit F, reads

as follows:

> Any and all disputes arising out of this agreement, or from any
> other relationship between NLPA and You, shall be resolved by
> binding arbitration before the Better Business Bureau, of which
> NLPA is a member, following the Federal Arbitration Act (9
> U.S.C. 1), as it may be amended.

The Defendants submit, and offer as support correspondence from the Better Business

Bureau, that arbitrations can be conducted by telephone.  (Exhibit K - Letter, BBB).  Further,

Rules 4 and 5 of the Better Business Bureau Rules of Arbitration permit for telephone

arbitrations, as well as for answers, counterclaims and arguments to be presented in writing.  See

<http://www.us.bb.org/WWWRoot/SitePage.aspx?site=113&id=cc197d4d-694c-496c-a32f-

977d9d9f278d> (Exhibit L - BBB arbitration Rules).  As this Court is aware, the Plaintiff is not

foreclosed from submitting writings.  Although a rare occurrence, the arbitrations in which

NLPA has been involved have been conducted entirely by telephone.  These arbitrations rarely

last longer than thirty minutes.  As such, the Defendants submits that impossibility of

performance as a means to escape the arbitration clause in the Agreement at issue is an invalid

argument.

#### 4.    Fraud

In the Order at issue, this Court raised the specter of fraud on the part of the Defendants

that may void the Agreement.  Order at 2.  The Defendants submits that they have not engaged in

any fraudulent conduct.  Further, the Plaintiff's complaint does not set out a clear cause of action

for fraud, but does make a vague reference to fraudulent acts committed by the Defendants.

While these acts are described simply as the means by which the contract was breached, the

following analysis will be provided as though these illusory statements constitute a separate

claim for relief.

Rule 9(b) of the Federal Rules of Civil Procedure states that, in order to allege fraud, the

circumstances constituting the fraud must be stated with particularity.  In order to comply with

this rule, a plaintiff, at a minimum, must "state the time, place and content of the false

misrepresentations, the fact misrepresented, and what was retained or given up as a consequence

of the fraud."  United States v. Martin-Baker, 389 F.3d 1251, 1256 (D.C. Cir., 2004).

In the instant case, the Plaintiff has failed to plead his fraud claim with particularity.  The

Plaintiff merely states that his funds were fraudulently taken.  The Plaintiff does not set forth

what false representation was made.  The Plaintiff makes a statement about being deceived, but

claims that this deception came from the Defendants not taking his calls.  It would seem unlikely

that the Defendants could have deceived the Plaintiff if the Plaintiff was unable to speak to the Defendants. Clearly, this does not satisfy the particularity requirement, as such a statement does not even allege that a false misrepresentation was made.

Setting aside the frivolousness of the Plaintiff's fraud claim, and the fact that such a claim has not been made with the required specificity, this claim would also be subject to arbitration, as it equates to a cause of action covered by the agreement to arbitrate, which states that the parties "agree to submit any dispute arising under this agreement, with the exception of disputes alleging criminal or statutory violations to binding arbitration . . . " The Plaintiff has essentially claimed that he paid money for services that were not satisfactory, and therefore claims he should get his money back. By asserting that the funds were fraudulently kept by the Defendants, the Plaintiff has merely described the means by which he feels the Defendants breached the contract. Regardless, as all of the alleged actions by the Defendants were related to the performance of contractual obligations, the mere labeling of such actions as fraudulent does not remove such actions from the bounds of the agreement to arbitrate, as such claims still constitute a dispute arising out of the agreement.

The Defendants further submit that they are reputable workers in the legal field, and do not engage in fraudulent conduct. Charles Murray is licensed to practice in numerous courts and jurisdictions, including the states of Florida and Maryland, the District of Columbia Superior Court and Court of Appeals, various federal district courts, every federal circuit court except for the Second and the Federal Circuits, the United States Court of Federal Claims, the United States Supreme Court, and various military tribunals. Mr. Murray is a graduate of the United States Military Academy. Mr. Murray received his juris doctorate from the University of Maryland in

9

1971.  (Exhibit M - Murray Letterhead).  Attached is a list of recent successes had by Mr. Murray

in a number of cases, including having criminal charges dismissed against his clients (Florida v.

Rende, docket no. 03-3236-CF (20th Judicial Circuit)), having sentences reduced (Florida v.

Moody, docket no. 97-4429T (12th Judicial Circuit)), and winning acquittals after a jury trial

(United States v. Sineriz, docket no. 97-CR-79-ALL (M.D. Fl)).  Further, Mr. Murray notes on

his victory list that "[t]he hiring of a lawyer is an important decision that should not be based

solely upon advertisement."  (Exhibit N - Murray Victory List).  Clearly, Mr. Murray is an

attorney whom is engaged in the pursuit of justice, and who eschews fraudulent behavior.

　　　　NLPA was originated in 1986 by H. Wesley Robinson.  During its more than twenty

years of assisting criminal defendants, NLPA has assisted in obtaining relief for hundreds of

individuals at all stages of criminal proceedings, from pre-trial to sentencing to appeal to

collateral filings.  NLPA points to the favorable decision obtained in cases such as Maurice

Trotter v. United States, 128 S.Ct. 864 (2008) and Mardell Trotter v. United States, 128 S.Ct.

870 (2008) (the Trotters' sentences were vacated based upon the improper discrepancy between

crack and powder cocaine, and the cases were remanded for re-sentencing with the district court);

and Joseph v. United States, case no. 06-22461-CIV-SEITZ/McAILEY (S.D.Fl. 2007)

(reinstatement of appellate rights due to counsel's failure to file a requested notice of appeal).

Should this Court wish to obtain a full list of NLPA's victories, NLPA would be happy to

provide said documentation.

　　　　Based on the foregoing facts of this case, in conjunction with the Defendants long history

of honorable and admirable legal work, it is clear that the Defendants did not engage in fraud.

### 5.    The Lack of an Arbitration Agreement Between the Plaintiff and Defendants Robinson and Murray.

In the Order at issue, this Court raised the notion that there was not an arbitration agreement between the Plaintiff and Defendants Robinson and Murray.  Order at 2.  The Defendants submit that Robinson was acting in this matter as an employee of NLPA, and cannot therefore be subject to a civil suit outside the bounds of the Agreement which the Plaintiff signed with NLPA.  Defendant H. Wesley Robinson acted in this matter in his role as senior management consultant of National Legal Professional Associates, a paid position with NLPA.  As such, Mr. Robinson submits that either one of two situations exists: (1) Mr. Robinson does not have an arbitration agreement with the Plaintiff, as Mr. Robinson did not enter into an Agreement separate from that NLPA entered with the Plaintiff.  As such, Mr. Robinson could not have breached a contract, as he did not enter into a contract.  Further, Mr. Robinson, being treated as a separate entity from NLPA, received no funds in this matter and hence cannot be held liable as a result of this Court's order; or (2) Mr. Robinson does have an arbitration agreement with the Plaintiff, as Mr. Robinson was acting as an employee of NLPA in this matter.  As such, as previously noted, the Court's July 31 order is in error in failing to allow this matter to proceed to arbitration.

As either an arbitration agreement exists concerning Mr. Robinson or no cognizable cause of action exists as to Mr. Robinson, given the lack of any contractual obligation or fees received by Mr. Robinson, judgment should not have been entered against Mr. Robinson.

### 6.    The Amount in Controversy

In the Order at issue, this Court found that the Plaintiff's claims of $90,000 in punitive

11

damages was proper, and that such rendered jurisdiction proper in the federal judiciary.  Order at

1.  The Plaintiff sets forth in his complaint that this Court had jurisdiction, pursuant to an

existence of complete diversity of citizenship.  The Plaintiff asserts that the amount in

controversy exceeds $75,000.00.  Indeed, in his claim for relief, the Plaintiff seeks a total of

$100,000.00 in damages, 90% of which is sought in the form of punitive damages.  The

Plaintiff's claim for such damages cannot be viewed as being made in good faith.

Under 28 U.S.C. § 1332(a), federal courts have jurisdiction over civil actions involving

citizens of different states, where the amount in controversy exceeds $75,000.00.  This amount is

determined by the amount claimed by the plaintiff, so long as the amount is claimed in good

faith.  St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938).  Still, "if it

'appears to a legal certainty that the claim is really for less than the jurisdictional amount,'

dismissal is justified."  Hunter v. D.C., 384 F. Supp.2d 257, 260 (D.D.C. 2005) (citing St. Paul

Mercury Indem. Co., 303 U.S. at 288).

With regard to punitive damages, such awards are given "in a tort action if the

defendant's tortious behavior is accompanied by 'fraud, ill will, recklessness, wantonness,

oppressiveness, wilful disregard for the plaintiff's right  . . . '" Hunter, 384 F. Supp.2d at 261

(citing Butera v. D.C., 344 U.S. App. D.C. 265 (2001).  In the instant case, the Plaintiff does

make some illusory references to fraudulent actions by the Defendants, which are without

support as argued above.  However, in order to reach the threshold amount of $75,000, based

upon his claim for only $10,000 in compensatory damages, the Plaintiff would have to receive

$65,000 in punitive damages.  Applying principles of due process, courts will not award punitive

damages in such amounts that they would be construed as "grossly excessive."  Hunter, 384 F.

Supp.2d at 261.  While no bright line rule exists to determine what constitutes a "grossly excessive" punitive damages award, courts have typically found that a punitive damage award which is ten times more than the compensatory damages awarded would certainly be a violation of due process.  Id. at 261-262.

In the instant case, in order to reach the threshold total amount of $75,000.00, the Plaintiff would have to claim a right to $65,000.00.  This represents an amount 6.5 times as much as the claimed amount of compensatory damages.  While this ratio is less than 10 to 1, given the circumstances of the case, such a punitive award would certainly violate the principles of due process.  Aside from the sheer size of such an award, it is also necessary to consider the fact that such an award would essentially be for a mere breach of contract claim.

As shown previously, the Plaintiff's complaint, despite making other illusory claims, essentially sets forth a claim that the Defendants breached their contractual obligations.  In fact, at the conclusion of his complaint, the Plaintiff even states that his claim for $100,000.00 was due to "Defendants' breach of contractu[]al agreements."  District of Columbia courts have held that, "where the basis of a complaint is . . . a breach of contract, punitive damages will not lie, even if it is proved that the breach was willful, wanton, or malicious."  Sere v. Group Hospitalization, 443 A.2d 33 (Ct. App. D.C. 1982).  There can be no dispute that the basis of the Plaintiff's complaint is for breach of contract.  Therefore, punitive damages are not available.

Since punitive damages are not available in a breach of contract claim, the only amount claimed by the Plaintiff in good faith is $10,000.  As such, the amount in controversy requirement was not met under 28 U.S.C. § 1332(a).  Therefore, jurisdiction on the basis of diversity of citizenship was not proper.  As such, this Court did not have jurisdiction in this

13

matter.

Based upon the numerous mistakes of fact and law by the Court in this matter, the

Defendants request that they obtain relief from the order at issue, and that said order be vacated.

**B.    The Order at Issue Was Reached, after a Late Filing by the Defendants That
Was the Result of Excusable Neglect**.

According to Federal Rule of Civil Procedure 60(b), a party can obtain relief from

judgment when said judgment was obtained as a result of excusable neglect on the part of the

movant.  In Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S.

380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993), the Supreme Court broadly defined

"excusable neglect" to apply whenever "excusable neglect" appears in the federal procedural

rules.  In Pioneer, the Court stated then when reviewing claims of excusable neglect, the

following factors must be considered, in that excusable neglect:

> is at bottom an equitable one, taking account of all relevant
> circumstances surrounding the party's omission. These include . . .
> the danger of prejudice to the [defendant], the length of the delay
> and its potential impact on judicial proceedings, the reasons for the
> delay, including whether it was within the reasonable control of the
> movant, and whether the movant acted in good faith.

Pioneer, 507 U.S. at 395.

The Defendant submits that the required pleadings in response to the February 27, 2008

order of the Court were filed within one week of the Defendants becoming aware that such

filings were necessary.  The Defendant is not aware of any prejudice against the intervening

rights against the Plaintiff.  The Defendants note that the Plaintiff failed to file timely responses

to the Defendants' motions to dismiss and to set aside the default.  The Plaintiff failed to respond

despite being given from July 27, 2007 until October 29, 2007 to file said responses.  The

Plaintiff was given an enlargement of time to file responses, until March 1, 2008.  The Plaintiff

14

eventually filed his response on February 19, 2008.  In giving the Plaintiff more than seven months to file appropriate responses, it seems a bit unusual that the Defendants filings, filed two months from the February 27th order, would be judged as harshly as they have been. Accordingly, in the interests of equity, the Defendants submits that their April 28, 2008, should have been considered on the merits, and that judgment should not have been entered against the Defendant.

The Defendants next submit that good cause existed in this matter permitting for the setting aside of the entry of default.  First, the default was not willful.  Counsel for the Defendants received a copy of a letter from the Plaintiff to this Court.  According to that letter, dated April 14, 2008, this Court had entered an order on February 27, 2008, for the Defendants to show cause as to why the Court should not deny the motions to dismiss.  Unfortunately, prior to the reading of this letter, counsel was not aware of any such show cause order.  Counsel was not aware of having ever received a copy of the order.  However, after receiving the Plaintiff's letter, and reviewing the online docket, counsel quickly filed the necessary pleadings.  Second, a set-aside would not prejudice the Plaintiff, as it does not prevent the Plaintiff from pursuing any of his arguments or gathering evidence in support thereof.  Third, the Defendants possess meritorious defenses to the claims, as have been raised in the numerous filings in this matter. Therein, the Defendants argue that the Plaintiff failed to state a claim upon which relief can be granted, and that this Court lacks subject matter jurisdiction over the claims asserted in the Plaintiff's complaint.  As such, this court should utilize the excusable neglect portion of Rule 60(b) and vacate the July 31, 2008 order.

### C.    The Order at Issue, If Permitted to Stand, Would Result in a Manifest Injustice.

The Defendants submit that the instant case falls within the purview of Rule 60(b)(6), which allows for this court to grant relief based upon "any other" reason not mentioned

throughout Rule 60(b). This safety provision allows for the court to correct those situations in which an equitable remedy is necessary to avoid manifest injustice. Kramer v. Gates, 481 F.3d 788 (D.C. Cir. 2007). Generally, a movant under Fed.R.Civ.P. 60(b)(6) must demonstrate exceptional circumstances that have caused a prevention of relief through the "usual channels." Brooks v. Ferguson-Florissant School District, 113 F.3d 903, 904-05 (8th Cir. 1997).

In the instant case, the Petitioner has submitted meritorious claims that were not properly evaluated by the district court. Clearly, relief has been prevented in this matter through the usual procedures in the district court, mandating relief under Fed.R.Civ.P. 60(b)(6). As such, the Petitioner submits that this court should grant the instant motion for relief, as the arguments as presented are well supported in fact and law.

## CONCLUSION

_____The Petitioner submits that the instant situation is ripe for relief pursuant to Fed. R. Civ. P. 60(b). The district court effectively denied the Petitioner access to the channels of relief by applying improper facts and law to reach its decision. Had the court applied the proper facts and law in this matter, it would have been clear that the Defendants possessed excusable neglect regarding their untimely filing, that this Court lacked jurisdiction to hear the case, and that the Plaintiff's claims are patently ridiculous. For these reasons, the Defendants requests that this Court grant their motion for relief.

Respectfully submitted,

Charles A. Murray, Esq.
Attorney for the Defendants
27499 Riverview Center Blvd., Suite 113
Bonita Springs, Florida 34134
(239) 985-4081 voice
(239) 985-4084 facsimile

# **EXHIBITS**

Exhibit A - Partial Case Evaluation

Exhibit B - Motion to Correct Illegal Sentence and Memorandum of Law in Support

Exhibit C - Letter, May 2, 2005

Exhibit D - Letter, July 13, 2005

Exhibit E - Letter, July 19, 2005

Exhibit F - Motion pursuant to D.C. Code § 23-110

Exhibit G - Letter of August 8, 2005

Exhibit H - Letter of August 23, 2005

Exhibit I - Petition pursuant to 28 U.S.C. § 2241

Exhibit J - Letter of August 26, 2005

Exhibit K - Letter from BBB

Exhibit L - BBB Arbitration Rules

Exhibit M - Murray Letterhead

Exhibit N - Murray Victory List

E:\Clients\2006\Thomas, Roy\8-6-08 Mot Relief from judgment.wpd

**Exhibit A - Partial Case Evaluation**

**NATIONAL LEGAL PROFESSIONAL ASSOCIATES**
*Margaret A. Robinson Advocacy Center*
*11331 Grooms Road, Suite 1000*
*Cincinnati, OH 45242*
Phone: 513-247-0082  ● Fax (513) 247-9580
Website: www.NLPA.com  ● E-mail: contactus@nlpacincinnati.com

### MEMORANDUM

**TO:**        Charles Murray, Attorney at Law

**FROM:**    National Legal Professional Associates

**DATE:**    April 1, 2004

**RE:**        Partial Evaluation of the Case of Roy Thomas

---

**RECOMMENDATION:**   Although a few options exist, NLPA believes that Mr. Thomas
may have available avenues of relief under Rule 35 for reduction or
modification of sentence, or a successive post-conviction motion
under District of Columbia Code § 23-110.

**FILING DEADLINE:**        To be determined.

---

We have now completed a partial analysis of the case of Roy Thomas, and we are

informing you of possible issues that may be addressed in post-conviction litigation.  As this

memorandum indicates, National Legal Professional Associates believes that although more than

eight years have passed since Mr. Thomas' 1995 conviction, he may have the ability to return to

court and to fight for relief.  A major threshold issue for Mr. Thomas, and you as his counsel, is

to identify the best procedural avenue to pursue such relief.  Based upon our review of Mr.

Thomas' file, we believe that, depending on whether Mr. Thomas has already filed a pro se Rule

35 motion, his best option would be to proceed with any and all viable issues under a successive

motion in the District of Columbia Superior Court, pursuant to D.C. Code § 23-110. Otherwise, Mr. Thomas may be able to pursue relief under Superior Court Criminal Rule 35.

We are sending a copy of the evaluation to Mr. Thomas' so that he will be aware of our analysis and opinions in this case. Hopefully, upon receipt of this memorandum, all interested parties can discuss the potential issues and our recommendations regarding the possibility of litigation. If Mr. Thomas wishes to retain NLPA to pursue the recommendations set forth in this evaluation, he should contact NLPA and make the necessary arrangements as soon as possible.

## **SCOPE OF THE REVIEW**

In conducting research for Mr. Thomas' evaluation, NLPA has reviewed the following documents:

(1)    correspondence from Mr. Thomas to National Legal Professional Associates;

(2)    District of Columbia, Court of Appeals docket information;

(3)    trial and hearing transcripts;

(4)    renewed consent motion to hold appeal in abeyance finding disposition of motion to vacate judgement pursuant to D.C. Code § 23-110 (4/18/97);

(5)    defendant's reply to opposition motion to vacate judgement (1/12/98);

(6)    memorandum opinion and order (10/8/98);

(7)    appeal from the superior court of the District of Columbia, Criminal Division (9/8/99);

(8)    District of Columbia Court of Appeals opinion (4/13/00);

(9)    corrected copy of petition for rehearing with a suggestion for rehearing en banc (5/26/00);

(10)    governments opposition to appellant's petition for rehearing en banc (9/12/00);

(11)    motion to recall the mandate for ineffective assistance of appellate counsel (3/14/02);

(12)    brief, writ of certiorari (4/3/03); and

(13)    summary dispositions on writ of certiorari (10/6/03).

Please note that the issues discussed and identified in this evaluation are subject to change upon further review of the foregoing documents and, more importantly, any additional materials that may be provided by Mr. Thomas. Such materials could include but are not limited to appellate briefs, any pretrial motions, discovery materials, additional transcripts, the presentence report, or any further post-conviction materials.

Because a review of additional materials could result in the identification of additional grounds for challenging Mr. Thomas' conviction and sentence, the issues contained in this memorandum may be consolidated, eliminated, or expanded to include additional issues if we are retained to assist counsel in the preparation of a post-conviction relief action.

## **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

On the evening of September 21, 1990, Mr. Thomas and three other individuals allegedly drove past the corner of Eleventh and Lamont Streets where Delanta Toney and Dante Kennedy were conversing next to some telephone booths outside of Arthur's grocery store. A few minutes later, Mr. Thomas and the other three individuals were seen walking along Eleventh Street from Park Road toward the corner, where Tony and Kennedy were standing. Harvey King allegedly observed at least one of the men with a pistol. All the men then approached Toney and Kennedy and exchanged words. Ultimately, Toney was shot and injured and Kennedy was shot and killed. After the shooting, Mr. Thomas and the other three men allegedly ran away in an easterly direction towards Sherman Avenue. Mr. Thomas was later identified by witnesses as one of the shooters and the person who spoke to the victim.

3

On February 16, 1991, a District of Columbia grand jury returned a nine count indictment against Mr. Thomas and two co-defendants. The charges included: first degree murder while armed (D.C. Code §§ 22-2401 and 22-3202); assault with intent to murder while armed (D.C. Code §§ 22-503, 22-2403 and 22-3202); assault with intent to kill while armed (D.C. Code §§ 22-501 and 22-3202); three counts of carrying a pistol without a license (D.C. Code § 22-3204 (a)); and three counts of possession of a firearm during the commission of a crime of violence or dangerous offense (D.C. Code § 22-3204 (b)). The indictment did not charge conspiracy.

On October 1, 1992, Mr. Thomas was convicted by a jury in the Superior Court of the District of Columbia, Criminal Division, for the lesser included offenses of assault with a dangerous weapon, carrying a pistol without a license, and possession of a firearm during the commission of a crime of violence or dangerous offense. The jury was unable to reach a verdict on the first-degree murder while armed charge and on October 6, 1992, the trial court declared a mistrial on that count.

On February 10, 1993, Judge Taylor sentenced Mr. Thomas to concurrent terms of imprisonment totaling five to fifteen years, one year imprisonment for carrying a pistol without a license, and separate five to fifteen year terms of imprisonment for assault with a dangerous weapon and possession of a firearm during the commission of a crime of violence.

On June 13, 1995, Mr. Thomas was retried for the first-degree murder while armed charged.

On June 18, 1995, Mr. Thomas was found guilty by jury on the first-degree murder while armed charge.

On June 27, 1995, Judge Burnett sentenced Mr. Thomas to twenty years to life to run

4

consecutive the sentence being served.

On July 6, 1995, Mr. Thomas filed a timely notice of appeal. However, prior to briefing

the appeal, Mr. Thomas filed a District of Columbia postconviction motion pursuant to § 23-110,

which resulted in a stay of the appeal. Mr. Thomas raised the following issues in his § 23-110

motion:

1.    Ineffective assistance of counsel resulted in a structurally defective
      trial mechanism.

      A.    Counsel's deficient performance resulted in a constructive
            amendment of the indictment which permitted the prosecutor to
            effectively alter the charge against Mr. Thomas to fit the
            government's proof.

      B.    The prosecutor persuaded the trial court to take action which
            effectively amended the indictment without meaningful opposition
            from the defense.

      C.    The grand jury clause limited the possible basis for Mr. Thomas'
            conviction to permit jury findings solely on the elements of the
            crime as charged by the grand jury.

      D.    Conspiracy to commit an assault is not a lesser included offense of
            first-degree murder while armed.

      E.    Conspiracy is a separate and distinct statutory offense unlike aiding
            and abetting; conviction of a substantive crime, based on
            conspiracy findings requires an indicted conspiracy.

      F.    Counsel's deficient performance resulted in the government being
            relieved of its burden of proof.

      G.    Counsel's deficient performance deprived Mr. Thomas of a
            unanimous jury verdict.

      H.    Counsel's summation was pro forma.

On October 8, 1998, the court denied Mr. Thomas' postconviction motion without a

5

hearing. Mr. Thomas filed a timely notice of appeal in the District of Columbia Court of Appeals

on October 19, 1998.

On March 26, 1999, the Court of Appeals consolidated the direct appeal, No 95-CF-912,

and the postconviction appeal, No. 98-CO-1545. The issues presented for appeal were as

follows:

1.    Whether the trial court constructively amended the indictment
      which charged Mr. Thomas with a single count of first degree
      murder while armed by shooting the decedent with a pistol, and the
      trial court instructed the jury to convict Mr. Thomas if it found that
      he was a member of an unchanged conspiracy to assault the
      decedent.

2.    Whether the trial court properly instructed the jury on vicarious
      liability for co-conspirator acts where the only evidence of a
      conspiracy was evidence that four assailants acted in concert in
      assaulting the decedent with weapons.

3.    Whether the government was relieved of its burden of proof on the
      elements of armed first degree murder by a jury instruction that Mr.
      Thomas should be convicted if the government proved he was a
      member of a conspiracy to commit a simple assault against the
      decedent, absent a requirement that the government prove that the
      murder was committed in furtherance of the conspiracy, was within
      the scope of Mr. Thomas' agreement, and was a reasonably
      foreseeable consequence of the assault.

The issues presented on postconviction appeal (No. 98-CO-1545) are as follows:

1)    Whether Mr. Thomas was denied the effective assistance of
      counsel where the government's primary theory of the case was
      Mr. Thomas' vicarious liability for acts of a co-conspirator, and
      counsel was unaware of the legal and factual components of that
      theory until after the evidence closed and consequently failed to
      prepare and present a defense.

2)    Whether Mr. Thomas was denied effective assistance of counsel
      where counsel failed to raise an available objection under the jury
      clause to an instruction which constructively amended the

6

indictment.

A.    Whether Mr. Thomas was denied effective assistance of counsel
      when counsel failed to provide the trial court with an available
      judicially approved instruction on vicarious liability for co-
      conspirators acts where the governments proposed instruction
      removed its burden of proof on armed first-degree murder.

B.    Whether Mr. Thomas was denied effective assistance of counsel
      where counsels belated recognition of the governments primary
      theory of the case resulted in a pro forma summation that was not
      responsive to the governments detailed argument on it's conspiracy
      theory.

3.    Whether Mr. Thomas was denied effective assistance of counsel
      where counsel refused a special instruction and verdict form for a
      uninformed, frivolous reason and the jury was instructed on three
      theories of liability presenting a likelihood of non-unanimity.

4.    Whether Mr. Thomas was denied effective assistance of counsel
      where an expert witness' opinion that four firearms were used in
      the crime charged was unsupported, the evidence supported the
      fact that three firearms were fired, Mr. Thomas was one of four
      possible assailants and claimed he did not fire a weapon, and
      counsel failed to challenge the experts opinion.

Both the conviction and the denial of the postconviction motion were affirmed by the District of

Columbia Court of Appeals on April 13, 2000. A timely petition for a rehearing en banc was

filed and that petition was denied on April 25, 2001. A petition for certiorari to the United States

Supreme Court was sought and denied on October 4, 2001.

On January 31, 2002, Mr. Thomas filed a pro se motion to recall the mandate in the Court

of Appeals. This motion was subsequently denied on March 27, 2002.

On May 7, 2002, a timely pro se petition for rehearing en banc was filed and later denied

by the Court of Appeals on July 24, 2002.

On August 7, 2003, Mr. Thomas filed a timely pro se petition for writ of certiorari with

7

the Supreme Court of the United States. This petition was later denied on October 6, 2003.

The documentation NLPA has received to date does not evidence any further activity in Mr. Thomas' case following the October 6, 2003 denial by the Supreme Court of the United States. If this information is in any way incorrect, please contact us so that the appropriate revisions may be made.

**DISCUSSION**

NLPA believes that Mr. Thomas' potential for success is low in light of the amount of time that has passed since his original conviction and the number of issues that have been litigated so far. That does not mean that the potential for success does not exist at all, however.

## I.     POTENTIAL PROCEDURAL AVENUES FOR RELIEF

### A.     Super. Ct. Crim. R. 35(b)

We looked into the propriety of Mr. Thomas' sentence. A claim that attacks the propriety of sentence is properly raised under Super. Ct. Crim. R. 35(b). For example, when a defendant claimed that his sentence was illegal but filed an attack under another statute (such as D.C. Code § 23-110, discussed in full below), a court of appeals found that it would treat the filing as a motion to correct an illegal sentence pursuant to Super. Ct. Crim. R. 35 (a). Brown v. United States, 795 A.2d 56 (2002). See Byrd v. United States, 500 A.2d 1376, 1378 n.5 (D.C. 1985), adopted en banc, 510 A.2d 1035, 1037 (D.C. 1986) (treating collateral attack on concurrent sentences for premeditated murder and felony murder arising from a single homicide as made pursuant to Rule 35 (a)). It is immaterial if a defendant fails to cite Rule 35 (a), since the courts look to the substance of a pro se request for collateral relief rather than its form. Id. See Norman v. United States, 623 A.2d 1165, 1167 (D.C. 1993) ("Appellant's pro se [§ 23-110] motion

8

should have been construed by the motions judge as a Rule 35 (a) motion.").

Rule 35 (a) is an unconditional grant of authority to the court to "correct an illegal sentence at any time." The premise is that an illegal sentence is "a nullity," <u>Prince v. United States</u>, 432 A.2d 720, 721 (D.C. 1981), and is "void *ab initio* on its face." *<u>(James) Byrd v. United States</u>*, 487 A.2d 616, 617 (D.C. 1985). The Rule is modeled on former Fed. R. Crim. P. 35 (a), n1. See <u>Popeko v. United States</u>, 513 F.2d 771, 773 (5th Cir.1975); <u>United States v. Lopez</u>, 428 F.2d 1135, 1138 (2nd Cir.1970).

Super. Ct. Crim. R. 35(b) provides that a defendant can file a motion for reduction of sentence within 120 days after receipt of the court of the mandate from the court of appeals. The purpose of Rule 35 is to allow the trial court to consider whether the sentence originally imposed was too harsh. The 120-day limit prevents the court from assuming the functions of the parole board. See <u>Williams v. United States</u>, 470 A.2d 302, 310 (D.C.1983); <u>United States v. Nunzio</u>, 430 A.2d 1372, 1375 (D.C.1981). The 120-day window is jurisdictional, and it may not be circumvented by means of a motion pursuant to D.C. Code § 23-110. <u>Robinson v. United States</u>, 454 A.2d 810, 813 (D.C. 1982).

NLPA has received Mr. Thomas' pro se motion under Rule 35 and has been unable to confirm whether or not this motion has been filed. The issues presented therein along with an appropriate argument concerning the time limitations will be addressed once financial arrangements have been worked out between NLPA and Mr. Thomas.

### B.    Rule 33 Motion for New Trial

Mr. Thomas could request a new trial if he obtained new evidence demonstrating his innocence. The requirements for granting a new trial based on newly discovered evidence

9

pursuant to Rule 33 are well established:

> (1) the evidence must have been discovered since the trial; (2) the party seeking the new trial must show diligence in the attempt to procure the newly discovered evidence; (3) the evidence relied on must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) of such nature that in a new trial it would probably produce an acquittal.

Wright v. United States, 387 A.2d 582, 587 (D.C. 1978), citing Thompson v. United States, 88

U.S. App. D.C. 235, 236, 188 F.2d 652, 653 (1951).

"A motion for a new trial based on newly discovered evidence may be made only before

or within three years after the verdict or finding of guilty." Rule 33. Otherwise, if the motion is

based upon other grounds, it should be filed within seven days of the verdict. Id.

More than three years have passed since the verdict in Mr. Thomas' case. Moreover,

NLPA was given no suggestion that new evidence exists in Mr. Thomas' case that would support

a claim of innocence. For those reasons, we do not suggest any action under Rule 33.

### C.    Motion under 28 U.S.C. § 2254 or § 2255

When assessing post-convictions options, NLPA often considers whether a motion under

28 U.S.C. § 2254 or § 2255 is the appropriate remedy for an inmate. Those options do not

appear to be appropriate in Mr. Thomas' case. Section § 2254 is not appropriate because of the

plain language of that statute that provides that its application is limited to "person[s] in custody

pursuant to the judgment of a State court." 28 U.S.C. § 2254(a).

Section 2255 appears to be more appropriate because it applies to "prisoner[s] in custody

under sentence of a court established by Act of Congress." 28 U.S.C. § 2255 (¶ 1). But the U.S.

Supreme Court has recognized that the procedure set forth in D.C. Code § 23-110 "is comparable

10

to that authorized by 28 U.S.C. § 2255 for the United States district courts." Swain v. Pressley,

430 U.S. 372, 375 (1977). Perhaps more importantly, the U.S. Supreme Court has held that an

individual who is in custody under a sentence imposed by the D.C. Superior Court must seek

post-conviction relief under § 23-110 and ordinarily cannot seek post-conviction relief in federal

court. This is true even if an inmate's motion under D.C. Code § 23-110 is overruled.

     In other words, even after an inmate has exhausted his remedies under § 23-110, he

ordinarily cannot seek relief in federal court. Swain, 430 U.S. at 376-378; see also Thomas v.

Henderson, 119 F.3d 34, 36 (D.C. Cir. 1997) (recognizing that District of Columbia prisoners

must raise collateral attacks under D.C. Code § 23-110, whereas other federal prisoners must

raise collateral attacks under 28 U.S.C. § 2255); Perkins v. Henderson, 881 F.Supp. 55, 57

(D.D.C. 1995) (noting that "the unique status of the District of Columbia precludes nearly all

federal post-conviction review of District of Columbia Superior Court criminal convictions. It

also prevents federal courts from entertaining habeas corpus petitions filed by prisoners in the

custody of District of Columbia officials."); Wilson v. Office of Chairperson, 892 F.Supp. 277,

278 (D.D.C. 1995) ("D.C. Code § 23-110 vests subject matter jurisdiction to entertain collateral

attacks upon Superior Court sentences in that court. Thus, prisoners serving sentences imposed

by the Superior Court must file motions challenging their sentences in that court; federal courts

are generally without jurisdiction to entertain motions to vacate, set aside, or correct a sentence

imposed by the District of Columbia Superior Court.").

     The only exception we find to this rule is found in D.C. Code § 23-110(g), providing that

an inmate may seek relief in federal court only if filing a motion under § 23-110 "is inadequate or

ineffective to test the legality of his detention." In Swain, however, the Supreme Court suggested

11

that the remedy provided by § 23-110 ordinarily will be sufficient to test the legality of an

inmate's detention, as it is the functional equivalent of a federal habeas corpus remedy. <u>Swain,</u>

430 U.S. at 381-38. Moreover, the mere fact that an inmate's motion fails under § 23-110 does

not render the remedy provided by that section "inadequate or ineffective." See, e.g., <u>Wilson v.</u>

<u>Office of Chairperson</u>, 892 F.Supp. 277, 280 (D.D.C. 1995) ("A petitioner may not complain that

the remedies provided him by D.C. Code § 23-110 are inadequate merely because he was

unsuccessful when he invoked them. 'It is the inefficacy of the remedy, not a personal inability to

utilize it, that is determinative.'").

Based upon the fact that Mr. Thomas has already sought relief under D.C. Code § 23-110,

any attempt at claiming "inadequate or ineffective testing of the legality of his detention" will be

a difficult hurdle to overcome. NLPA would therefore suggest the filing of a successive § 23-

110.

## D.    Motion under D.C. Code § 23-110

D.C. Code § 23-110 establishes a procedure for collateral review of convictions in the

District of Columbia Superior Court:

> (a) A prisoner in custody under sentence of the Superior Court
> claiming the right to be released upon the ground that (1) the
> sentence was imposed in violation of the Constitution of the United
> States or the laws of the District of Columbia, (2) the court was
> without jurisdiction to impose the sentence, (3) the sentence was in
> excess of the maximum authorized by law, (4) the sentence is
> otherwise subject to collateral attack, may move the court to
> vacate, set aside, or correct the sentence.
>
> (b) A motion for such relief may be made at any time.
>
> (c) Unless the motion and files and records of the case conclusively
> show that the prisoner is entitled to no relief, the court shall cause

12

notice thereof to be served upon the prosecuting authority, grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto. If the court finds that (1) the judgment was rendered without jurisdiction, (2) the sentence imposed was not authorized by law or is otherwise open to collateral attack, (3) there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner, resentence him, grant a new trial, or correct the sentence, as may appear appropriate.

(d) A court may entertain and determine the motion without requiring the production of the prisoner at the hearing.

(e) The court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner.

(f) An appeal may be taken to the District of Columbia Court of Appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

(g) An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section shall not be entertained by the Superior Court or by any Federal or State court if it appears that the applicant has failed to make a motion for relief under this section or that the Superior Court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

D.C. Code § 23-110.

As noted above, a motion to vacate a conviction or sentence under § 23-110 is usually the only means by which a person such as Mr. Thomas, who has been convicted in the District of Columbia Superior court, can mount a collateral attack. Although Mr. Thomas was convicted and sentenced more than eight years ago, a motion under § 23-110 may be made at any time. D.C. Code § 23-110(b). To succeed, he must and prove assert one of the four grounds set forth

13

in § 23-110(a).

Section 23-110 is not a substitute for a direct appeal. Head v. United States, 489 A.2d 450, 451 (D.C. 1985). "Where a defendant has failed to raise an available challenge to his conviction on direct appeal, he may not raise that issue on collateral attack unless he shows both cause for his failure to do so and prejudice as a result of his failure." Id. (citing United States v. Frady, 456 U.S. 152, 167-68, 71 L. Ed. 2d 816, 102 S. Ct. 1584 (1982)). To the contrary, "relief under § 23-110 is appropriate only for serious defects in the trial which were not correctable on direct appeal or which appellant was prevented by exceptional circumstances from raising on direct appeal." Taylor v. United States, 759 A.2d 604, 610 (D.C. App. 2000) (citation omitted). Direct appeal-type issues cannot be raised under § 23-110. Id.

Mr. Thomas previously filed a § 23-110 motion on April 18, 1997. At this point, the trial court is not "required to entertain a second or successive motion for similar relief on behalf of the same prisoner." D.C. Code § 23-110(e); see Vaughn v. United States, 600 A.2d 96, 97 (D.C. 1991) (trial court is under no obligation to consider repeated claims for collateral relief). Where an appellant files a second D.C. Code Ann. § 23-110 (2001) motion, in which he raises issues not raised either on direct appeal or in his first § 23-110 motion, the rule as to whether a hearing is required is more strict. Under Shepard v. United States, 533 A.2d 1278, 1280 (D.C. 1987), if the appellant does not raise a claim of ineffective assistance of counsel during the pendency of the direct appeal, when at that time appellant demonstrably knew or should have known of the grounds for alleging counsel's ineffectiveness, that procedural default will be a barrier to the court's consideration of appellant's claim. Where a defendant has failed to raise an available challenge to his conviction on direct appeal, he may not raise that issue on collateral attack unless

14

he shows both cause for his failure to do so and prejudice as a result of his failure. Moreover, when the defendant has already launched several collateral attacks on his conviction, the reasons supporting the application of the cause and prejudice test are even more compelling.

However, the procedural default articulated in Shepard and other cases is not insurmountable. To establish legally sufficient "cause" for his failure to raise a claim on direct appeal, however, an appellant must show that he "was prevented by exceptional circumstances" from raising the claim at the appropriate time. Head v. United States, 489 A.2d 450, at 451 (D.C. 1985); see Murray v. Carrier, 477 U.S. 478, 488, 91 L. Ed. 2d 397, 106 S. Ct. 2639 (1986) (a defendant must demonstrate that "some objective factor external to the defense impeded counsel's efforts" to raise the claim on direct appeal). Once cause is shown, an appellant must then "shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, at 170 (1982).

Thus, the question remains what potential issues can be raised under § 23-110. Again, the issue discussion of Mr. Thomas' case will be furthered once the financial arrangement have been addressed.

## II.    POTENTIAL ISSUES TO RAISE UNDER § 23-110

The task now is to outline issues that might potentially be viable under D.C. Code § 23-110. Unfortunately, as a partial evaluation, NLPA must await finalization of financial arrangements before discussing in depth research on these issues.

Once retained for the full evaluation, NLPA will be able to research the possibilities of

15

issues concerning ineffective assistance of counsel, due process violations and possible new evidence. Other issues may be found during our in depth research and review of Mr. Thomas' case as well.

## CONCLUSION

If we were to aid Mr. Thomas and you as counsel in this matter, we would do a complete analysis of each issue, dealing with U.S. Supreme Court and Washington D.C. precedent, where appropriate, and prepare the entire initial motion and reply memorandum for your review. Obviously, this step will be initiated after the financial arrangements between NLPA and Mr. Thomas have been addressed.

Please note that any issues identified herein are potential issues that may be valid in Mr. Thomas' case. Upon further review, these issues may be consolidated, expanded to include other issues, or eliminated. Of course, the final determination concerning which issues to include will be made based on research prepared by NLPA as well as consultations with counsel. The bottom line is that if Mr. Thomas pursues a post-conviction action with counsel and our assistance, he has some chance of relief.

NB: This evaluation is provided for the sole purpose of identifying potential issues and avenues of relief and relaying that information to counsel. The issues discussed and identified in this evaluation, including any time deadlines, have been developed based on information provided by [the defendant]. These avenues for relief are subject to change upon further review of documents provided to NLPA and any further materials later provided by [the defendant]. The issues and recommendations contained in this memorandum may be consolidated, eliminated, or expanded to include additional issues once NLPA is retained to assist counsel in the actual preparation of pleadings or motions to be filed in court. Therefore, the evaluation is not in a form that can be filed in court and it should not be used for that purpose. It is solely for the purpose of assisting counsel evaluate the subject case with the defendant. Any unauthorized use of the research contained in this evaluation is not the responsibility of NLPA.

16

17

**Exhibit B - Motion to Correct Illegal Sentence and Memorandum of Law in Support**

## IN THE SUPERIOR COURT OF
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | Trial Case Nos. F-5258-96 |
| Respondent, | * | F-5329-95 |
| | * | |
| v. | * | |
| | * | |
| ROY THOMAS, | * | |
| | * | |
| Petitioner. | * | |

## MOTION TO CORRECT ILLEGAL SENTENCE
## PURSUANT TO D.C. SUPERIOR COURT CRIMINAL RULE 35(a)
## AND REQUEST FOR EVIDENTIARY HEARING

NOW COMES, the Petitioner, Roy Thomas, by and through counsel, and hereby moves this Honorable Court to vacate the sentence imposed in this case, based upon violations of the Petitioner's rights as guaranteed by the Sixth Amendment to the United States Constitution and his Fifth Amendment right to due process of law. His rights were further violated when he was sentenced based upon facts not submitted to or proved to a jury. The Petitioner further moves this Court to order an evidentiary hearing on the issues raised.

In support, the Petitioner provides the following statement of facts and procedural history:

1.    On February 16, 1991, a District of Columbia grand jury returned a nine count indictment against Petitioner and two co-defendants. The charges included: first degree murder while armed (D.C. Code §§ 22-2401 and 22-3202); assault with intent to murder while armed (D.C. Code §§ 22-503, 22-2403 and 22-3202); assault with intent to kill while armed (D.C. Code §§ 22-501 and 22-3202); three counts of carrying a pistol without a

license (D.C. Code § 22-3204 (a)); and three counts of possession of a firearm during the commission of a crime of violence or dangerous offense (D.C. Code § 22-3204 (b)). The indictment did not charge conspiracy.

2.      On October 1, 1992, Petitioner was convicted by a jury in the Superior Court of the District of Columbia, Criminal Division, for the lesser included offenses of assault with a dangerous weapon, carrying a pistol without a license, and possession of a firearm during the commission of a crime of violence or dangerous offense. The jury was unable to reach a verdict on the first-degree murder while armed charge and on October 6, 1992, the trial court declared a mistrial on that count.

3.      On February 10, 1993, Judge Taylor sentenced Petitioner to concurrent terms of imprisonment totaling five to fifteen years, one year imprisonment for carrying a pistol without a license, and separate five to fifteen year terms of imprisonment for assault with a dangerous weapon and possession of a firearm during the commission of a crime of violence.

4.      On June 13, 1995, Petitioner was retried for the first-degree murder while armed charged.

5.      On June 18, 1995, Petitioner was found guilty by jury on the first-degree murder while armed charge.

6.      On June 27, 1995, Judge Burnett sentenced Petitioner to twenty years to life to run consecutive the sentence being served.

7.      On July 6, 1995, Petitioner filed a timely notice of appeal. However, prior to briefing the appeal, Petitioner filed a District of Columbia post-conviction motion pursuant to § 23-

2

110, which resulted in a stay of the appeal. Petitioner raised the following issues in his §

23-110 motion:

I.    Ineffective assistance of counsel resulted in a structurally defective
      trial mechanism.

    A.    Counsel's deficient performance resulted in a constructive
            amendment of the indictment which permitted the prosecutor to
            effectively alter the charge against Petitioner to fit the
            government's proof.

    B.    The prosecutor persuaded the trial court to take action which
            effectively amended the indictment without meaningful opposition
            from the defense.

    C.    The grand jury clause limited the possible basis for Petitioner'
            conviction to permit jury findings solely on the elements of the
            crime as charged by the grand jury.

    D.    Conspiracy to commit an assault is not a lesser included offense of
            first-degree murder while armed.

    E.    Conspiracy is a separate and distinct statutory offense unlike aiding
            and abetting; conviction of a substantive crime, based on
            conspiracy findings requires an indicted conspiracy.

    F.    Counsel's deficient performance resulted in the government being
            relieved of its burden of proof.

    G.    Counsel's deficient performance deprived Petitioner of a
            unanimous jury verdict.

    H.    Counsel's summation was pro forma.

8.    On October 8, 1998, the court denied Petitioner' post-conviction motion without a

hearing. Petitioner filed a timely notice of appeal in the District of Columbia Court of

Appeals on October 19, 1998.

9.    On March 26, 1999, the Court of Appeals consolidated the direct appeal, No 95-CF-912,

and the post-conviction appeal, No. 98-CO-1545. The issues presented for appeal were

as follows:

I.    Whether the trial court constructively amended the indictment
which charged Petitioner with a single count of first degree murder
while armed by shooting the decedent with a pistol, and the trial
court instructed the jury to convict Petitioner if it found that he was
a member of an unchanged conspiracy to assault the decedent.

II.   Whether the trial court properly instructed the jury on vicarious
liability for co-conspirator acts where the only evidence of a
conspiracy was evidence that four assailants acted in concert in
assaulting the decedent with weapons.

III.  Whether the government was relieved of its burden of proof on the
elements of armed first degree murder by a jury instruction that
Petitioner should be convicted if the government proved he was a
member of a conspiracy to commit a simple assault against the
decedent, absent a requirement that the government prove that the
murder was committed in furtherance of the conspiracy, was within
the scope of Petitioner' agreement, and was a reasonably
foreseeable consequence of the assault.

The issues presented on post-conviction appeal (No. 98-CO-1545) are as follows:

A.    Whether Petitioner was denied the effective assistance of counsel
where the government's primary theory of the case was Petitioner's
vicarious liability for acts of a co-conspirator, and counsel was
unaware of the legal and factual components of that theory until
after the evidence closed and consequently failed to prepare and
present a defense.

B.    Whether Petitioner was denied effective assistance of counsel
where counsel failed to raise an available objection under the jury
clause to an instruction which constructively amended the
indictment.

      (1)    Whether Petitioner was denied effective assistance of counsel
             when counsel failed to provide the trial court with an available
             judicially approved instruction on vicarious liability for co-

4

conspirators acts where the governments proposed instruction removed its burden of proof on armed first-degree murder.

(2)   Whether Petitioner was denied effective assistance of counsel where counsels belated recognition of the governments primary theory of the case resulted in a pro forma summation that was not responsive to the governments detailed argument on it's conspiracy theory.

C.   Whether Petitioner was denied effective assistance of counsel where counsel refused a special instruction and verdict form for a uninformed, frivolous reason and the jury was instructed on three theories of liability presenting a likelihood of non-unanimity.

D.   Whether Petitioner was denied effective assistance of counsel where an expert witness' opinion that four firearms were used in the crime charged was unsupported, the evidence supported the fact that three firearms were fired, Petitioner was one of four possible assailants and claimed he did not fire a weapon, and counsel failed to challenge the experts opinion.

10.   Both the conviction and the denial of the post-conviction motion were affirmed by the District of Columbia Court of Appeals on April 13, 2000.

11.   A timely petition for a rehearing en banc was filed and that petition was denied on April 25, 2001.

12.   A petition for certiorari to the United States Supreme Court was sought and denied on October 4, 2001.

13.   On January 31, 2002, Petitioner filed a pro se motion to recall the mandate in the Court of Appeals. This motion was subsequently denied on March 27, 2002.

14.   On May 7, 2002, a timely pro se petition for rehearing en banc was filed and later denied by the Court of Appeals on July 24, 2002.

15.   On August 7, 2003, Petitioner filed a timely pro se petition for writ of certiorari with the Supreme Court of the United States. This petition was later denied on October 6, 2003.

WHEREFORE, in consideration of the foregoing, Petitioner requests that this Honorable

Court  issue an order correcting his illegal sentence, so that he can receive due process of law.

The Petitioner further requests an evidentiary hearing so that he can present evidence in support

of his meritorious claims.

Respectfully submitted,

_____

Charles A. Murray
Attorney for Petitioner
1300 Third Street South, Suite 302B
Naples, FL  34102
Telephone: (239) 649-7773

**IN THE SUPERIOR COURT OF
THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | Trial Case No. F-5258-96 |
| Respondent, | * | F-5329-95 |
| | * | |
| v. | * | |
| | * | |
| Roy Thomas, | * | |
| | * | |
| Petitioner. | * | |

---

**PETITIONER'S MEMORANDUM IN SUPPORT
OF MOTION TO CORRECT ILLEGAL SENTENCE
PURSUANT TO D.C. SUPERIOR COURT CRIMINAL RULE 35(a)
AND REQUEST FOR EVIDENTIARY HEARING**

---

As a matter of introduction, the Petitioner respectfully submits that the events which

transpired in the instant case constitute a denial of the Petitioner's right to a jury trial as

guaranteed by the Sixth Amendment to the United States Constitution, as well as the right to due

process of law as guaranteed by the Fifth Amendment. The Petitioner's Fifth and Sixth

Amendment rights were also violated when he was sentenced based upon facts not contained in

the verdict. Specifically, the existence of these violations have been clarified in the recent U.S.

Supreme Court opinions Blakely v. Washington, 124 S.Ct. 2531 (2004) and United States v.

Booker, 125 S.Ct. 738 (2005). Furthermore, the Petitioner contends that he is entitled to an

evidentiary hearing on these issues.

## STATEMENT OF ISSUES

I.    Petitioner's sentence is illegal in violation of the Fifth and Sixth amendments to the U.S.

Constitution and contra to his rights to a jury trial and to be punished solely on facts

proven beyond a reasonable doubt.

## JURISDICTION

The Petitioner's present motion for post-conviction relief is properly before this court.

D.C. Superior Court Criminal Rule 35(a) provides:

> Correction of sentence. The court may correct an illegal sentence at
> any time and may correct a sentence imposed in an illegal manner
> within the time provided herein for the reduction of sentence.

D.C. SCR-Crim. Rule 35(a)

An illegal sentence may be challenged at any time. The purpose of this rule is to allow the trial court to consider, after further reflection, whether the sentence originally imposed was too harsh in light of the defendant's pretrial conduct. Williams v. United States, App. D.C., 470 A.2d 302 (1983); aff'd, App. D.C., 485 A.2d 950, cert. denied, 472 U.S. 1019, 105 S.Ct. 3483, 87 L.Ed. 2d 617 (1985). Where a sentence is illegal in the sense the court goes beyond its authority by acting without jurisdiction or imposing a sentence in excess of the statutory maximum provided, then such sentence – because of the gravity of the error, the unqualified deprivation of one's liberty – may be challenged at any time. Robinson v. United States, App. D.C., 454 A.2d 810 (1982).

Therefore, Petitioner contends that he is serving an illegal sentence through the judge's unconstitutional use of his discretion, and this instant motion to correct it is properly brought pursuant D.C. Superior Court Criminal Rule 35(a).

3

# ARGUMENT

**I.    PETITIONER'S SENTENCE IS ILLEGAL IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS TO THE U.S. CONSTITUTION AND CONTRA TO HIS RIGHTS TO A JURY TRIAL AND TO BE PUNISHED SOLELY ON FACTS PROVEN BEYOND A REASONABLE DOUBT.**

The importance of considering a motion for a correction of an illegal sentence pursuant D.C. Superior Court Criminal Rule 35(a) is why it is appropriate even if the defendant fails to appeal his conviction at all. Byrd v. United States, 487 A.2d 616, 617 (D.C. 1985). Because an illegal sentence is void from the start, the trial court may correct it at any time on its own motion, even if the defendant has failed to seek any relief. Id. Moreover, this Court has the power to entertain a Rule 35(a) motion even if a prior motion to the same effect was denied. Neverdon v. District of Columbia, 468 A.2d 974, 975 (D.C. 1983).

Where a fundamental constitutional right has been denied, an accused should not be precluded from relief because he cannot satisfy a court that he had good cause for any delay in seeking it. United States v. Hamid, App. D.C., 531 A.2d 628 (1987). Furthermore, Rule 35(a) is modeled on former Federal Rule of Criminal Procedure 35(a), under which it was settled that a sentence can be attacked as illegal regardless of whether the point could have been raised on an earlier direct appeal. Brown v. United States, 795 A.2d 56, (2002). A prisoner's right to a ruling on a Rule 35 motion, coupled with an extremely limited right of appeal form the trial court's exercise of discretion cuts substantially in favor of a liberal reading of the "reasonable time" requirement; a prisoner who timely files a Rule 35 motion should not be penalized unfairly because of circumstances beyond his control. Garcia v. United States, App. D.C., 542 A.2d 1237 (1988).

4

Where a sentence is "illegal" in the sense that the court goes beyond its authority by acting without jurisdiction or imposing a sentence in excess of the statutory maximum provided, then such sentence – because of the gravity of the error, the unqualified deprivation of one's liberty – may be challenged at any time. Robinson v. United States, App. D.C., 454 A.2d 810 (1982).

### A.    Many Criminal Sentencing Practices Across the United States are Being Called Into Question as Possibly Violative of the U.S. Constitution.

Recently, the Supreme Court has begun to realize the fundamental defects in way our justice system determines sentences for criminal defendants in a series of decisions. In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In Ring v. Arizona, 536 U.S. 584 (2002), the Supreme Court clarified and reaffirmed this rule. The Ring holding is straightforward and clear-cut: The Apprendi rule applies to any aggravating fact necessary to expose a defendant to punishment beyond an otherwise mandatory statutory limit. Id. As recently observed by the United States District Court for the district of Massachusetts regarding the Sentencing Guidelines, "the Sixth Amendment guarantee of trial by jury has been eroded as never before in the history of our nation, while the institutional judiciary complacently slips into forms of expression and modes of thought that unconsciously reinforce the Department agenda in a powerfully Orwellian way. United States v. Green, 2004 U.S.Dist. LEXIS 11292, *13 (D.Mass June 18, 2004).

5

After <u>Apprendi</u>, the various courts throughout the country assumed the term "statutory maximum" referred to in <u>Apprendi</u> and <u>Ring</u>, was the maximum sentence set forth under the statute listed in the indictment. The courts have assumed that the term "statutory maximum" does not apply to the various sentencing thresholds established under the federal sentencing guidelines.

The <u>Blakely</u> decision not only clarified what was meant by the term "statutory maximum," but also calls into question the constitutionality of current sentencing practices in federal court. The Court noted that the rule announced in <u>Apprendi</u> reflected two longstanding tenets of common-law criminal jurisprudence: "that the truth of every accusation against the defendant should afterwards be confirmed by a unanimous [jury verdict], and that an accusation which lacks any particular fact which the law makes essential to the punishment is ... no accusation within the requirements of the common law and it is no accusation in reason." (cites omit) <u>Id</u>. at *10  The Court then noted the principle in American jurisprudence that "'every fact which is legally essential to the punishment' must be charged in the indictment and proved to a jury." <u>Id.</u>

The decision in <u>Blakely</u> was further bolstered by the recent decision issued in <u>United States v. Booker</u>, 125 S.Ct. 738 (2005). In <u>Booker</u>, the Court ruled that the federal Sentencing Guidelines were not mandatory in issuing federal sentences, but are to be used merely as an advisory tool. <u>Id</u>. at *7. The decision flowed from Justice Stevens' worry that as sentencing enhancements became greater, "the jury's finding of the underlying crime became less significant." <u>Id</u>. at *33. As such, the Sixth Amendment right to a jury trial was being usurped, requiring change in order to preserve "Sixth Amendment substance." <u>Id</u>. at *34. Furthermore,

6

the court again reiterated its commitment to the ideal that any fact other than a prior conviction

which is necessary to support a sentence exceeding the statutory maximum authorized by the

jury's finding must be proved to a jury beyond a reasonable doubt. Id. at *45-6.

The Petitioner submits that compliance with the Sixth Amendment requires "any fact that

increases the penalty for a crime beyond the prescribed statutory maximum" to be proved beyond

a reasonable doubt. Apprendi, 530 U.S. at 490. The prescribed "'statutory maximum' for

Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts

reflected in the jury verdict or admitted by the defendant." Booker, 125 S.Ct. at *45-6; Blakely,

124 S. Ct. at 2536. The jury verdict alone - or the defendant's admission alone - "must authorize

the sentence." Id. Therefore, the upper bound of the appropriate guideline range, based on facts

proven to a jury beyond a reasonable doubt or admitted by the defendant, establishes the relevant

statutory maximum for sentencing purposes. Under the federal Sentencing Guidelines, drug

amounts, enhancements based on a specific offense characteristic, and upward departures all

have the same effect - namely, they all *increase* the maximum permissible sentence under the

guidelines. A judge's reliance on such factors at sentencing is therefore unconstitutional.

Petitioner contends that his sentence violates the constitution in a similar regard. That is,

there were facts and considerations outside of that found specifically in the jury verdict, that

determined his sentence. This has resulted in a sentence that exceeds the statutory maximum as

explained and elaborated on in Blakely and Booker. Therefore, Petitioner argues that his

sentence must be vacated and corrected to be in compliance with the principles and black letter

law encapsulated in the U.S. Constitution.

7

**B.    Petitioner's Sentence is Illegal Through the Extra-Verdict Determination and Discretion Used by the Sentencing Judge to Exceed Statutory Maximum.**

As an initial matter, Petitioner recognizes that the District of Columbia Code currently

has a provision that allows consecutive sentences to be imposed under the circumstances of this

case, to wit:

> A sentence imposed on a person for conviction of an offense shall,
> unless the court imposing such sentence expressly provides
> otherwise, run consecutively to any other sentence imposed on
> such person for conviction of an offense, whether or not the
> offense (1) arises out of another transaction, or (2) arises out of the
> same transaction and requires proof of a fact which the other does
> not.

D.C. Code § 23-112.

Petitioner, however, contends that either the statute itself is unconstitutional or it is

unconstitutional as applied to him.

It is well settled that "consecutive sentences for separate crimes are normal and ordinary

in the enforcement of state and federal criminal laws. Bryant v. Civiletti, 663 F.2d 286 (D.C. Cir.

Aug. 21, 1981). However, there are exceptions to this practice, which have even been codified in

D.C. law, to wit:

> No person shall be consecutively sentenced for the same act or
> course of conduct for the following:
>
> (1)    Theft and fraud;
>
> (2)    Theft and unauthorized use of a vehicle;
>
> (3)    Theft and commercial piracy;
>
> (4)    Identity theft and theft; or
>
> (5)    Identity theft and fraud.

8

D.C. Code § 22-3203.

Further, the enactment in D.C. Code § 23-112 of a general canon of construction, which

presumes multiple sentences for offenses to run consecutively unless stated to be concurrent, was

not intended to alter the substantive law of murder, and to that extent premeditated murder and

felony murder are not separate offenses for consecutive sentencing purposes. United States v.

Ammidown, 497 F.2d 615 (D.C. Cir. May 10 , 1974). Therefore, the current situation in that the

"trial judge [is] free to impose consecutive sentences", Petitioner argues, is violative of the

constitution in light of Blakely and Booker.

A recent case in Ohio has picked up on the hazardous practice of letting a judge decide if

a defendant is to serve consecutive sentences based on separate convictions. In State v. Bruce, 1st

Dist. No. C-040421, 2005 Ohio 373, the trial court imposed a maximum sentence on the

defendant, following a finding by the court that Bruce had committed the "worst form of the

offense." Such a finding is required under R.C. § 2929.14(C) in order for a maximum sentence

to be imposed. The court found that following Booker, a trial court could not impose such a

sentence because the prescribed statutory maximum sentence is not "the maximum sentence a

judge may impose after finding additional facts, but the maximum he may impose without any

additional findings." Bruce at *P8, *quoting* Blakely at 2537. This left the maximum possible

sentence of nine years, the longest the court could impose without making any additional

findings of acts. While Petitioner's circumstances are not a perfect analogy to Bruce's, the

similarity is that the sentencing judge in Petitioner's case could have made the decision to impose

the murder sentence to run concurrently with his previously imposed sentences. Needless to say,

9

this discretion can be abused, because it is completely up to the judge whether or not to impose a consecutive sentence. *See* D.C. Code § 23-112.

Furthermore, just as the Booker court reasoned that it was the mandatory application of the United States Sentencing Commission's Guidelines or the U.S.S.G. that made it violative of the constitution, the near mandatory nature of § 23-112 is also troublesome. Ordinarily a defendant could have separate sentences imposed consecutively, without the judge finding additional facts – yet if the judge chooses to, he or she could use his or her discretion to not impose the sentences consecutively. In other words, this gives the judge too much power to tack sentences on to one another or not. This could be remedied if the prosecution was to come out in the beginning of the trial that it is looking to seek consecutive sentences, and let the jury decide if such should be done. The facts that would support punishment beyond the statutory maximum of one offense by the conviction of the another offense is something that must be proven beyond a reasonable doubt according to the Sixth amendment to the U.S. Constitution, as well as Blakely and Booker.

10

## CONCLUSION

In consideration of the foregoing, Petitioner has been given an illegal sentence which must be vacated and corrected, he also requests that this Honorable Court order an evidentiary hearing on the Petitioner's claims of constitutional violations, so that the Petitioner can put on evidence establishing such violations.

Respectfully submitted,

_____

Charles A. Murray
Attorney for Petitioner
1300 Third Street South, Suite 302B
Naples, FL 34102
Telephone: (239) 649-7773

11

## **VERIFICATION**

Roy Thomas, being first duly sworn, verifies that the facts stated in the foregoing motion and the attached memorandum in support are true to the best of his knowledge and belief.

_____
Roy Thomas

Pursuant to 28 U.S.C. § 1746, I, Roy Thomas, declare under the penalty of perjury that the foregoing is true and correct. Executed on this \_\_\_\_\_ day of _____ 2005.

_____
Roy Thomas

12

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was sent this ____ day of

_____, 2005, by regular U.S. mail with sufficient postage affixed to the United States

Attorney's Office, 555 4th Street, N.W., Washington, D.C. 20001.


_____

Charles A. Murray
Attorney for Petitioner

13

**Exhibit C - Letter, May 2, 2005**

Roy Thomas
Reg. No. 11340-007
USP- Big Sandy
P. O. Box 2068
Inez, KY 41224


May 2, 2005


Charles A. Murray, P.A.
1300 Third Street South
Suite #302-B
Naples, FL 34102


Dear Mr. Murray:

I have conducted a little research and determined that a successive new trial motion pursuant to D.C. Code 23-110, would be fruitless. I do not wish to pursue that avenue.

I do have a means of obtaining relief, through filing a habeas corpus petition pursuant to 28 U.S.C. §2241, and citing to D.C. Code 16-1901 (b). This would give the federal court jurisdiction to entertain the writ. The D.C. Code(16-1901) also provides that when in federal custody, we should direct our habeas corpus petitions to the United States District Court For the District of Columbia. I would like to have the petition filed in that manner.

Concerning the transcripts, my family has made contact with the proper agency in the D. C. Superior Court and they are transcribing them currently. The transcripts will be forwarded to you immediately after their receipt.

Thank you for your consideration of the above and any assistance you may render in the future in this matter.

Sincerely,

Roy Thomas 11340007
Roy Thomas
Reg. No. 11340-007

**Exhibit D - Letter, July 13, 2005**

# NATIONAL LEGAL PROFESSIONAL ASSOCIATES

*Margaret A. Robinson Advocacy Center*
*11331 Grooms Road, Suite 1000*
*Cincinnati, OH 45242*
Phone: 513-247-0082 ● Fax 513-247-9580
Web site: www.NLPA.com ● E-mail: contactus@nlpa.com

July 13, 2005

Charles A. Murray
Attorney at Law
1300 Third Street South, Suite 302B
Naples, FL  34102

### Re:   *Roy Thomas*

Dear Mr. Murray:

As promised, please find the draft of the Motion to Correct Illegal Sentence Pursuant to D.C. Superior Court Criminal Rule 35(a) and Request for Evidentiary Hearing which NLPA has prepared on behalf of your client, Roy Thomas.

In providing this research to you as counsel, we want to make it clear that we understand that you as counsel make all decisions as to how (if at all) this research is to be utilized. Compliance with ethical precepts prevailing in this applicable jurisdiction or jurisdictions concerning the use by you as counsel of our research work product is solely the responsibility of you as counsel in this matter. Therefore, as always, we have included a copy of our work on the enclosed computer disk so that you will be able to utilize our work in any manner you deem appropriate

Please call if you have any questions or comments. We hope that the enclosed research is beneficial. It has been a pleasure working with you and we look forward to working with you again in the future.

Sincerely,

*National Legal Professional Associates*

Enclosures

Page 2
July 13, 2005


cc:    Roy Thomas
       11340-007
       USP Big Sandy
       P.O. Box 2067
       Inez, KY  30315

       Lorenzo Irving
       1365 Longview Dr. #11
       Woodbridge, VA  22191

Exhibit E - Letter, July 19, 2005

July 19, 2005


Mr. Charles A. Murray
Attorney at Law
1300 Third Street South, Suite 302B
Naples, FL 34102


     ***Re:***   ***Roy Thomas***


Dear Mr. Murray:

Recently your client, Roy Thomas, contacted NLPA and inquired why we have prepared and forwarded to you a motion pursuant to Rule 35A of the D.C. rules of the court instead of a § 23-110 post-conviction motion. The answer is of course quite simple: Mr. Thomas has a better chance of success in filing a Rule 35A based on the issues he has available to him. First and foremost, Mr. Thomas has already filed one § 23-110 post-conviction motion, which was denied. Generally, D.C. inmates are only entitled to file one § 23-110 motion, and the trial court is not even required to entertain a second or successive motion. While this does not completely preclude all successive § 23-110 motions, it does set a standard that is very difficult to meet, and which is hardly ever met except where extraordinary factual circumstances exist. Mr. Thomas simply does not have any issues to raise that even come close to meeting the extraordinarily high standards for a successive § 23-110 motion.

On the other hand, the recent Supreme Court decisions in <u>United States v. Booker</u>, 125 S.Ct. 738 (2005) and <u>Blakely v. Washington</u>, 124 S.Ct. 2531 (2004) seriously call into question the legality of Mr. Thomas' sentence. Issues brought under these two new cases represent Mr. Thomas' only legitimate chance of obtaining the relief he desires. Because these two cases call into question the legality of Mr. Thomas' sentence, a Rule 35A motion is the proper procedural vehicle through which to raise those issues. Even though Mr. Thomas has already filed a Rule 35A motion that was denied, he did not do so based on these new watershed Supreme Court cases. Mr. Thomas' chances of success with a successive Rule 35A motion based on <u>Blakely</u> and <u>Booker</u> far exceed his chances of success with a successive § 23-110 motion based on the same issues. Unlike § 23-110, Rule 35A motions are not statutorily limited in number, as there is nothing in the rule limiting a court's ability to entertain second or successive motions. As previously stated, this is not true of § 23-110 motions. Furthermore, the issues Mr.

Page 2
July 19, 2005

Thomas must raise at this point are issues under <u>Blakely</u> and <u>Booker</u> dealing with the illegality of his sentence. The illegality of a D.C. inmate's sentence is properly challenged under a Rule 35A motion, not a § 23-110 motion.

In providing this information and/or research work product to you as counsel, we want to make it clear that NLPA maintains the highest respect for the attorney-client relationship. Therefore, it is understood that you as counsel make all decisions as to how (if at all) this information and/or research work product is to be utilized. Compliance with ethical precepts prevailing in the applicable jurisdiction or jurisdictions concerning the use by you as counsel of our research work product is solely the responsibility of you as counsel in this matter.

We thank you for the opportunity to be of assistance in this very important matter. If you have any additional questions or concerns, please feel free to contact NLPA and ask to speak to one of the research attorneys who has been assigned to this case.

Sincerely,

# National Legal Professional Associates

cc:     Roy Thomas
        11340-007
        USP Big Sandy
        P.O. Box 2067
        Inez, KY 30315

        Patricia Jordan
        2711 Boones Lane
        Forestville, MD 20747

**Exhibit F - Motion pursuant to D.C. Code § 23-110**

**DISTRICT OF COLUMBIA SUPERIOR COURT**
**CRIMINAL DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| Respondent, | * | **CASE NOS. F-5258-96/F-5329-95** |
| v. | * | |
| **ROY THOMAS** | * | |
| Petitioner. | * | |

## PETITIONER'S MOTION TO VACATE HIS SENTENCE
## PURSUANT D.C. CODE § 23-110

Petitioner, ROY THOMAS, Pro Se, hereby moves this Honorable Court to vacate the

sentence imposed in this case, based upon violations of the Petitioner's rights as guaranteed by

the Sixth Amendment to the United States Constitution. Also, Petitioner's Fifth Amendment

right to due process of law has been affected. His rights were further violated when he was

sentenced based upon facts not submitted to or proved beyond a reasonable doubt by a jury. The

Petitioner further moves this Court to order an evidentiary hearing on the issues raised.

In support of his motion, Petitioner provides the following statement of facts and

procedural history.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On February 16, 1991, a District of Columbia grand jury returned a nine count indictment against Petitioner and two co-defendants. The charges included: first degree murder while armed (D.C. Code §§ 22-2401 and 22-3202); assault with intent to murder while armed (D.C. Code §§ 22-503, 22-2403 and 22-3202); assault with intent to kill while armed (D.C. Code §§ 22-501 and 22-3202); three counts of carrying a pistol without a license (D.C. Code § 22-3204 (a)); and three counts of possession of a firearm during the commission of a crime of violence or dangerous offense (D.C. Code § 22-3204 (b)). The indictment did not charge conspiracy.

On October 1, 1992, Petitioner was convicted by a jury in the Superior Court of the District of Columbia, Criminal Division, for the lesser included offenses of assault with a dangerous weapon, carrying a pistol without a license, and possession of a firearm during the commission of a crime of violence or dangerous offense. The jury was unable to reach a verdict on the first-degree murder while armed charge and on October 6, 1992, the trial court declared a mistrial on that count.

On February 10, 1993, Judge Taylor sentenced Petitioner to concurrent terms of imprisonment totaling five to fifteen years, one year imprisonment for carrying a pistol without a license, and separate five to fifteen year terms of imprisonment for assault with a dangerous weapon and possession of a firearm during the commission of a crime of violence.

On June 13, 1995, Petitioner was retried for the first-degree murder while armed charge. On June 18, 1995, Petitioner was found guilty by jury on the first-degree murder while armed charge. On June 27, 1995, Judge Burnett sentenced Petitioner to twenty years to life to run consecutive to the sentence being served.

2

On July 6, 1995, Petitioner filed a timely notice of appeal. However, prior to briefing the

appeal, Petitioner filed a District of Columbia postconviction motion pursuant to § 23-110,

which resulted in a stay of the appeal. Petitioner raised the following issues in his § 23-110

motion:

I. Ineffective assistance of counsel resulted in a structurally defective
   trial mechanism.

   A. Counsel's deficient performance resulted in a constructive
      amendment of the indictment which permitted the prosecutor to
      effectively alter the charge against Petitioner to fit the
      government's proof.

   B. The prosecutor persuaded the trial court to take action which
      effectively amended the indictment without meaningful opposition
      from the defense.

   C. The grand jury clause limited the possible basis for Petitioner'
      conviction to permit jury findings solely on the elements of the
      crime as charged by the grand jury.

   D. Conspiracy to commit an assault is not a lesser included offense of
      first-degree murder while armed.

   E. Conspiracy is a separate and distinct statutory offense unlike aiding
      and abetting; conviction of a substantive crime, based on
      conspiracy findings requires an indicted conspiracy.

   F. Counsel's deficient performance resulted in the government being
      relieved of its burden of proof.

   G. Counsel's deficient performance deprived Petitioner of a
      unanimous jury verdict.

   H. Counsel's summation was pro forma.

3

On October 8, 1998, the court denied Petitioner' postconviction motion without a

hearing. Petitioner filed a timely notice of appeal in the District of Columbia Court of Appeals

on October 19, 1998.

On March 26, 1999, the Court of Appeals consolidated the direct appeal, No 95-CF-912,

and the postconviction appeal, No. 98-CO-1545. The issues presented for appeal were as

follows:

I.     Whether the trial court constructively amended the indictment
       which charged Petitioner with a single count of first degree murder
       while armed by shooting the decedent with a pistol, and the trial
       court instructed the jury to convict Petitioner if it found that he was
       a member of an unchanged conspiracy to assault the decedent.

II.    Whether the trial court properly instructed the jury on vicarious
       liability for co-conspirator acts where the only evidence of a
       conspiracy was evidence that four assailants acted in concert in
       assaulting the decedent with weapons.

III.   Whether the government was relieved of its burden of proof on the
       elements of armed first degree murder by a jury instruction that
       Petitioner should be convicted if the government proved he was a
       member of a conspiracy to commit a simple assault against the
       decedent, absent a requirement that the government prove that the
       murder was committed in furtherance of the conspiracy, was within
       the scope of Petitioner' agreement, and was a reasonably
       foreseeable consequence of the assault.

The issues presented on postconviction appeal (No. 98-CO-1545) are as follows:

A.     Whether Petitioner was denied the effective assistance of counsel
       where the government's primary theory of the case was Petitioner's
       vicarious liability for acts of a co-conspirator, and counsel was
       unaware of the legal and factual components of that theory until
       after the evidence closed and consequently failed to prepare and
       present a defense.

B.     Whether Petitioner was denied effective assistance of counsel
       where counsel failed to raise an available objection under the jury

4

clause to an instruction which constructively amended the indictment.

(1)   Whether Petitioner was denied effective assistance of counsel when counsel failed to provide the trial court with an available judicially approved instruction on vicarious liability for co-conspirators acts where the governments proposed instruction removed its burden of proof on armed first-degree murder.

(2)   Whether Petitioner was denied effective assistance of counsel where counsels belated recognition of the governments primary theory of the case resulted in a pro forma summation that was not responsive to the governments detailed argument on it's conspiracy theory.

C.   Whether Petitioner was denied effective assistance of counsel where counsel refused a special instruction and verdict form for a uninformed, frivolous reason and the jury was instructed on three theories of liability presenting a likelihood of non-unanimity.

D.   Whether Petitioner was denied effective assistance of counsel where an expert witness' opinion that four firearms were used in the crime charged was unsupported, the evidence supported the fact that three firearms were fired, Petitioner was one of four possible assailants and claimed he did not fire a weapon, and counsel failed to challenge the experts opinion.

Both the conviction and the denial of the postconviction motion were affirmed by the District of Columbia Court of Appeals on April 13, 2000. A timely petition for a rehearing en banc was filed and that petition was denied on April 25, 2001.

A petition for certiorari to the United States Supreme Court was sought and denied on October 4, 2001. On January 31, 2002, Petitioner filed a pro se motion to recall the mandate in the Court of Appeals. This motion was subsequently denied on March 27, 2002.

On May 7, 2002, a timely pro se petition for rehearing en banc was filed and later denied by the Court of Appeals on July 24, 2002.

On August 7, 2003, Petitioner filed a timely pro se petition for writ of certiorari with the

Supreme Court of the United States. This petition was later denied on October 6, 2003.

WHEREFORE, in consideration of the foregoing, Petitioner requests that this Honorable

Court issue an order vacating his sentence. The Petitioner further requests an evidentiary

hearing so that he can present evidence in support of these meritorious claims.

Respectfully submitted,

_____

Roy Thomas, pro se
Reg. # 11340-007
USP Big Sandy
P.O. Box 2067
Inez, KY  30315

6

## DISTRICT OF COLUMBIA SUPERIOR COURT
## CRIMINAL DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| Respondent, | * | CASE NOS. F-5258-96/F-5329-95 |
| v. | * | |
| **ROY THOMAS** | * | |
| Petitioner. | * | |

## PETITIONER'S MEMORANDUM IN SUPPORT OF MOTION FOR VACATION OF CONVICTION AND SENTENCE AND MOTION FOR EVIDENTIARY HEARING PURSUANT TO D.C. CODE § 23-110

As a matter of introduction, the Petitioner respectfully submits that the events which transpired in the instant case constitute a denial of the Petitioner's rights as guaranteed by the Sixth Amendment to the United States Constitution. His rights were violated when he was sentenced based upon facts not submitted to or proved beyond a reasonable doubt by a jury. Specifically, the existence of these violations have been clarified in the recent U.S. Supreme Court opinions Blakely v. Washington, 124 S.Ct. 2531 (2004) and United States v. Booker, 125 S.Ct. 738 (2005). Furthermore, the Petitioner contends that he is entitled to an evidentiary hearing on these issues.

## STATEMENT OF ISSUES

I.     Petitioner's sentence is illegal in violation of the Fifth and Sixth amendments to the U.S.

constitution and contra to his rights to a jury trial and to be punished solely on facts

proven beyond a reasonable doubt.

II.    Whether the Petitioner is entitled an evidentiary hearing to present evidence in support of

the issues raised.

## STATEMENT OF JURISDICTION

Petitioner's present motion for post-conviction relief is properly before this court. Section

23-110 of the D.C. Code provides:

> A prisoner in custody under sentence of the Superior Court
> claiming the right to be released upon the ground that (1) the
> sentence was imposed in violation of the Constitution of the United
> States or the laws of the District of Columbia . . . may move the
> court to vacate, set aside, or correct the sentence.D.C. Code Ann. §

23-110(a).

The Petitioner contends that he was denied his rights to a jury trial, as guaranteed by the

Sixth Amendment to the United States Constitution, and also violative of his Fifth amendment

protections. "A convicted defendant in custody may attack his sentence on constitutional

grounds at any time by filing a motion under D.C. Code § 23-110 (1996)." Woodard v. United

States, 719 A.2d 966, 972 (D.C. 1998). Where a sentence is illegal in the sense the court goes

beyond its authority by acting without jurisdiction or imposing a sentence in excess of the

statutory maximum provided, then such sentence – because of the gravity of the error, the

unqualified deprivation of one's liberty – may be challenged at any time. Robinson v. United

States, App. D.C., 454 A.2d 810 (1982).

The Petitioner took a direct appeal of his conviction to the District of Columbia Court of

Appeals. Therefore, this motion is properly before this Court.

3

## ARGUMENT

I.  **PETITIONER'S SENTENCE IS ILLEGAL IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS TO THE U.S. CONSTITUTION AND CONTRA TO HIS RIGHTS TO A JURY TRIAL AND TO BE PUNISHED SOLELY ON FACTS PROVEN BEYOND A REASONABLE DOUBT**

   A.  **Many Criminal Sentencing Practices Across the United States are Being Called Into Question as Possibly Violative of the U.S. Constitution**

Recently, the Supreme Court has begun to realize the fundamental defects in way our justice system determines sentences for criminal defendants in a series of decisions. In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In Ring v. Arizona, 536 U.S. 584 (2002), the Supreme Court clarified and reaffirmed this rule. The Ring holding is straightforward and clear-cut: The Apprendi rule applies to any aggravating fact necessary to expose a defendant to punishment beyond an otherwise mandatory statutory limit. Id. As recently observed by the United States District Court for the district of Massachusetts regarding the Sentencing Guidelines, "the Sixth Amendment guarantee of trial by jury has been eroded as never before in the history of our nation, while the institutional judiciary complacently slips into forms of expression and modes of thought that unconsciously reinforce the Department agenda in a powerfully Orwellian way. United States v. Green, 2004 U.S.Dist. LEXIS 11292, *13 (D.Mass June 18, 2004).

After Apprendi, the various courts throughout the country assumed the term "statutory maximum" referred to in Apprendi and Ring, was the maximum sentence set forth under the statute listed in the indictment. The courts have assumed that the term "statutory maximum"

4

does not apply to the various sentencing thresholds established under the federal sentencing guidelines.

The Blakely decision not only clarified what was meant by the term "statutory maximum," but also calls into question the constitutionality of current sentencing practices in federal court. The Court noted that the rule announced in Apprendi reflected two longstanding tenets of common-law criminal jurisprudence: "that the truth of every accusation against the defendant should afterwards be confirmed by a unanimous [jury verdict], and that an accusation which lacks any particular fact which the law makes essential to the punishment is ... no accusation within the requirements of the common law and it is no accusation in reason." (cites omit) Id. at *10. The Court then noted the principle in American jurisprudence that "'every fact which is legally essential to the punishment' must be charged in the indictment and proved to a jury." Id.

The decision in Blakely was further bolstered by the recent decision issued in United States v. Booker, 125 S.Ct. 738 (2005). In Booker, the Court ruled that the federal Sentencing Guidelines were not mandatory in issuing federal sentences, but are to be used merely as an advisory tool. Id. at *7. The decision flowed from Justice Stevens' worry that as sentencing enhancements became greater, "the jury's finding of the underlying crime became less significant." Id. at *33. As such, the Sixth Amendment right to a jury trial was being usurped, requiring change in order to preserve "Sixth Amendment substance." Id. at *34. Furthermore, the court again reiterated its commitment to the ideal that any fact other than a prior conviction which is necessary to support a sentence exceeding the statutory maximum authorized by the jury's finding must be proved to a jury beyond a reasonable doubt. Id. at *45-6.

5

The Petitioner submits that compliance with the Sixth Amendment requires "any fact that increases the penalty for a crime beyond the prescribed statutory maximum" to be proved beyond a reasonable doubt. Apprendi, 530 U.S. at 490. The prescribed "'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Booker, 125 S.Ct. at *45-6; Blakely, 124 S. Ct. at 2536. The jury verdict alone – or the defendant's admission alone – "must authorize the sentence." Id. Therefore, the upper bound of the appropriate guideline range, based on facts proven to a jury beyond a reasonable doubt or admitted by the defendant, establishes the relevant statutory maximum for sentencing purposes. Under the federal Sentencing Guidelines, drug amounts, enhancements based on a specific offense characteristic, and upward departures all have the same effect – namely, they all *increase* the maximum permissible sentence under the guidelines. A judge's reliance on such factors at sentencing is therefore unconstitutional.

Petitioner contends that his sentence violates the constitution in a similar regard. That is, there were facts and considerations outside of that found specifically in the jury verdict, that determined his sentence. This has resulted in a sentence that exceeds the statutory maximum as explained and elaborated on in Blakely and Booker. Therefore, Petitioner argues that his sentence must be vacated and corrected to be in compliance with the principles and black letter law encapsulated in the U.S. Constitution.

**B.      Petitioner's Sentence is Illegal Through the Extra-Verdict Determination and Discretion Used by the Sentencing Judge to Exceed Statutory Maximum**

6

As an initial matter, Petitioner recognizes that the District of Columbia Code currently

has a provision that allows consecutive sentences to be imposed under the circumstances of this

case, to wit:

> A sentence imposed on a person for conviction of an offense shall,
> unless the court imposing such sentence expressly provides
> otherwise, run consecutively to any other sentence imposed on
> such person for conviction of an offense, whether or not the
> offense (1) arises out of another transaction, or (2) arises out of the
> same transaction and requires proof of a fact which the other does
> not.

D.C. Code § 23-112.

Petitioner, however, contends that either the statute itself is unconstitutional or it is

unconstitutional as applied to him.

It is well settled that "consecutive sentences for separate crimes are normal and ordinary

in the enforcement of state and federal criminal laws. Bryant v. Civiletti, 663 F.2d 286 (D.C. Cir.

Aug. 21, 1981). However, there are exceptions to this practice, which have even been codified in

D.C. law, to wit:

> No person shall be consecutively sentenced for the same act or course of conduct
> for the following:
>
> (1)    Theft and fraud;
>
> (2)    Theft and unauthorized use of a vehicle;
>
> (3)    Theft and commercial piracy;
>
> (4)    Identity theft and theft; or
>
> (5)    Identity theft and fraud.

D.C. Code § 22-3203.

Further, the enactment in D.C. Code § 23-112 of a general canon of construction, which

presumes multiple sentences for offenses to run consecutively unless stated to be concurrent, was

not intended to alter the substantive law of murder, and to that extent premeditated murder and

felony murder are not separate offenses for consecutive sentencing purposes. United States v.

Ammidown, 497 F.2d 615 (D.C. Cir. May 10 , 1974).  Therefore, the current situation in that the

"trial judge [is] free to impose consecutive sentences", Petitioner argues, is violative of the

constitution in light of Blakely and Booker.

A recent case in Ohio has picked up on the hazardous practice of letting a judge decide if

a defendant is to serve consecutive sentences based on separate convictions. In State v. Bruce, 1st

Dist. No. C-040421, 2005 Ohio 373, the trial court imposed a maximum sentence on the

defendant, following a finding by the court that Bruce had committed the "worst form of the

offense."  Such a finding is required under R.C. § 2929.14(C) in order for a maximum sentence

to be imposed.  The court found that following Booker, a trial court could not impose such a

sentence because the prescribed statutory maximum sentence is not "the maximum sentence a

judge may impose after finding additional facts, but the maximum he may impose without any

additional findings." Bruce at *P8, *quoting* Blakely at 2537.  This left the maximum possible

sentence of 9 years, the longest the court could impose without making any additional findings of

acts.  While Petitioner's circumstances are not a perfect analogy to Bruce's, the similarity is that

the sentencing judge in Petitioner's case could have made the decision to impose the murder

sentence to run concurrently with his previously imposed sentences.  Needless to say, this

discretion can be abused, because it is completely up to the judge whether or not to impose a

consecutive sentence. *See* D.C. Code § 23-112.

8

Furthermore, just as the Booker court reasoned that it was the mandatory application of

the United States Sentencing Commission's Guidelines or the U.S.S.G. that made it violative of

the constitution, the near mandatory nature of § 23-112 is also troublesome. That is because,

ordinarily a defendant could have separate sentences imposed consecutively, without the judge

finding additional facts – yet if the judge chooses to, he or she could use his or her discretion to

not impose the sentences consecutively. In other words, this gives the judge too much power to

tack sentences on to one another or not. This could be remedied if the prosecution was to come

out in the beginning of the trial that it is looking to seek consecutive sentences, and let the jury

decide if such should be done. That is because, the facts that would support punishment beyond

the statutory maximum of one offense by the conviction of another offense is something that

must be proven beyond a reasonable doubt according to the Sixth amendment to the U.S.

Constitution, as well as Blakely and Booker.

## II.    THE PETITIONER IS ENTITLED TO AN EVIDENTIARY HEARING

The Petitioner contends that he is entitled to an evidentiary hearing on the claims raised in

the motion for post-conviction relief. D.C. Code § 23-110(c) provides that the trial court must

promptly grant a hearing on a 23-110 motion "unless the motion and files and records of the case

conclusively show the prisoner is entitled to no relief". "[A]ny question regarding the

appropriateness of a hearing should be resolved in favor of holding a hearing". Gillis v. United

States, 586 A.2d 726, 728 (D.C. 1991).

The Petitioner submits that the claims he has raised in the present petition are neither

frivolous nor incredible. Also, the scope of the review necessary to resolve these issues

necessarily goes beyond the record. Therefore, the Petitioner suggests that a studied examination

9

by this Court could best occur in an evidentiary hearing. The Petitioner requests that this Court

therefore, order an evidentiary hearing to consider the petitioner's claims for relief.

## **CONCLUSION**

In consideration of the foregoing, Petitioner has been given an illegal sentence which must be vacated and corrected, also he requests that this Honorable Court order an evidentiary hearing on the Petitioner's claims of constitutional violations, so that the Petitioner can put on evidence establishing such violations.

Respectfully submitted,

_____

Roy Thomas, pro se

11

## **VERIFICATION**

Roy Thomas, being first duly sworn, verifies that the facts stated in the foregoing motion and the attached memorandum in support are true to the best of his knowledge and belief.

_____
Roy Thomas

Pursuant to 28 U.S.C. § 1746, I, Roy Thomas, declare under the penalty of perjury that the foregoing is true and correct. Executed on this _____ day of _____ 2005.

_____
Roy Thomas

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the foregoing was sent this ____ day of

_____, 2005, by regular U.S. mail with sufficient postage affixed to the United States

Attorney's Office, 555 4th Street, N.W., Washington, D.C. 20001.


_____

Roy Thomas, pro se

13

**Exhibit G - Letter of August 8, 2005**

Roy Thomas
Reg. No. 11340-007
USP- Big Sandy
P. O. Box 2068
Inez, KY 41224


August 8, 2005


Contact Person
National Legal Professional Associates
Margaret A. Robinson Advocacy Center
11331 Grooms Road, Suite 1000
Cincinnati, Ohio 45242


Dear Contact Person:

In a letter of July 13, 2005, which I received on or about July 20, 2005, Attorney Charles A. Murray enclosed a copy of the Motion To Correct Illegal Sentence pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure.

As soon as I received a copy of the above-mentioned, I called your offices and Mr. Murray's Office to inform both of you that I did not want the motion filed in my behalf, and to seek the return of the money that I had sent to both you and Mr. Murray.

In a letter of July 25, 2005, I memorialized the reasons for my decision and I sought to be more than fair in still allowing you to keep two-thousand dollars($2,000.00), and to return to me the balance of the sixty-five hundred dollars($6,500.00), that was paid for your services.

Since that time, I have met with nothing but indifference and a total disregard of my concerns, along with staff attempting to convince me that I should now allow some other motion to be compiled for me.

I believe that I have been more than fair, under the circumstances and I have been treated with disrespect and a general belief that I can be forced to accept some form of services for my money, with no regard for my wishes to not have any further dealings with your agency or Mr. Murray.

National Legal Professional Associates
August 8, 2005
Page Two


During the interim, I have called your offices and Mr. Murray's office several times only to be met with indignation and the attitude that I must accept your services for the money I have paid, rather than the refund that I seek.

In view of all that has happened, I feel that I have no choice but to set a deadline date for the return of my money or legal action will ensue. Therefore, I am providing you a period of Three(3) weeks from the date of your anticipated receipt of this letter, to have the money returned to my prison account at the address provided in the July 25, 2005, letter to you. I expect to have the funds returned to my account on or before August 31, 2005.

I have considered the matters herein and decided that I do not wish your services in any capacity. This is not subject to change, and I have sought to end the business relationship in an admirable manner, however, should you for any reason cause me to litigate this matter, I assure you that it will be litigated to the fullest extent of the law. I would hope that you will return the balance of my funds to my account expediently.

/s/ Roy Thomas
ROY THOMAS

SUBSCRIBED AND SWORN TO BEFORE ME THIS _8_ day of August, 2005.



_nilan_     CSW

AUTHORIZED BY THE
1955, AS AMENDED, TO ADMINISTER
OATHS 18 U.S.C. 4004

Sincerely,
Roy Thomas
Roy Thomas
Reg. No. 11340-007

Roy Thomas
Reg. No. 11340-007
USP- Big Sandy
P. O. Box 2068
Inez, KY 41224


August 8, 2005


Charles A. Murray, Esquire
Law Offices Charles A. Murray, P.A.
1300 Third Street South
Suite 302B
Naples, FL 34102


Dear Mr. Murray:

Please find enclosed a letter that I mailed to NLPA dated August 8, 2005, in which I again make known my desire that my funds be returned to me immediately. As I have made known to you and your associates, I do not wish for NLPA to do any work for me and I do not wish for you to file anything in my behalf.

Rather than repeat the same things again, I have enclosed a copy of the letter to NLPA. As you know, I have called your office numerous times and written you previously to make certain that there was no doubt that the Rule 35 Motion is unacceptable and I do not wish any research or other services performed by you or NLPA, in my behalf.

Just as with NLPA, I would appreciate you returning to my account, three-thousand dollars($3,000.00), which encompasses the balance from the money sent to you personally. If this is not accomplished on or before August 31, 2005, then I will assume that you have decided not to return my money and I will initiate legal proceedings to obtain the return of my money along with punitive damages and complaints with the Bar Association.

I still seek a smooth settlement of the matter, however, if I am forced to seek legal action, I will pursue it to the fullest extent possible.

Thank you for your timely attention to the matter addressed herein.


                                    Sincerely,

                                    Roy Thomas
                                    Reg. No. 11340-007


Enclosure:

**Exhibit H - Letter of August 23, 2005**

# NATIONAL LEGAL PROFESSIONAL ASSOCIATES

London, England
Naples, Florida
Mobile, Alabama
Houston, Texas

Margaret A. Robinson Advocacy Center
11331 Grooms Road, Suite 1000
Cincinnati, Ohio 45242
Phone: 513-247-0082 • Fax: 513-247-9580
Website: www.NLPA.com • E-mail: contactus@nlpa.com

*By Lawyers
For Lawyers &
Their Clients*

August 23, 2005

Charles A. Murray
Attorney at Law
1300 Third Street South, Suite 302B
Naples, FL  34102

Re:    *Roy Thomas – 28 U.S.C. § 2241 petition*

Dear Mr. Murray:

As requested, please find NLPA's draft of the 28 U.S.C. § 2241 petition for your client, Roy Thomas. This is the third motion - without receiving additional funds - that we have completed for you and your client; the first two were motions pursuant to D.C. Superior Court Criminal Rule 35 and D.C. Code § 23-110. The attached 2241 motion NLPA has prepared definitely concludes the extent of research and drafting we can perform in light of our fee schedule. If you, or Mr. Thomas, desire further research and writing, financial arrangements must be made prior to any additional research being prepared regarding Mr. Thomas's case.

In providing this research to you as counsel, we want to make it clear that we understand that you as counsel make all decisions as to how (if at all) this research is to be utilized. Compliance with ethical precepts prevailing in this applicable jurisdiction or jurisdictions concerning the use by you as counsel of our research work product is solely the responsibility of you as counsel in this matter. Therefore, as always, we have included a copy of our work on the enclosed computer disk so that you will be able to utilize our work in any manner you deem appropriate

Please call if you have any questions or comments. We hope that the enclosed research is beneficial. It has been a pleasure working with you and we look forward to working with you again in the future.

Sincerely,

*National Legal Professional Associates*

Enclosures

Page 2
August 23, 2005

cc:    Roy Thomas
        11340-007
        USP Big Sandy
        P.O. Box 2067
        Inez, KY  30315

        Patricia Jordan
        2711 Boones Lane
        Forestville, MD  20747

**Exhibit I - Petition pursuant to 28 U.S.C. § 2241**

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY**

| | |
|---|---|
| ROY THOMAS, | ) |
| Reg. No. 11340-007, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
|     v. | ) |
| | ) |
| SUZANNE HASTINGS, WARDEN, | ) |
| USP Big Sandy, | ) |
| | ) |
|     Respondent. | ) |

Case Nos. F-5258-96/F-5329-95

## PETITION FOR HABEAS CORPUS RELIEF
## PURSUANT TO 28 U.S.C. § 2241

Petitioner, ROY THOMAS, by and through counsel, hereby moves this Honorable Court to vacate the sentence imposed in this case, based upon violations of Thomas' rights as guaranteed by the Sixth Amendment to the United States Constitution. Also, Thomas' Fifth Amendment right to due process of law has been affected. His rights were further violated when he was sentenced based upon facts and factors not submitted to or proved beyond a reasonable doubt by a jury. *See* Jones v. United States, 526 U.S. 227 (1999); Apprendi v. New Jersey, 530 U.S. 466 (2000); and Ring v. Arizona, 536 U.S. 584 (2002); Blakely v. Washington, 124 S. Ct. 2531 (2004); and United States v. Booker, 125 S. Ct. 738 (2005). Thomas further moves this Court to order an evidentiary hearing on the issues raised.

As such, his sentence is constitutionally invalid, and he should be re-sentenced without regard to those factors. Further, § 2241 is the appropriate vehicle to pursue relief in this instance pursuant to D.C. Code § 16-1901. In support thereof, Thomas states the following:

1.  On February 16, 1991, a District of Columbia grand jury returned a nine count indictment against Petitioner and two co-defendants. The charges included: first degree murder while armed (D.C. Code §§ 22-2401 and 22-3202); assault with intent to murder while armed (D.C. Code §§ 22-503, 22-2403 and 22-3202); assault with intent to kill while armed (D.C. Code §§ 22-501 and 22-3202); three counts of carrying a pistol without a license (D.C. Code § 22-3204 (a)); and three counts of possession of a firearm during the commission of a crime of violence or dangerous offense (D.C. Code § 22-3204 (b)). The indictment did not charge conspiracy.

2.  On October 1, 1992, Thomas was convicted by a jury in the Superior Court of the District of Columbia, Criminal Division, for the lesser included offenses of assault with a dangerous weapon, carrying a pistol without a license, and possession of a firearm during the commission of a crime of violence or dangerous offense. The jury was unable to reach a verdict on the first-degree murder while armed charge and on October 6, 1992, the trial court declared a mistrial on that count.

3.  On February 10, 1993, Judge Taylor sentenced Thomas to concurrent terms of imprisonment totaling five to fifteen years, one year imprisonment for carrying a pistol without a license, and separate five to fifteen year terms of imprisonment for assault with a dangerous weapon and possession of a firearm during the commission of a crime of violence.

4.  On June 13, 1995, Thomas was retried for the first-degree murder while armed charged.

5.  On June 18, 1995, Thomas was found guilty by jury on the first-degree murder while armed charge.

2

6.   On June 27, 1995, Judge Burnett sentenced Thomas to twenty years to life to run

     consecutive the sentence being served.

7.   On July 6, 1995, Thomas filed a timely notice of appeal. However, prior to briefing the

     appeal, Thomas filed a District of Columbia post-conviction motion pursuant to § 23-110,

     which resulted in a stay of the appeal. Thomas raised the following issues in his § 23-110

     motion:

     I.    Ineffective assistance of counsel resulted in a structurally defective
           trial mechanism.

           A.   Counsel's deficient performance resulted in a constructive
                amendment of the indictment which permitted the prosecutor to
                effectively alter the charge against Thomas to fit the government's
                proof.

           B.   The prosecutor persuaded the trial court to take action which
                effectively amended the indictment without meaningful opposition
                from the defense.

           C.   The grand jury clause limited the possible basis for Thomas'
                conviction to permit jury findings solely on the elements of the
                crime as charged by the grand jury.

           D.   Conspiracy to commit an assault is not a lesser included offense of
                first-degree murder while armed.

           E.   Conspiracy is a separate and distinct statutory offense unlike aiding
                and abetting; conviction of a substantive crime, based on
                conspiracy findings requires an indicted conspiracy.

           F.   Counsel's deficient performance resulted in the government being
                relieved of its burden of proof.

           G.   Counsel's deficient performance deprived Thomas of a unanimous
                jury verdict.

           H.   Counsel's summation was pro forma.

3

8.  On October 8, 1998, the court denied Thomas' post-conviction motion without a hearing. Thomas filed a timely notice of appeal in the District of Columbia Court of Appeals on October 19, 1998.

9.  On March 26, 1999, the Court of Appeals consolidated the direct appeal, No 95-CF-912, and the post-conviction appeal, No. 98-CO-1545. The issues presented for appeal were as follows:

I.   Whether the trial court constructively amended the indictment which charged Thomas with a single count of first degree murder while armed by shooting the decedent with a pistol, and the trial court instructed the jury to convict Thomas if it found that he was a member of an unchanged conspiracy to assault the decedent.

II.  Whether the trial court properly instructed the jury on vicarious liability for co-conspirator acts where the only evidence of a conspiracy was evidence that four assailants acted in concert in assaulting the decedent with weapons.

III. Whether the government was relieved of its burden of proof on the elements of armed first degree murder by a jury instruction that Thomas should be convicted if the government proved he was a member of a conspiracy to commit a simple assault against the decedent, absent a requirement that the government prove that the murder was committed in furtherance of the conspiracy, was within the scope of Thomas' agreement, and was a reasonably foreseeable consequence of the assault.

The issues presented on post-conviction appeal (No. 98-CO-1545) are as follows:

A.   Whether Thomas was denied the effective assistance of counsel where the government's primary theory of the case was Thomas' vicarious liability for acts of a co-conspirator, and counsel was unaware of the legal and factual components of that theory until after the evidence closed and consequently failed to prepare and present a defense.

4

B.    Whether Thomas was denied effective assistance of counsel where counsel failed to raise an available objection under the jury clause to an instruction which constructively amended the indictment.

    (1).    Whether Thomas was denied effective assistance of counsel when counsel failed to provide the trial court with an available judicially approved instruction on vicarious liability for co-conspirators acts where the governments proposed instruction removed its burden of proof on armed first-degree murder.

    (2)    Whether Thomas was denied effective assistance of counsel where counsels belated recognition of the governments primary theory of the case resulted in a pro forma summation that was not responsive to the governments detailed argument on it's conspiracy theory.

C.    Whether Thomas was denied effective assistance of counsel where counsel refused a special instruction and verdict form for a uninformed, frivolous reason and the jury was instructed on three theories of liability presenting a likelihood of non-unanimity.

D.    Whether Thomas was denied effective assistance of counsel where an expert witness' opinion that four firearms were used in the crime charged was unsupported, the evidence supported the fact that three firearms were fired, Thomas was one of four possible assailants and claimed he did not fire a weapon, and counsel failed to challenge the experts opinion.

10.    Both the conviction and the denial of the post-conviction motion were affirmed by the District of Columbia Court of Appeals on April 13, 2000.

11.    A timely petition for a rehearing en banc was filed and that petition was denied on April 25, 2001.

12.    A petition for certiorari to the United States Supreme Court was sought and denied on October 4, 2001.

13.    On January 31, 2002, Thomas filed a *pro se* motion to recall the mandate in the Court of Appeals. This motion was subsequently denied on March 27, 2002.

14.     On May 7, 2002, a timely pro se petition for rehearing en banc was filed and later denied by the Court of Appeals on July 24, 2002.

15.     On August 7, 2003, Thomas filed a timely *pro se* petition for writ of certiorari with the Supreme Court of the United States. This petition was later denied on October 6, 2003.

16.     Thomas is currently in the custody of the United States Penitentiary, Big Sandy in Inez, Kentucky. Thomas' inmate registration number is 11340-007.

WHEREFORE, in accordance with the well established constitutional principles of due process and the right to a jury trial and the Supreme Court decisions in Jones v. United States, 526 U.S. 227 (1999); Apprendi v. New Jersey, 530 U.S. 466 (2000); Ring v. Arizona, 536 U.S. 584 (2002), Blakely v. Washington, 124 S. Ct. 2531 (2004), and United States v. Booker, 125 S. Ct. 738 (2005), Thomas submits that his current confinement is illegal and he must be released from incarceration.

Respectfully submitted,

By:     _____
        Roy Thomas, *pro se*

6

## MEMORANDUM OF LAW IN SUPPORT

**I.    THOMAS' CLAIMS ARE PROPERLY RAISED IN A PETITION PURSUANT TO 28 U.S.C. § 2241.**

Thomas' claims are properly raised through this motion pursuant to 28 U.S.C. § 2241.

Generally, a federal prisoner must file a motion pursuant to 28 U.S.C. § 2255 to challenge his

conviction or sentence. Tripati v. Henman,843 F.2d 1160, 1162 (9th Cir.) *cert. denied* 488 U.S.

982 (1988). A § 2255 motion is the appropriate remedy for violations that occur at or prior to the

time of sentencing. Id. A petition pursuant to 28 U.S.C. § 2241 is generally used to challenge

the execution of an individual's sentence. Id.; See also United States v. Mittelsteadt, 790 F.2d

39, 40-41 (7th Cir. 1986) (habeas corpus proceeding pursuant to §2241 is the proper remedy for

challenging information in the presentence investigation report).

A § 2241 petition is also appropriate if "it also appears that the remedy by [§ 2255]

motion is inadequate or ineffective to test the legality of his detention." Id.; United States v.

Pirro, 104 F.3d 297 (9th Cir. 1997) (holding that delay in considering a §2255 motion caused by a

pending appeal is not sufficient to make the §2255 inadequate or ineffective); See also

Tripati,843 F.2d at 1162-63 (finding that a § 2255 motion was not inadequate or ineffective

merely because the sentencing court denied relief on the merits); Estep v. United States, 316 F.2d

767, 769 (9th Cir. 1963)( ruling that movant's unspecified fears of unequal treatment by the

sentencing courts did not render § 2255 motion inadequate); Stirone v. Markley, 345 F.2d 473,

475 (7th Cir. 1963) (suggesting that a § 2255 remedy might be ineffective where the sentencing

court refuses to hear a § 2255 petition altogether or where the court delays in hearing the petition

inordinately).

7

Although there is no clear definition of what constitutes inadequate or ineffective, the Second Circuit held in <u>Triestman</u> that "inadequate or ineffective" means "at least cases where the petitioner cannot utilize § 2255 and in which failure to allow for collateral review would raise serious constitutional questions." See <u>United States v. Triestman</u>, 124 F.3d 361 (2nd Cir. 1997). In <u>Triestman,</u> the Second Circuit held that the defendant could raise a claim of actual innocence to a 924(c) charge by means of a motion pursuant to 28 U.S.C. § 2241.

Furthermore, since the instant case originates from the District of Columbia (D.C.), Thomas is using D.C. Code § 16-901 to file the instant motion.  That is, the D.C. statute calls for petitions for *writ of habeas corpus* directed at federal officers and employees, to be filed in the United States District Court for the District of Columbia. D.C. Code § 16-901(b).  However, since Thomas is in the custody of a federal prison outside of D.C., he must pursue his *habeas corpus* relief in the proper federal court in the state in which he is housed. *See* <u>United States v. Crockett,</u> 861 A.2d 604 (D.C. 2004).  As stated, Thomas is now serving his sentence at USP Big Sandy, Inez, Kentucky, which is within the jurisdiction of the U.S. District Court, Eastern District of Kentucky.

In the instant case, Thomas has set forth issues of constitutional magnitude that raise questions about the legality of his incarceration.  He argues that intervening Supreme Court decisions demonstrate that he was sentenced in excess of the statutory maximum under the Sixth Amendment.   In light of these claims, 28 U.S.C. § 2255 provides an inadequate remedy for Thomas to test the legality of his detention.   Accordingly, Thomas' constitutional challenges to his current confinement under § 2241 is appropriate and this Court should address the merits of his claims.

8

II.   **THOMAS' SENTENCE IS ILLEGAL IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS TO THE U.S. CONSTITUTION AND CONTRA TO HIS RIGHTS TO A JURY TRIAL AND TO BE PUNISHED SOLELY ON FACTS PROVEN BEYOND A REASONABLE DOUBT**

A.   **Many Criminal Sentencing Practices Across the United States are Being Called Into Question as Possibly Violative of the U.S. Constitution.**

Recently, the Supreme Court has begun to realize the fundamental defects in the way our justice system determines sentences for criminal defendants in a series of decisions. In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In Ring v. Arizona, 536 U.S. 584 (2002), the Supreme Court clarified and reaffirmed this rule. The Ring holding is straightforward and clear-cut: The Apprendi rule applies to any aggravating fact necessary to expose a defendant to punishment beyond an otherwise mandatory statutory limit. Id. As recently observed by the United States District Court for the District of Massachusetts regarding the Sentencing Guidelines, "the Sixth Amendment guarantee of trial by jury has been eroded as never before in the history of our nation, while the institutional judiciary complacently slips into forms of expression and modes of thought that unconsciously reinforce the Department agenda in a powerfully Orwellian way. United States v. Green, 2004 U.S.Dist. LEXIS 11292, *13 (D.Mass June 18, 2004).

After Apprendi, the various courts throughout the country assumed the term "statutory maximum" referred to in Apprendi and Ring, was the maximum sentence set forth under the statute listed in the indictment. The courts have assumed that the term "statutory maximum"

9

does not apply to the various sentencing thresholds established under the federal sentencing guidelines.

The Blakely decision not only clarified what was meant by the term "statutory maximum," but also calls into question the constitutionality of current sentencing practices in federal court.  The Court noted that the rule announced in Apprendi reflected two longstanding tenets of common-law criminal jurisprudence: "that the truth of every accusation against the defendant should afterwards be confirmed by a unanimous [jury verdict], and that an accusation which lacks any particular fact which the law makes essential to the punishment is ... no accusation within the requirements of the common law and it is no accusation in reason." (cites omit) Id. at *10.  The Court then noted the principle in American jurisprudence that "'every fact which is legally essential to the punishment' must be charged in the indictment and proved to a jury." Id.

The decision in Blakely was further bolstered by the recent decision issued in United States v. Booker, 125 S.Ct. 738 (2005).  In Booker, the Court ruled that the federal Sentencing Guidelines were not mandatory in issuing federal sentences, but are to be used merely as an advisory tool.  Id. at *7.  The decision flowed from Justice Stevens' worry that as sentencing enhancements became greater, "the jury's finding of the underlying crime became less significant."  Id. at *33.  As such, the Sixth Amendment right to a jury trial was being usurped, requiring change in order to preserve "Sixth Amendment substance." Id. at *34.  Furthermore, the court again reiterated its commitment to the ideal that any fact other than a prior conviction which is necessary to support a sentence exceeding the statutory maximum authorized by the jury's finding must be proved to a jury beyond a reasonable doubt.  Id. at *45-6.

10

Thomas submits that compliance with the Sixth Amendment requires "any fact that increases the penalty for a crime beyond the prescribed statutory maximum" to be proved beyond a reasonable doubt. Apprendi, 530 U.S. at 490. The prescribed "'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Booker, 125 S.Ct. at *45-6; Blakely, 124 S. Ct. at 2536. The jury verdict alone - or the defendant's admission alone - "must authorize the sentence." Id. Therefore, the upper bound of the appropriate guideline range, based on facts proven to a jury beyond a reasonable doubt or admitted by the defendant, establishes the relevant statutory maximum for sentencing purposes. Under the federal Sentencing Guidelines, drug amounts, enhancements based on a specific offense characteristic, and upward departures all have the same effect - namely, they all *increase* the maximum permissible sentence under the guidelines. A judge's reliance on such factors at sentencing is therefore unconstitutional.

Thomas contends that his sentence violates the constitution in a similar regard. That is, there were facts and considerations outside of that found specifically in the jury verdict, that determined his sentence. This has resulted in a sentence that exceeds the statutory maximum as explained and elaborated on in Blakely and Booker. Therefore, Thomas argues that his sentence must be vacated and corrected to be in compliance with the principles and black letter law encapsulated in the U.S. Constitution.

11

**B.**    **Thomas' Sentence is Illegal Through the Extra-Verdict Determination and Discretion Used by the Sentencing Judge to Exceed Statutory Maximum.**

As an initial matter, Thomas recognizes that the District of Columbia Code currently has

a provision that allows consecutive sentences to be imposed under the circumstances of this case,

to wit:

> A sentence imposed on a person for conviction of an offense shall,
> unless the court imposing such sentence expressly provides
> otherwise, run consecutively to any other sentence imposed on
> such person for conviction of an offense, whether or not the
> offense (1) arises out of another transaction, or (2) arises out of the
> same transaction and requires proof of a fact which the other does
> not.

D.C. Code § 23-112.

Thomas, however, contends that either the statute itself is unconstitutional or it is

unconstitutional as applied to him.

It is well settled that "consecutive sentences for separate crimes are normal and ordinary

in the enforcement of state and federal criminal laws. Bryant v. Civiletti, 663 F.2d 286 (D.C. Cir.

Aug. 21, 1981). However, there are exceptions to this practice, which have even been codified in

D.C. law, to wit:

> No person shall be consecutively sentenced for the same act or course of conduct for the
> following:
>
> (1)    Theft and fraud;
>
> (2)    Theft and unauthorized use of a vehicle;
>
> (3)    Theft and commercial piracy;
>
> (4)    Identity theft and theft; or
>
> (5)    Identity theft and fraud.

12

D.C. Code § 22-3203.

Further, the enactment in D.C. Code § 23-112 of a general canon of construction, which presumes multiple sentences for offenses to run consecutively unless stated to be concurrent, was not intended to alter the substantive law of murder, and to that extent premeditated murder and felony murder are not separate offenses for consecutive sentencing purposes. United States v. Ammidown, 497 F.2d 615 (D.C. Cir. May 10 , 1974). Therefore, the current situation in that the "trial judge [is] free to impose consecutive sentences", Thomas argues, is violative of the constitution in light of Blakely and Booker.

A recent case in Ohio has picked up on the hazardous practice of letting a judge decide if a defendant is to serve consecutive sentences based on separate convictions. In State v. Bruce, 1st Dist. No. C-040421, 2005 Ohio 373, the trial court imposed a maximum sentence on the defendant, following a finding by the court that Bruce had committed the "worst form of the offense." Such a finding is required under R.C. § 2929.14(C) in order for a maximum sentence to be imposed. The court found that following Booker, a trial court could not impose such a sentence because the prescribed statutory maximum sentence is not "the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Bruce at *P8, *quoting* Blakely at 2537. This left the maximum possible sentence of 9 years, the longest the court could impose without making any additional findings of acts. While Thomas' circumstances are not a perfect analogy to Bruce's, the similarity resides in that the sentencing judge in Thomas' case could have made the decision to impose the murder sentence to run concurrently with his previously imposed sentences. Needless to say, this

13

discretion can be abused, because it is completely up to the judge whether or not to impose a consecutive sentence. *See* D.C. Code § 23-112.

Furthermore, just as the Booker court reasoned that it was the mandatory application of the United States Sentencing Commission's Guidelines or the U.S.S.G. that made it violative of the constitution, the near mandatory nature of § 23-112 is also troublesome. Ordinarily a defendant could have separate sentences imposed consecutively, without the judge finding additional facts – yet if the judge chooses to, he or she could use his or her discretion to not impose the sentences consecutively. In other words, this gives the judge too much power to tack sentences on to one another or not. This could be remedied if the prosecution was to come forward in the beginning of the trial stating that it is looking to seek consecutive sentences, and let the jury decide if such should be done. The facts that would support punishment beyond the statutory maximum of one offense by the conviction of another offense is something that must be proven beyond a reasonable doubt according to the Sixth amendment to the U.S. Constitution, as well as Blakely and Booker.

## CONCLUSION

In consideration of the foregoing, Petitioner Thomas prays this Court to issue an Order vacating the Petitioner's sentence and provide for re-sentencing so that the Petitioner may receive a constitutionally valid sentence.

Respectfully submitted,

_____

Roy Thomas, *pro se*

14

## **VERIFICATION**

Roy Thomas, being first duly sworn, verifies that the facts stated in the foregoing motion and the attached memorandum in support are true to the best of his knowledge and belief.

_____
Roy Thomas

Pursuant to 28 U.S.C. § 1746, I, Roy Thomas, declare under the penalty of perjury that the foregoing is true and correct. Executed on this _____ day of _____ 2005.

_____
Roy Thomas

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was sent this ____ day of _____, 2005, by regular U.S. mail with sufficient postage affixed to the United States Attorney's Office, 555 4th Street, N.W., Washington, D.C. 20001.

_____
Roy Thomas, *pro se*

15

**Exhibit J - Letter of August 26, 2005**

## NATIONAL LEGAL PROFESSIONAL ASSOCIATES

London, England
Naples, Florida
Mobile, Alabama
Houston, Texas

Margaret A. Robinson Advocacy Center
11331 Grooms Road, Suite 1000
Cincinnati, Ohio 45242
Phone: 513-247-0082 • Fax: 513-247-9580
Website: www.NLPA.com • E-mail: contactus@nlpa.com

*By Lawyers*
*For Lawyers &*
*Their Clients*

August 26, 2005

Roy Thomas
11340-007
USP Big Sandy
P.O. Box 2067
Inez, KY 30315

Dear Mr. Thomas,

I am writing to follow up on a telephone call we received from Lorenzo last week and a call you placed to our office last week as well. You stated that as far as you are concerned, the "damage is done" and you have lost your faith in your legal team. You allege that you have been given the "run around" and that you do not feel NLPA is responding to your concerns in the research and preparation of your post-conviction motion. You stated that this is your life and you cannot afford to be "playing around".

Roy, we certainly understand your frustrations. You are well aware of our excellent track record that NLPA has developed over the past twenty years in helping defendants. I believe you also know that we are committed to continuing to work with our clients and their lawyers in making revisions and modifications to pleadings our lawyers prepared until everything is ready to be filed in court and meets the satisfaction of the attorney of record and the defendant. We don't dispute how critical this situation is but, I do think you are making an improper decision in directing that no further research be prepared for you and your counsel and that your file be closed out. By doing this you are eliminating a critical part of your defense team. Nonetheless, as you stated, you are the person serving the sentence and you certainly do have the right to make this decision.

Thus far we have prepared three different motions for your counsel, Charles Murray. The first motion was prepared based upon our feelings that it gave you a better chance of getting back into court than a successive 23-110 motion. You then instructed that you wanted the 23-110 motion and not the rule 35 motion. We prepared that motion. You then contacted attorney Murray and told him you wanted a §2241 motion prepared. NLPA then prepared the §2241 motion. We have also written to you advising you that whichever motion you and your lawyer decide to pursue our attorneys are committed to continuing to work with you and your counsel in making modifications and revisions to that motion until your attorney advises us that the motion was ready to be filed in court.

The agreement that we have entered into with you and your financial supporters provides that in a situation like this, NLPA is to determine the time that has been spent on the research and then bill at the rate of $175.00 per hour in order to determine if a

refund is available. NLPA has now spent an excess of 57 hours not only the research but also on numerous administrative matters relating to your case. Therefore, this means that unfortunately no refund is available to be sent.

I would ask that you rethink this situation as we do want to continue to help you. I would hate to see these funds be wasted. We are happy to continue to work on modifications to any one of the three motions that were prepared at no additional cost. Therefore, I urge you to get in touch with Mr. Murray and make a decision concerning any modifications to the motion that need to be made. NLPA will then make those changes.

Sincerely yours,

*H. Wesley Robinson*

H. Wesley Robinson
Senior Management Consultant
signed in Mr. Robinson's absence to avoid delay

cc:    Lorenzo  Irving

**Exhibit K - Letter from BBB**

08/05/2008 TUE 16:23  FAX 7275396301  BBB of West Florida                                    ⒲001/018



Better Business Bureau of West Florida, Inc.
2655 McCormick Drive
Post Office Box 7950
Clearwater, FL  33758-7950
(727) 535-5522 | (800) 525-1447
Fax: (727) 539-6301
www.bbb.org

August 5, 2008

Mr. Wesley Robinson
National Legal Professional Associates
PMB 113 27499 Riverview Center Blvd.
Bonita Springs, FL  34134-4313

RE: BBB Arbitration

Dear Mr. Robinson:

This letter is to inform of the manner is which an Arbitration hearing is conducted.

According to the BBB Rules of Arbitration (Binding), the BBB "at your request or at its option, may arrange to have your statement and evidence presented by telephone or in writing" for an Arbitration hearing.

It is not required for parties involved in an arbitration dispute to participate at the hearing in person.

I hope this letter serves efficient to your recent request to clarify the manner in which parties participate in the BBB Arbitration process.

Please let me know if we can be of further assistance.

Sincerely,

Laura Gainey ext. 3310
Trade Practice Specialist

Enclosure – BBB Rules of Arbitration (Binding) – Rule # 13

**Exhibit L - BBB Arbitration Rules**

Case 1:07-cv-00892-RMC    Document 31-3    Filed 08/07/2008    Page 97 of 104

Contact Us   Find a BBB   Site Map   Text Size   Search   Enter Score

For Consumers
For Businesses
For Charities and Donors        In West Florida
About Us
News Center

Find information you're looking for,   I want to...

Home   For Consumers   Programs and Services   Dispute Resolution Services   Dispute Resolution Rules and Brochure

Rules of Arbitration (Binding)

**For Consumers**

Check Out a
Business or Charity

Complaints

Resource Library

Compliment a
Business

Recommend a
Business for
Accreditation

BBB Accredited
Business & Charity
Directory

Programs and
Services
BBB Reliability
Reports™
BBB AUTO LINE
®
BBB Military Line ®
BBBOnLine®
Dispute Resolution
Services

Find a BBB

# Rules of Arbitration (Binding)

## ARBITRATION
BBB is a nonprofit organization supported by local businesses. It
is dedicated to promoting and fostering the highest ethical
relationship between businesses and the public through
education and voluntary self-regulation.

Your BBB assists in the resolution of disputes between a business
and its customers. BBBs have a national reputation for fairness
because they remain neutral in a dispute. They do not take sides
but work to get the problem settled as quickly as possible.

If you have a marketplace dispute, BBB can offer you several
ways to resolve it. Arbitration is one dispute resolution (DR)
option: BBB provides a professionally trained arbitrator who will
listen to both sides, weigh the evidence and make a decision
about the dispute.

## What is arbitration?
Arbitration is an informal process in which two parties present
their views of a dispute to a neutral third party, an arbitrator,
who will decide how to resolve the dispute.

Many businesses participating in our DR programs have agreed
to arbitrate disputes with their customers within defined limits.
Other businesses ask BBB to provide arbitration on a case-by-
case basis.

The issues and the types of awards that the arbitrator may
consider in your case will be outlined in a document called the
Agreement to Arbitrate. BBB will work with you to write the
Agreement to Arbitrate so it is based on the facts of your case.
The arbitrator will be asked to make a decision that he or she
believes is fair based on the facts of your case.

08/05/2008 TUN 16:27 FAX 7276306301 BBB of West Florida   Filed 08/07/2008   Page 98 of 104   2010/015

such notice is waived by all parties.

### 11. TECHNICAL EXPERTS

At the request of the arbitrator, BBB will make every effort to obtain an impartial technical expert to inspect the product involved or the service performed.

The expert's findings will be presented in writing or in person, at BBB's option, either before, during or after the hearing. In any case, you will have an opportunity to evaluate and comment on the qualifications and findings of the expert.

You also have the right to have your own technical expert serve as a witness at your own expense.

### 12. HEARING NOTICE

BBB will set a date, time (during normal business hours) and place for your arbitration hearing. The hearing will be set with due regard for the schedule of the parties and the arbitrator. Notice of the date, time and place of the hearing will be sent to you at least 10 days in advance of the hearing.

If you object to the date, time or place stated in your notice, contact BBB immediately. However, BBB reserves the right to make the final decision as to the date, time and place for the arbitration hearing.



### 13. MANNER IN WHICH HEARING IS CONDUCTED

Although most arbitrations involve in-person hearings, BBB, at your request or at its option, may arrange to have your statement and evidence presented by telephone or in writing.

To the extent practical, BBB will arrange for the hearing to be held at a location convenient to the customer.

### 14. ATTENDANCE AT HEARINGS

BBB has the option to arrange for its staff, volunteers from its pool of arbitrators, or government representatives to attend arbitration hearings.

·For any other observer to attend a hearing, BBB will first determine that reasonable accommodations exist and then make sure that the parties and the arbitrator have no objection to the presence of an observer. If there is room and no objection, the observer shall be subject to BBB's directions regarding proper conduct.

.

**Exhibit M - Murray Letterhead**

.

LAW OFFICES
## CHARLES A. MURRAY, P.A.
27499 RIVERVIEW CENTER BLVD., SUITE 113
BONITA SPRINGS, FLORIDA 34134-4313

Licensed to Practice:

State Courts:

State of Florida
State of Maryland
District of Columbia
DC Superior Court
DC Court of Appeals

U.S. District Courts:

Northern District of Florida
Middle District of Florida
Western District of Tennessee
Eastern District of Wisconsin
Western District of Wisconsin
District of Columbia

U.S. Courts of Appeal:

First Circuit
Third Circuit
Fourth Circuit
Fifth Circuit
Sixth Circuit
Seventh Circuit
Eighth Circuit
Ninth Circuit
Tenth Circuit
Eleventh Circuit
DC Circuit

U.S. Court of Federal Claims

U.S. Supreme Court

Various Military Tribunals

Memberships:

National Association of
Criminal Defense Lawyers

Academy of Florida
Trial Lawyers

Association of Trial Lawyers
of America

Association of Federal
Defense Attorneys

Education:

B.S. - U.S.M.A. 1962
J.D. - U. Maryland 1971
M.A. - C.M.U. 1978

Tom,

In accord with our previous conversation — here is recent victory list — & my letter head.

Call if any questions

Charlie

Telephones 239-649-7773 & 866-349-7486 / Facsimile 239-262-3517
E-mail: Charles@CAMurrayLaw.com

**Exhibit N - Murray Victory List**

## CHARLES A. MURRAY, P.A.
## LIST OF RECENT VICTORIES @ 11/08/07

| | | |
|---|---|---|
| Florida v. Rende<br>20th Judicial Circuit<br>03-3236-CF | 2 Felony Counts - (1) Sexual Battery w/Deadly Weapon or Great Force; and (2) Aggravated Assault w/Deadly Weapon | Dismissed |
| Florida v. Cohen<br>20th Judicial Circuit<br>02-2726-MMA | Charged with possession of marijuana after being improperly stopped for illegal window tinting. | Dismissed |
| Florida v. Spencer<br>20th Judicial Circuit<br>02-2868-CFA | 1 Felony Charge of Driving While License Suspended or Revoked and Causing Serious Bodily Injury (in this case death). | Dismissed |
| Florida v. Moody<br>12th Judicial Circuit<br>97-4429T | Defendant received lifetime suspension of his driver's license after third DUI | On 5/12/06 reduced to 10 years suspension (1998 to 2008). Defendant eligible for a business exception license for the remaining 2 years of suspension. |
| Florida v. Noto<br>20th Judicial Circuit<br>05-596-CP(HDH) | Defendant faced indefinite term of incarceration after serving his sentence under the provisions of the Jimmy Ryce Act (for sexual offenders and/or predators) | After one (1) week of trial, State agreed to a settlement that immediately released Defendant. |
| Florida v. Krimmel<br>20th Judicial Circuit<br>03-152-CFA | 32 felony counts including Directing or Promoting a Sexual Performance of a Child and Possession of Photos Depicting Sexual Conduct by a Child. | Pled no contest to a lesser included charge of contributing to the delinquency of a minor; adjudication withheld; credit for one day time served; no probation. |
| US v. Roffman<br>USDC WD of MO<br>4:00-CF-00469 | 42 felony counts of Conspiracy to Defraud the United States (Medicare Fraud); According to US Attorney he was facing 105 years if convicted on all counts. | Pled guilty to 1 count; 41 counts dismissed; Sentenced to 29 months. |
| US v. Dailey<br>USDC SD of FL<br>01-6140-CR | 16 felony counts of bankruptcy fraud. | Pled guilty to 1 count; Sentenced to three years supervised release w/ the first year under home confinement. |
| DC v. Bates<br>97-CF-1896<br>01-CO-1373<br>02-CO-839 | Direct appeal of 1st degree murder conviction. Defendant was serving a life sentence without the possibility of parole. | Court of appeals vacated the order denying motion for new trial and remanded to the trial court for further proceedings. |

\11-08-07 Victory List.wpd

| | | |
|---|---|---|
| Virginia v. Tillery<br>Circuit Court of<br>Suffolk County<br>CR-00F00-236, 237,<br>239, 240, 304, 305,<br>306 & 307 | Habeas Corpus Petition - Defendant alleged that he was wrongly deprived of his right to appeal to the Supreme Court of the Commonwealth of Virginia. | Right to appeal was reinstated. |
| US v. Home<br>USDC MD of PA<br>1:CR-00-274-01 | Defendant faced a 70 month prison sentence. | Sentence reduced to 46 months, with credit for time served in both the state and federal prison systems, resulting in a 5 month sentence. |
| Maine v. Curtis<br>Superior Court of<br>Franklin County<br>FARSC-CR-2003-00080 | Defendant was serving a 7 year sentence for a state conviction which was to be followed by additional time for a federal conviction. | Federal and state sentences will now be served concurrently rather than consecutively. |
| NC v. McKenzie<br>7th DCA from<br>Edgecombe County<br>97-CRS 8598, 8600,<br>8601, 8602 & 8603 | Petition for Writ of Certiorari re: Denial of Motion for Appropriate Relief | Writ was granted and the case remanded for an evidentiary hearing. |
| US v. Sineriz<br>USDC MD of FL<br>97-CR-79-ALL | 6 felony counts of wire fraud.<br>Tried before a jury. | Acquitted. |
| Florida v. Strom | 17 felony counts - RICO, wire fraud, mail fraud and money laundering.  Tried before a jury. | Acquitted. |
| Florida v. Rios<br>7th Judicial Circuit<br>Putnam County<br>97-1631-CF-52 | Defendant was serving a life sentence without the possibility of parole. | Judgment & Sentence vacated. Remanded for new trial. *Ultimately negotiated by local counsel to 10 years in lieu of a new trial. |
| USA v. Gallimore | Defendant was sentenced as a career offender based upon two prior state court convictions. | Brought motion to vacate underlying conviction in state court.  State conviction vacated and case nolle prossed. |
| US v. Gallimore<br>US Court of Appeals<br>Eleventh Circuit<br>04-12457 | Defendant faced 360 months federal prison sentence. | Sentence was vacated and remanded for resentencing. |

| US v. Brinson<br>US Court of Appeals<br>Eleventh Circuit<br>04-16178 | Defendant faced 360 months federal prison sentence. | Sentence was vacated and remanded for re-sentencing. |
|---|---|---|
| State of Florida v Christensen<br>12th Judicial Circuit<br>06-003279CF | 4 Felony Counts –<br>(1) Trafficking in Heroin (4 grams or more)<br>(2) Possession of Controlled Substance<br>(3) Possession of Controlled Substance<br>(4) Possession of Prescription Drug without Prescription | Dismissed |
| State of Florida v Kupetz<br>12th Judicial Circuit<br>07-000693CF | Felony Driving While License Suspended/Revoked Third Degree Felony | Insufficient Evidence to prove beyond reasonable doubt. No charge filed. |
| U.S.A. v. Brooks<br>11th Circuit Court of Appeals<br>2:06-cr-126-FtM | Count Two:<br>Possession with intent to distribute and distribution of fifty grams or more of cocaine base "Crack" cocaine | Reduced sentence of 140 Months below PSI Guidelines of 188 to 235 Months. |
| U.S.A. v. Bekic<br>06:20439-MA<br>US District Ct.<br>WD of Tenn. | Counts One through Four:<br>Transportation of Child Pornography and Aiding and Abetting | Reduced sentence of 60 Months below PSI Guidelines of a possible 180 Months. |

**The hiring of a lawyer is an important decision that should not be based solely upon advertisement. Feel free to ask us about our qualifications and experience.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROY THOMAS, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )     **Civil Action No. 07-892 (RMC)** |
| | ) |
| NATIONAL LEGAL PROFESSIONAL | ) |
| ASSOCIATES, *et al.*, | ) |
| | ) |
|    Defendants. | ) |
| | ) |

**ORDER**

On this _____ day of _____, 2008, came on to be heard the

Defendants' Motion For Relief From Judgment Pursuant to Federal Rule of Civil Procedure 60,

in the Above styled and numbered cause, and after considering the filings and record of this case,

it is the considered opinion of the court that the Motion should be and is hereby ORDERED

   ❑  GRANTED

   ❑  DENIED

_____
District Judge