**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| **ROY THOMAS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 07-892 (RMC)** |
| ) | |
| **NATIONAL LEGAL PROFESSIONAL** ) | |
| **ASSOCIATES,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

---

### DEFENDANTS' BRIEF REGARDING PUNITIVE DAMAGES

COMES NOW the Defendants herein, NATIONAL LEGAL PROFESSIONAL

ASSOCIATES, CHARLES MURRAY, AND H. WESLEY ROBINSON, by and through the

undersigned counsel, and files this Brief in accord with an Order of this Court.  On July 31, 2008,

this Court issued an Order denying the Defendants' Motion for Leave to File a Late Response to

the Show Cause Order and Motions to Set Aside Defaults and to Dismiss, and granting the

Plaintiff judgment in the form of $10,000 compensatory damages.  Further, the July 31 Order

stated that the Defendants had until September 5, 2008 in which to file a brief stating their

position regarding the imposition of punitive damages.  Said brief follows.

### STATEMENT OF THE CASE

The Plaintiff filed a civil complaint against the Defendants herein on May 11, 2007.  On July 23, 2007, default was entered as to each Defendant, as the Defendants had not filed any response to the aforementioned complaint.

On July 27, 2007, the Defendants each filed a motion to set aside the default, arguing that good cause existed to permit the setting aside of the default, that the Plaintiff would not be prejudiced by the set-aside, that the default was not willful, and that the Defendants possessed meritorious defenses.  The Defendants each also filed an answer to the complaint and a motion to dismiss the complaint.  The Plaintiff failed to file timely responses to the Defendants' motions to dismiss and to set aside the default despite being given until October 29, 2007 to file said responses.  The Plaintiff was given an enlargement of time to file responses, until March 1, 2008.  The Plaintiff eventually filed his response on February 19, 2008.  The Defendants promptly filed a reply to the response on March 3, 2008.

On February 27, 2008, this Court entered an order for the Defendants to show cause as to why the motions to dismiss should not be denied.  Unfortunately, counsel for the Defendants was unaware that this order had been entered until reference was made to the order in a letter filed with the court by the Plaintiff on April 14, 2008.  Counsel thereafter verified that the order had been entered by reviewing the online docket, and promptly filed a motion for leave to file late response on April 21, 2008.  The Defendants also filed a response to the February 27 order on April 21, 2008.

On July 31, 2008, this Court entered an Order denying the Defendants motions to set aside default and to dismiss, as well as for leave to file a late response.  The Order also granted

2

judgment to the Plaintiff, granting him $10,000 in compensatory damages.  The Order also gave

the Defendants until September 5, 2008 in which to file a brief regarding its position on the issue

of punitive damages.

## LAW AND ARGUMENTS

I.     **There Does Not Exist Any Legal Basis to Award Punitive Damages to the Plaintiff in this Matter.**

      A.     **There does not exist any reason to award punitive damages based upon the causes of deterrence and retribution.**

Punitive damages are aimed not at compensation but principally at  retribution and

deterring harmful conduct.  Exxon Shipping Co. v. Baker, 128 S.Ct. 2605, 171 L.Ed.2d 570

(2008); see also Moskovitz v. Mount Sinai Medical Center, 69 Ohio St. 3d 638, 651, 1994 Ohio

324, 635 N.E.2d 331, 343 (1994) ("The purpose of punitive damages is not to compensate a

plaintiff, but to punish and deter certain conduct"); Hamilton Development Co. v. Broad Rock

Club, Inc., 248 Va. 40, 45, 445 S. E. 2d 140, 143, 10 Va. Law Rep. 1449 (1994); Loitz v.

Remington Arms Co., 138 Ill. 2d 404, 414, 563 N.E.2d 397, 401, 150 Ill. Dec. 510 (1990); Green

Oil Co. v. Hornsby, 539 So. 2d 218, 222 (Ala. 1989); Masaki v. General Motors Corp., 71 Haw.

1, 6, 780 P.2d 566, 570 (1989); Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S.

424, 432, 121 S. Ct. 1678, 149 L. Ed. 2d 674 (2001) (punitive damages are "intended to punish

the defendant and to deter future wrongdoing"); State Farm Mut. Automobile Ins. Co. v.

Campbell, 538 U.S. 408, 416, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003) ("[P]unitive damages . .

. are aimed at deterrence and retribution"); 4 Restatement § 908, Comment a.

The prevailing rule in American courts also limits punitive damages to cases of

"enormity," where a defendant's conduct is "outrageous," 4 Restatement § 908(2), owing to

"gross negligence," "willful, wanton, and reckless indifference for the rights of others," or behavior even more deplorable.  Baker, 128 S.Ct. at 2621.

Under the umbrellas of punishment and  its aim of deterrence, degrees of relative blameworthiness are apparent.  Baker, *supra*.  Reckless conduct is not intentional or malicious, nor is it necessarily callous toward the risk of harming others, as opposed to unheedful of it. See, e.g., 2 Restatement § 500, Comment a,  pp. 587-588 (1964) ("Recklessness may consist of either of two different types of conduct. In one the actor knows, or has reason to know . . . of facts which create a high degree of risk of . . . harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to, that risk. In the other the actor has such knowledge, or reason to know, of the facts, but does not realize or appreciate the high degree of risk involved, although a reasonable man in his position would do so"). Action taken or omitted in order to augment profit represents an enhanced degree of punishable culpability, as of course does willful or malicious action, taken with a purpose to injure. See 4 id., § 908, Comment e, p. 466 (1979) ("In determining the amount of punitive damages, . . . the trier of fact can properly consider not merely the act itself but all the circumstances including the motives of the wrongdoer . . . "); cf. Alaska Stat. § 09.17.020(g) (2006) (higher statutory limit applies where conduct was motivated by financial gain and its adverse consequences were known to the defendant); Ark. Code Ann. § 16-55-208(b) (2005) (statutory limit does not apply where the defendant intentionally pursued a course of conduct for the purpose of causing injury or damage).

The Defendants submits that there is not a need to punish them and deter their conduct. The Defendants have performed all agreed upon research as called for in the contract, which was to provide the most viable legal research given the Plaintiff's legal position.   This Court stated

that "NLPA prepared, and forwarded to Mr. Murray a motion for sentence reduction, which erroneously argued that Mr. Thomas' sentence was illegal." Order at 1. At no point did this Court define what was "erroneous" about the research prepared by NLPA. NLPA prepared a case evaluation (Exhibit A), a motion to correct an illegal sentence pursuant to D.C. Superior Court Criminal Rule 35(a) (Exhibit B), a successive motion under D.C. Code § 23-110 (Exhibit C), and a motion under 28 U.S.C. § 2241 (Exhibit D). The successive motion under 23-110 and the motion pursuant to 28 U.S.C. § 2241 were undertaken at the Plaintiff's specific request. As this Court is most likely aware, it is such motions that offer little chance of any success and if anything was erroneous, it was the Plaintiff's request at having such research prepared against the advice of counsel and NLPA. However, as can be seen, NLPA still put forth the most viable and professional argument in preparing said research. Further, the research for the successive motion under § 23-110 and the petition under 28 U.S.C. § 2241 was prepared without payment of additional fees.

The Defendants submits that the case evaluation was not erroneous. The case evaluation consisted of a review of the procedural and factual history of the Plaintiff's case. No claim has been made that such was in error. The evaluation then reviewed potential procedural options that could be used to obtain relief from the Plaintiff's conviction and sentence. No claim has been made that this portion of the evaluation was in error. NLPA reviewed such procedures as a motion under D.C. Superior Court Rule 35, a successive motion under D.C. Code 23-110, a motion for new trial, and post-conviction motions under 28 U.S.C. §§ 2254 and 2255. Typically, an evaluation would consist of a review of potential issues to be raised, but such was not undertaken in this case, as the Plaintiff did not pay the full fee owed NLPA for the evaluation.

5

NLPA recommended that the Plaintiff's most viable options would be via a motion to correct his illegal sentence or a successive motion under D.C. Code § 23-110. (Exhibit A - Partial Case Evaluation). No claim has been made that this recommendation was in error.

This Court claims that the motion for sentence reduction was erroneous. The motion was prepared in July 2005, subsequent to the landmark decisions of <u>Blakely v. Washington</u>, 124 S.Ct. 2531 (2004) and <u>United States v. Booker</u>, 125 S.Ct. 738 (2005) being issued. As this Court is well aware, these decisions changed the face of federal sentencing. Importantly, these decisions made clear that the Sentencing Guidelines could not be applied in a mandatory fashion and that sentences could not be increased beyond the statutory maximum based solely upon judicial fact finding by a preponderance of the evidence. <u>Booker</u>, *supra*. While argument still exists as to the meaning of "statutory maximum," NLPA argued that D.C. Code § 23-112, which was applied in a quasi-mandatory fashion against the Plaintiff and gave the sentencing judge the ability to arguably increase the statutory maximum sentence based upon his own whims, was improper. (Exhibit B - Motion to Correct Illegal Sentence and Memorandum of Law in Support).

While the argument may have ultimately been unsuccessful, the Defendants submit that such argument was not erroneous. The legal principles involved were clearly identified. In fact, the research prepared by NLPA specifically noted that § 23-112 was not a mandatory applicable sentencing stricture. (Exhibit B - Memorandum at 10). Would this Court prevent lawyers for making good faith arguments for the extension of the law? Such logic would have resulted in African-American children being kept in separate schools from Caucasian children. Such logic would have resulted in the United States Sentencing Guidelines still being applied mandatorily. Obviously, the law is ever changing, and attorneys must argue for the extension of law. As such,

the arguments put forth by the Defendants in the motion to correct the illegal sentence were not erroneous.

Clearly, the Defendants did not act in a reckless manner.  The conduct of the Defendants did not place the Plaintiff at risk.  If anything, the conduct of the Defendants attempted to place the Plaintiff in a better legal position.  If anything, *it was the insistence by the Plaintiff upon having the Defendants prepare specific legal research that placed the Plaintiff at risk*, in that the filing of obviously non-meritorious documents would prejudice the Plaintiff, in that the trial court would view with ever greater skepticism anything filed by the Plaintiff, thereby creating a situation that, when meritorious research was filed, it would be viewed with greater derision. The Defendant did not act with any intent to cause damage to the Plaintiff, and did not, in fact, cause any damage to the Plaintiff.  The Defendants actions were guided by the sole intent of providing competent legal assistance to the Plaintiff in an effort to improve his legal situation. As such, punitive damages are not appropriate in this matter.

### 1. Fraud

In the Order at issue, this Court raised the specter of fraud on the part of the Defendants, which would also give rise to the collection of punitive damages.  Order at 2.  The Defendants submit that they have not engaged in any fraudulent conduct.  Further, the Plaintiff's complaint does not set out a clear cause of action for fraud**,** but does make a vague reference to fraudulent acts committed by the Defendants.  While these acts are described simply as the means by which the contract was breached, the following analysis will be provided as though these illusory statements constitute a separate claim for relief.

Rule 9(b) of the Federal Rules of Civil Procedure states that, in order to allege fraud, the circumstances constituting the fraud must be stated with particularity.  In order to comply with this rule, a plaintiff, at a minimum, must "state the time, place and content of the false misrepresentations, the fact misrepresented, and what was retained or given up as a consequence of the fraud."  United States v. Martin-Baker, 389 F.3d 1251, 1256 (D.C. Cir. 2004).

In the instant case, the Plaintiff has failed to plead his fraud claim with particularity.  The Plaintiff merely states that his funds were fraudulently taken.  The Plaintiff does not set forth what false representation was made.  The Plaintiff makes a statement about being deceived, but claims that this deception came from the Defendants not taking his calls.  It would seem unlikely that the Defendants could have deceived the Plaintiff if the Plaintiff was unable to speak to the Defendants.  Clearly, this does not satisfy the particularity requirement, as such a statement does not even allege that a false misrepresentation was made.

Setting aside the frivolousness of the Plaintiff's fraud claim, and the fact that such a claim has not been made with the required specificity, this claim would also be subject to arbitration, as it equates to a cause of action covered by the agreement to arbitrate, which states that the parties "agree to submit any dispute arising under this agreement, with the exception of disputes alleging criminal or statutory violations to binding arbitration . . . "  The Plaintiff has essentially claimed that he paid money for services that were not satisfactory, and therefore claims he should get his money back.  By asserting that the funds were fraudulently kept by the Defendants, the Plaintiff has merely described the means by which he feels the Defendants breached the contract.

The Defendants further submit that they are reputable workers in the legal field, and do not engage in fraudulent conduct.  Charles Murray is licensed to practice in numerous courts and

8

jurisdictions, including the states of Florida and Maryland, the District of Columbia Superior Court and Court of Appeals, various federal district courts, every Federal Circuit Court of Appeals except for the Second Federal Circuit Court of Appeals.  He is also admitted to the United States Court of Federal Claims, the United States Supreme Court, and various military tribunals.  Mr. Murray is a graduate of the United States Military Academy.  Mr. Murray received his Juris Doctorate from the University of Maryland in 1971.  (Exhibit E - Murray Letterhead). Attached is a list of recent successes had by Mr. Murray in a number of cases, including having criminal charges dismissed against his clients (Florida v. Rende, docket no. 03-3236-CF (20th Judicial Circuit)), having sentences reduced (Florida v. Moody, docket no. 97-4429T (12th Judicial Circuit)), and winning acquittals after a jury trial (United States v. Sineriz, docket no. 97-CR-79-ALL (M.D. Fl)), and State vs. Strom.  Further, Mr. Murray notes on his victory list that "[t]he hiring of a lawyer is an important decision that should not be based solely upon advertisement."  (Exhibit F - Murray Victory List).  Clearly, Mr. Murray is an attorney whom is engaged in the pursuit of justice, and who eschews fraudulent behavior.

NLPA was originated in 1986 by H. Wesley Robinson.  During its more than twenty years of assisting criminal defendants, NLPA has assisted in obtaining relief for hundreds of individuals at all stages of criminal proceedings, from pre-trial to sentencing to appeal to collateral filings.  NLPA points to the favorable decision obtained in cases such as Maurice Trotter v. United States, 128 S.Ct. 864 (2008) and Mardell Trotter v. United States, 128 S.Ct. 870 (2008)(the Trotters' sentences were vacated based upon the improper discrepancy between crack and powder cocaine, and the cases were remanded for re-sentencing with the district court); and Joseph v. United States, case no. 06-22461-CIV-SEITZ/McAILEY (S.D.Fl.

2007)(reinstatement of appellate rights due to counsel's failure to file a requested notice of appeal).  Should this Court wish to obtain a full list of NLPA's victories, NLPA would be happy to provide said documentation.

Based on the foregoing facts of this case, in conjunction with the Defendants long history of honorable and admirable legal work, it is clear that the Defendants did not engage in fraud.  As such, punitive damages are not appropriate in this matter.

**B.      The claim for punitive damages in this matter is ridiculous and should not have been utilized to award federal jurisdiction in this matter.**

In the Order at issue, this Court found that the Plaintiff's claims of $90,000 in punitive damages was proper, and that such rendered jurisdiction proper in the federal judiciary.  Order at 1.  The Plaintiff sets forth in his complaint that this Court had jurisdiction, pursuant to an existence of complete diversity of citizenship.  The Plaintiff asserts that the amount in controversy exceeds $75,000.00.  Indeed, in his claim for relief, the Plaintiff seeks a total of $100,000.00 in damages, 90% of which is sought in the form of punitive damages.  The Plaintiff's claim for such damages cannot be viewed as being made in good faith.

Under 28 U.S.C. § 1332(a), federal courts have jurisdiction over civil actions involving citizens of different states, where the amount in controversy exceeds $75,000.00.  This amount is determined by the amount claimed by the plaintiff, so long as the amount is claimed in good faith.  St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938).  Still, "if it 'appears to a legal certainty that the claim is really for less than the jurisdictional amount,' dismissal is justified."  Hunter v. D.C., 384 F. Supp.2d 257, 260 (D.D.C. 2005) (citing St. Paul Mercury Indem. Co., 303 U.S. at 288).

With regard to punitive damages, such awards are given "in a tort action if the defendant's tortious behavior is accompanied by 'fraud, ill will, recklessness, wantonness, oppressiveness, wilful disregard for the plaintiff's right . . .'" Hunter, 384 F. Supp.2d at 261 (citing Butera v. D.C., 344 U.S. App. D.C. 265 (2001).  In the instant case, the Plaintiff does make some illusory references to fraudulent actions by the Defendants, which are without support as argued above.  However, in order to reach the threshold amount of $75,000, based upon his claim for only $10,000 in compensatory damages, the Plaintiff would have to receive $65,000 in punitive damages.  Applying principles of due process, courts will not award punitive damages in such amounts that they would be construed as "grossly excessive."  Hunter, 384 F. Supp.2d at 261.  While no bright line rule exists to determine what constitutes a "grossly excessive" punitive damages award, courts have typically found that a punitive damage award which is ten times more than the compensatory damages awarded would certainly be a violation of due process.  Id. at 261-262.

In the instant case, in order to reach the threshold total amount of $75,000.00, the Plaintiff would have to claim a right to $65,000.00.  This represents an amount 6.5 times as much as the claimed amount of compensatory damages.  Given the circumstances of the case, such a punitive award would certainly violate the principles of due process.  Aside from the sheer size of such an award, it is also necessary to consider the fact that such an award would essentially be for an unfounded alleged breach of contract claim that this court has refused to address on the merits of the claim.

As shown previously, the Plaintiff's complaint, despite making other illusory claims, essentially sets forth a claim that the Defendants breached their contractual obligations.  In fact,

at the conclusion of his complaint, the Plaintiff even states that his claim for $100,000.00 was due to "Defendants' breach of contractu[]al agreements." District of Columbia courts have held that, "where the basis of a complaint is . . . a breach of contract, punitive damages will not lie, even if it is proved that the breach was willful, wanton, or malicious." <u>Sere v. Group Hospitalization</u>, 443 A.2d 33 (Ct. App. D.C. 1982). There can be no dispute that the alleged basis of the Plaintiff's complaint is for an unfounded alleged breach of contract. Since punitive damages are not available in a breach of contract claim, the only amount claimed by the Plaintiff in good faith is $10,000. As such, the amount in controversy requirement was not met under 28 U.S.C. § 1332(a). Therefore, jurisdiction on the basis of diversity of citizenship was not proper. As such, this Court did not have jurisdiction in this matter, and punitive damages should not be awarded to the Plaintiff.

<u>**CONCLUSION**</u>

WHEREFORE, in light of the foregoing facts and arguments of law contained herein, the Defendants request that this Court deny the Plaintiff's request to receive punitive damages, as the Defendants have not engaged in conduct that would make such an award appropriate.

Respectfully submitted,

Charles A. Murray, Esq.
Attorney for the Defendants
27499 Riverview Center Blvd., Suite 113
Bonita Springs, Florida 34134
(239) 985-4081 voice
(239) 985-4084 facsimile

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing motion and accompanying memorandum has been delivered this 27th day of August, 2008, by regular United States Mail with sufficient postage affixed thereto to insure delivery thereof to the Plaintiff, Roy Thomas, 11340-007, P.O. Box 2068, United States Penitentiary, Inez, Kentucky 41224.

Charles A. Murray, Esq.
Attorney for the Defendants
27499 Riverview Center Blvd., Suite 113
Bonita Springs, Florida 34134
(239) 985-4081 voice
(239) 985-4084 facsimile

13

## **EXHIBITS**

Exhibit A - Partial Case Evaluation

Exhibit B - Motion to Correct Illegal Sentence and Memorandum of Law in Support

Exhibit C - Motion pursuant to D.C. Code § 23-110

Exhibit D - Petition pursuant to 28 U.S.C. § 2241

Exhibit E - Murray Letterhead

Exhibit F - Murray Victory List

**Exhibit A - Partial Case Evaluation**

**Exhibit B**

**Motion To Correct Illegal Sentence and Memorandum Of Law In Support**

**Exhibit C - Motion Pursuant To D.C. Code § 23-110**

**Exhibit D – Petition Pursuant To 28 U.S.C. § 2241**

**Exhibit E - Murray Letterhead**

**Exhibit F - Murray Victory List**

## **EXHIBITS**

Exhibit A - Partial Case Evaluation

Exhibit B - Motion to Correct Illegal Sentence and Memorandum of Law in Support

Exhibit C - Motion pursuant to D.C. Code § 23-110

Exhibit D - Petition pursuant to 28 U.S.C. § 2241

Exhibit E - Murray Letterhead

Exhibit F - Murray Victory List

14

**Exhibit A - Partial Case Evaluation**

**NATIONAL LEGAL PROFESSIONAL ASSOCIATES**
*Margaret A. Robinson Advocacy Center*
*11331 Grooms Road, Suite 1000*
*Cincinnati, OH 45242*
Phone: 513-247-0082 ● Fax (513) 247-9580
Website: www.NLPA.com ● E-mail: contactus@nlpacincinnati.com

## **MEMORANDUM**

**TO:**       Charles Murray, Attorney at Law

**FROM:**   National Legal Professional Associates

**DATE:**    April 1, 2004

**RE:**       Partial Evaluation of the Case of Roy Thomas

---

**RECOMMENDATION:**   Although a few options exist, NLPA believes that Mr. Thomas
may have available avenues of relief under Rule 35 for reduction or
modification of sentence, or a successive post-conviction motion
under District of Columbia Code § 23-110.

**FILING DEADLINE:**       To be determined.

---

We have now completed a partial analysis of the case of Roy Thomas, and we are

informing you of possible issues that may be addressed in post-conviction litigation. As this

memorandum indicates, National Legal Professional Associates believes that although more than

eight years have passed since Mr. Thomas' 1995 conviction, he may have the ability to return to

court and to fight for relief. A major threshold issue for Mr. Thomas, and you as his counsel, is

to identify the best procedural avenue to pursue such relief. Based upon our review of Mr.

Thomas' file, we believe that, depending on whether Mr. Thomas has already filed a pro se Rule

35 motion, his best option would be to proceed with any and all viable issues under a successive

motion in the District of Columbia Superior Court, pursuant to D.C. Code § 23-110. Otherwise,

Mr. Thomas may be able to pursue relief under Superior Court Criminal Rule 35.

We are sending a copy of the evaluation to Mr. Thomas' so that he will be aware of our

analysis and opinions in this case. Hopefully, upon receipt of this memorandum, all interested

parties can discuss the potential issues and our recommendations regarding the possibility of

litigation. If Mr. Thomas wishes to retain NLPA to pursue the recommendations set forth in this

evaluation, he should contact NLPA and make the necessary arrangements as soon as possible.

## SCOPE OF THE REVIEW

In conducting research for Mr. Thomas' evaluation, NLPA has reviewed the following

documents:

(1)     correspondence from Mr. Thomas to National Legal Professional Associates;

(2)     District of Columbia, Court of Appeals docket information;

(3)     trial and hearing transcripts;

(4)     renewed consent motion to hold appeal in abeyance finding disposition of motion to
        vacate judgement pursuant to D.C. Code § 23-110 (4/18/97);

(5)     defendant's reply to opposition motion to vacate judgement (1/12/98);

(6)     memorandum opinion and order (10/8/98);

(7)     appeal from the superior court of the District of Columbia, Criminal Division (9/8/99);

(8)     District of Columbia Court of Appeals opinion (4/13/00);

(9)     corrected copy of petition for rehearing with a suggestion for rehearing en banc (5/26/00);

(10)    governments opposition to appellant's petition for rehearing en banc (9/12/00);

(11)    motion to recall the mandate for ineffective assistance of appellate counsel (3/14/02);

2

(12)    brief, writ of certiorari (4/3/03); and

(13)    summary dispositions on writ of certiorari (10/6/03).

Please note that the issues discussed and identified in this evaluation are subject to change upon further review of the foregoing documents and, more importantly, any additional materials that may be provided by Mr. Thomas. Such materials could include but are not limited to appellate briefs, any pretrial motions, discovery materials, additional transcripts, the presentence report, or any further post-conviction materials.

Because a review of additional materials could result in the identification of additional grounds for challenging Mr. Thomas' conviction and sentence, the issues contained in this memorandum may be consolidated, eliminated, or expanded to include additional issues if we are retained to assist counsel in the preparation of a post-conviction relief action.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On the evening of September 21, 1990, Mr. Thomas and three other individuals allegedly drove past the corner of Eleventh and Lamont Streets where Delanta Toney and Dante Kennedy were conversing next to some telephone booths outside of Arthur's grocery store. A few minutes later, Mr. Thomas and the other three individuals were seen walking along Eleventh Street from Park Road toward the corner, where Tony and Kennedy were standing. Harvey King allegedly observed at least one of the men with a pistol. All the men then approached Toney and Kennedy and exchanged words. Ultimately, Toney was shot and injured and Kennedy was shot and killed. After the shooting, Mr. Thomas and the other three men allegedly ran away in an easterly direction towards Sherman Avenue. Mr. Thomas was later identified by witnesses as one of the shooters and the person who spoke to the victim.

3

On February 16, 1991, a District of Columbia grand jury returned a nine count indictment against Mr. Thomas and two co-defendants. The charges included: first degree murder while armed (D.C. Code §§ 22-2401 and 22-3202); assault with intent to murder while armed (D.C. Code §§ 22-503, 22-2403 and 22-3202); assault with intent to kill while armed (D.C. Code §§ 22-501 and 22-3202); three counts of carrying a pistol without a license (D.C. Code § 22-3204 (a)); and three counts of possession of a firearm during the commission of a crime of violence or dangerous offense (D.C. Code § 22-3204 (b)). The indictment did not charge conspiracy.

On October 1, 1992, Mr. Thomas was convicted by a jury in the Superior Court of the District of Columbia, Criminal Division, for the lesser included offenses of assault with a dangerous weapon, carrying a pistol without a license, and possession of a firearm during the commission of a crime of violence or dangerous offense. The jury was unable to reach a verdict on the first-degree murder while armed charge and on October 6, 1992, the trial court declared a mistrial on that count.

On February 10, 1993, Judge Taylor sentenced Mr. Thomas to concurrent terms of imprisonment totaling five to fifteen years, one year imprisonment for carrying a pistol without a license, and separate five to fifteen year terms of imprisonment for assault with a dangerous weapon and possession of a firearm during the commission of a crime of violence.

On June 13, 1995, Mr. Thomas was retried for the first-degree murder while armed charged.

On June 18, 1995, Mr. Thomas was found guilty by jury on the first-degree murder while armed charge.

On June 27, 1995, Judge Burnett sentenced Mr. Thomas to twenty years to life to run

4

consecutive the sentence being served.

On July 6, 1995, Mr. Thomas filed a timely notice of appeal. However, prior to briefing the appeal, Mr. Thomas filed a District of Columbia postconviction motion pursuant to § 23-110, which resulted in a stay of the appeal. Mr. Thomas raised the following issues in his § 23-110 motion:

1. Ineffective assistance of counsel resulted in a structurally defective trial mechanism.

    A. Counsel's deficient performance resulted in a constructive amendment of the indictment which permitted the prosecutor to effectively alter the charge against Mr. Thomas to fit the government's proof.

    B. The prosecutor persuaded the trial court to take action which effectively amended the indictment without meaningful opposition from the defense.

    C. The grand jury clause limited the possible basis for Mr. Thomas' conviction to permit jury findings solely on the elements of the crime as charged by the grand jury.

    D. Conspiracy to commit an assault is not a lesser included offense of first-degree murder while armed.

    E. Conspiracy is a separate and distinct statutory offense unlike aiding and abetting; conviction of a substantive crime, based on conspiracy findings requires an indicted conspiracy.

    F. Counsel's deficient performance resulted in the government being relieved of its burden of proof.

    G. Counsel's deficient performance deprived Mr. Thomas of a unanimous jury verdict.

    H. Counsel's summation was pro forma.

On October 8, 1998, the court denied Mr. Thomas' postconviction motion without a

hearing. Mr. Thomas filed a timely notice of appeal in the District of Columbia Court of Appeals

on October 19, 1998.

On March 26, 1999, the Court of Appeals consolidated the direct appeal, No 95-CF-912,

and the postconviction appeal, No. 98-CO-1545. The issues presented for appeal were as

follows:

1. Whether the trial court constructively amended the indictment which charged Mr. Thomas with a single count of first degree murder while armed by shooting the decedent with a pistol, and the trial court instructed the jury to convict Mr. Thomas if it found that he was a member of an unchanged conspiracy to assault the decedent.

2. Whether the trial court properly instructed the jury on vicarious liability for co-conspirator acts where the only evidence of a conspiracy was evidence that four assailants acted in concert in assaulting the decedent with weapons.

3. Whether the government was relieved of its burden of proof on the elements of armed first degree murder by a jury instruction that Mr. Thomas should be convicted if the government proved he was a member of a conspiracy to commit a simple assault against the decedent, absent a requirement that the government prove that the murder was committed in furtherance of the conspiracy, was within the scope of Mr. Thomas' agreement, and was a reasonably foreseeable consequence of the assault.

The issues presented on postconviction appeal (No. 98-CO-1545) are as follows:

1) Whether Mr. Thomas was denied the effective assistance of counsel where the government's primary theory of the case was Mr. Thomas' vicarious liability for acts of a co-conspirator, and counsel was unaware of the legal and factual components of that theory until after the evidence closed and consequently failed to prepare and present a defense.

2) Whether Mr. Thomas was denied effective assistance of counsel where counsel failed to raise an available objection under the jury clause to an instruction which constructively amended the

6

indictment.

    A.    Whether Mr. Thomas was denied effective assistance of counsel when counsel failed to provide the trial court with an available judicially approved instruction on vicarious liability for co-conspirators acts where the governments proposed instruction removed its burden of proof on armed first-degree murder.

    B.    Whether Mr. Thomas was denied effective assistance of counsel where counsels belated recognition of the governments primary theory of the case resulted in a pro forma summation that was not responsive to the governments detailed argument on it's conspiracy theory.

3.    Whether Mr. Thomas was denied effective assistance of counsel where counsel refused a special instruction and verdict form for a uninformed, frivolous reason and the jury was instructed on three theories of liability presenting a likelihood of non-unanimity.

4.    Whether Mr. Thomas was denied effective assistance of counsel where an expert witness' opinion that four firearms were used in the crime charged was unsupported, the evidence supported the fact that three firearms were fired, Mr. Thomas was one of four possible assailants and claimed he did not fire a weapon, and counsel failed to challenge the experts opinion.

Both the conviction and the denial of the postconviction motion were affirmed by the District of

Columbia Court of Appeals on April 13, 2000. A timely petition for a rehearing en banc was

filed and that petition was denied on April 25, 2001. A petition for certiorari to the United States

Supreme Court was sought and denied on October 4, 2001.

On January 31, 2002, Mr. Thomas filed a pro se motion to recall the mandate in the Court

of Appeals. This motion was subsequently denied on March 27, 2002.

On May 7, 2002, a timely pro se petition for rehearing en banc was filed and later denied

by the Court of Appeals on July 24, 2002.

On August 7, 2003, Mr. Thomas filed a timely pro se petition for writ of certiorari with

7

the Supreme Court of the United States. This petition was later denied on October 6, 2003.

The documentation NLPA has received to date does not evidence any further activity in Mr. Thomas' case following the October 6, 2003 denial by the Supreme Court of the United States. If this information is in any way incorrect, please contact us so that the appropriate revisions may be made.

**DISCUSSION**

NLPA believes that Mr. Thomas' potential for success is low in light of the amount of time that has passed since his original conviction and the number of issues that have been litigated so far. That does not mean that the potential for success does not exist at all, however.

**I.    POTENTIAL PROCEDURAL AVENUES FOR RELIEF**

  **A.    Super. Ct. Crim. R. 35(b)**

We looked into the propriety of Mr. Thomas' sentence. A claim that attacks the propriety of sentence is properly raised under Super. Ct. Crim. R. 35(b). For example, when a defendant claimed that his sentence was illegal but filed an attack under another statute (such as D.C. Code § 23-110, discussed in full below), a court of appeals found that it would treat the filing as a motion to correct an illegal sentence pursuant to Super. Ct. Crim. R. 35 (a). <u>Brown v. United States</u>, 795 A.2d 56 (2002). See <u>Byrd v. United States</u>, 500 A.2d 1376, 1378 n.5 (D.C. 1985), adopted en banc, 510 A.2d 1035, 1037 (D.C. 1986) (treating collateral attack on concurrent sentences for premeditated murder and felony murder arising from a single homicide as made pursuant to Rule 35 (a)). It is immaterial if a defendant fails to cite Rule 35 (a), since the courts look to the substance of a pro se request for collateral relief rather than its form. <u>Id</u>. See <u>Norman v. United States</u>, 623 A.2d 1165, 1167 (D.C. 1993) ("Appellant's pro se [§ 23-110] motion

8

should have been construed by the motions judge as a Rule 35 (a) motion.").

Rule 35 (a) is an unconditional grant of authority to the court to "correct an illegal sentence at any time." The premise is that an illegal sentence is "a nullity," Prince v. United States, 432 A.2d 720, 721 (D.C. 1981), and is "void *ab initio* on its face." *(James) Byrd v. United States*, 487 A.2d 616, 617 (D.C. 1985). The Rule is modeled on former Fed. R. Crim. P. 35 (a), n1. See Popeko v. United States, 513 F.2d 771, 773 (5th Cir.1975); United States v. Lopez, 428 F.2d 1135, 1138 (2nd Cir.1970).

Super. Ct. Crim. R. 35(b) provides that a defendant can file a motion for reduction of sentence within 120 days after receipt of the court of the mandate from the court of appeals. The purpose of Rule 35 is to allow the trial court to consider whether the sentence originally imposed was too harsh. The 120-day limit prevents the court from assuming the functions of the parole board. See Williams v. United States, 470 A.2d 302, 310 (D.C.1983); United States v. Nunzio, 430 A.2d 1372, 1375 (D.C.1981). The 120-day window is jurisdictional, and it may not be circumvented by means of a motion pursuant to D.C. Code § 23-110. Robinson v. United States, 454 A.2d 810, 813 (D.C. 1982).

NLPA has received Mr. Thomas' pro se motion under Rule 35 and has been unable to confirm whether or not this motion has been filed. The issues presented therein along with an appropriate argument concerning the time limitations will be addressed once financial arrangements have been worked out between NLPA and Mr. Thomas.

**B.    Rule 33 Motion for New Trial**

Mr. Thomas could request a new trial if he obtained new evidence demonstrating his innocence. The requirements for granting a new trial based on newly discovered evidence

9

pursuant to Rule 33 are well established:

> (1) the evidence must have been discovered since the trial; (2) the party seeking the new trial must show diligence in the attempt to procure the newly discovered evidence; (3) the evidence relied on must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) of such nature that in a new trial it would probably produce an acquittal.

Wright v. United States, 387 A.2d 582, 587 (D.C. 1978), citing Thompson v. United States, 88 U.S. App. D.C. 235, 236, 188 F.2d 652, 653 (1951).

"A motion for a new trial based on newly discovered evidence may be made only before or within three years after the verdict or finding of guilty." Rule 33. Otherwise, if the motion is based upon other grounds, it should be filed within seven days of the verdict. Id.

More than three years have passed since the verdict in Mr. Thomas' case. Moreover, NLPA was given no suggestion that new evidence exists in Mr. Thomas' case that would support a claim of innocence. For those reasons, we do not suggest any action under Rule 33.

### C.     Motion under 28 U.S.C. § 2254 or § 2255

When assessing post-convictions options, NLPA often considers whether a motion under 28 U.S.C. § 2254 or § 2255 is the appropriate remedy for an inmate. Those options do not appear to be appropriate in Mr. Thomas' case. Section § 2254 is not appropriate because of the plain language of that statute that provides that its application is limited to "person[s] in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(a).

Section 2255 appears to be more appropriate because it applies to "prisoner[s] in custody under sentence of a court established by Act of Congress." 28 U.S.C. § 2255 (¶ 1). But the U.S. Supreme Court has recognized that the procedure set forth in D.C. Code § 23-110 "is comparable

10

to that authorized by 28 U.S.C. § 2255 for the United States district courts." Swain v. Pressley, 430 U.S. 372, 375 (1977). Perhaps more importantly, the U.S. Supreme Court has held that an individual who is in custody under a sentence imposed by the D.C. Superior Court must seek post-conviction relief under § 23-110 and ordinarily cannot seek post-conviction relief in federal court. This is true even if an inmate's motion under D.C. Code § 23-110 is overruled.

In other words, even after an inmate has exhausted his remedies under § 23-110, he ordinarily cannot seek relief in federal court. Swain, 430 U.S. at 376-378; see also Thomas v. Henderson, 119 F.3d 34, 36 (D.C. Cir. 1997) (recognizing that District of Columbia prisoners must raise collateral attacks under D.C. Code § 23-110, whereas other federal prisoners must raise collateral attacks under 28 U.S.C. § 2255); Perkins v. Henderson, 881 F.Supp. 55, 57 (D.D.C. 1995) (noting that "the unique status of the District of Columbia precludes nearly all federal post-conviction review of District of Columbia Superior Court criminal convictions. It also prevents federal courts from entertaining habeas corpus petitions filed by prisoners in the custody of District of Columbia officials."); Wilson v. Office of Chairperson, 892 F.Supp. 277, 278 (D.D.C. 1995) ("D.C. Code § 23-110 vests subject matter jurisdiction to entertain collateral attacks upon Superior Court sentences in that court. Thus, prisoners serving sentences imposed by the Superior Court must file motions challenging their sentences in that court; federal courts are generally without jurisdiction to entertain motions to vacate, set aside, or correct a sentence imposed by the District of Columbia Superior Court.").

The only exception we find to this rule is found in D.C. Code § 23-110(g), providing that an inmate may seek relief in federal court only if filing a motion under § 23-110 "is inadequate or ineffective to test the legality of his detention." In Swain, however, the Supreme Court suggested

11

that the remedy provided by § 23-110 ordinarily will be sufficient to test the legality of an

inmate's detention, as it is the functional equivalent of a federal habeas corpus remedy. <u>Swain</u>,

430 U.S. at 381-38. Moreover, the mere fact that an inmate's motion fails under § 23-110 does

not render the remedy provided by that section "inadequate or ineffective." See, e.g., <u>Wilson v.</u>

<u>Office of Chairperson</u>, 892 F.Supp. 277, 280 (D.D.C. 1995) ("A petitioner may not complain that

the remedies provided him by D.C. Code § 23-110 are inadequate merely because he was

unsuccessful when he invoked them. 'It is the inefficacy of the remedy, not a personal inability to

utilize it, that is determinative.'").

Based upon the fact that Mr. Thomas has already sought relief under D.C. Code § 23-110,

any attempt at claiming "inadequate or ineffective testing of the legality of his detention" will be

a difficult hurdle to overcome. NLPA would therefore suggest the filing of a successive § 23-

110.

**D.      Motion under D.C. Code § 23-110**

D.C. Code § 23-110 establishes a procedure for collateral review of convictions in the

District of Columbia Superior Court:

> (a) A prisoner in custody under sentence of the Superior Court
> claiming the right to be released upon the ground that (1) the
> sentence was imposed in violation of the Constitution of the United
> States or the laws of the District of Columbia, (2) the court was
> without jurisdiction to impose the sentence, (3) the sentence was in
> excess of the maximum authorized by law, (4) the sentence is
> otherwise subject to collateral attack, may move the court to
> vacate, set aside, or correct the sentence.
>
> (b) A motion for such relief may be made at any time.
>
> (c) Unless the motion and files and records of the case conclusively
> show that the prisoner is entitled to no relief, the court shall cause

12

notice thereof to be served upon the prosecuting authority, grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto. If the court finds that (1) the judgment was rendered without jurisdiction, (2) the sentence imposed was not authorized by law or is otherwise open to collateral attack, (3) there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner, resentence him, grant a new trial, or correct the sentence, as may appear appropriate.

(d) A court may entertain and determine the motion without requiring the production of the prisoner at the hearing.

(e) The court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner.

(f) An appeal may be taken to the District of Columbia Court of Appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

(g) An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section shall not be entertained by the Superior Court or by any Federal or State court if it appears that the applicant has failed to make a motion for relief under this section or that the Superior Court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

D.C. Code § 23-110.

As noted above, a motion to vacate a conviction or sentence under § 23-110 is usually the only means by which a person such as Mr. Thomas, who has been convicted in the District of Columbia Superior court, can mount a collateral attack. Although Mr. Thomas was convicted and sentenced more than eight years ago, a motion under § 23-110 may be made at any time. D.C. Code § 23-110(b). To succeed, he must and prove assert one of the four grounds set forth

13

in § 23-110(a).

Section 23-110 is not a substitute for a direct appeal. Head v. United States, 489 A.2d 450, 451 (D.C. 1985). "Where a defendant has failed to raise an available challenge to his conviction on direct appeal, he may not raise that issue on collateral attack unless he shows both cause for his failure to do so and prejudice as a result of his failure." Id. (citing United States v. Frady, 456 U.S. 152, 167-68, 71 L. Ed. 2d 816, 102 S. Ct. 1584 (1982)). To the contrary, "relief under § 23-110 is appropriate only for serious defects in the trial which were not correctable on direct appeal or which appellant was prevented by exceptional circumstances from raising on direct appeal." Taylor v. United States, 759 A.2d 604, 610 (D.C. App. 2000) (citation omitted). Direct appeal-type issues cannot be raised under § 23-110. Id.

Mr. Thomas previously filed a § 23-110 motion on April 18, 1997. At this point, the trial court is not "required to entertain a second or successive motion for similar relief on behalf of the same prisoner." D.C. Code § 23-110(e); see Vaughn v. United States, 600 A.2d 96, 97 (D.C. 1991) (trial court is under no obligation to consider repeated claims for collateral relief). Where an appellant files a second D.C. Code Ann. § 23-110 (2001) motion, in which he raises issues not raised either on direct appeal or in his first § 23-110 motion, the rule as to whether a hearing is required is more strict. Under Shepard v. United States, 533 A.2d 1278, 1280 (D.C. 1987), if the appellant does not raise a claim of ineffective assistance of counsel during the pendency of the direct appeal, when at that time appellant demonstrably knew or should have known of the grounds for alleging counsel's ineffectiveness, that procedural default will be a barrier to the court's consideration of appellant's claim. Where a defendant has failed to raise an available challenge to his conviction on direct appeal, he may not raise that issue on collateral attack unless

14

he shows both cause for his failure to do so and prejudice as a result of his failure. Moreover, when the defendant has already launched several collateral attacks on his conviction, the reasons supporting the application of the cause and prejudice test are even more compelling.

However, the procedural default articulated in <u>Shepard</u> and other cases is not insurmountable. To establish legally sufficient "cause" for his failure to raise a claim on direct appeal, however, an appellant must show that he "was prevented by exceptional circumstances" from raising the claim at the appropriate time. <u>Head v. United States</u>, 489 A.2d 450, at 451 (D.C. 1985); see <u>Murray v. Carrier</u>, 477 U.S. 478, 488, 91 L. Ed. 2d 397, 106 S. Ct. 2639 (1986) (a defendant must demonstrate that "some objective factor external to the defense impeded counsel's efforts" to raise the claim on direct appeal). Once cause is shown, an appellant must then "shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>United States v. Frady</u>, 456 U.S. 152, at 170 (1982).

Thus, the question remains what potential issues can be raised under § 23-110. Again, the issue discussion of Mr. Thomas' case will be furthered once the financial arrangement have been addressed.

## II.     POTENTIAL ISSUES TO RAISE UNDER § 23-110

The task now is to outline issues that might potentially be viable under D.C. Code § 23-110. Unfortunately, as a partial evaluation, NLPA must await finalization of financial arrangements before discussing in depth research on these issues.

Once retained for the full evaluation, NLPA will be able to research the possibilities of

15

issues concerning ineffective assistance of counsel, due process violations and possible new evidence. Other issues may be found during our in depth research and review of Mr. Thomas' case as well.

## CONCLUSION

If we were to aid Mr. Thomas and you as counsel in this matter, we would do a complete analysis of each issue, dealing with U.S. Supreme Court and Washington D.C. precedent, where appropriate, and prepare the entire initial motion and reply memorandum for your review. Obviously, this step will be initiated after the financial arrangements between NLPA and Mr. Thomas have been addressed.

Please note that any issues identified herein are potential issues that may be valid in Mr. Thomas' case. Upon further review, these issues may be consolidated, expanded to include other issues, or eliminated. Of course, the final determination concerning which issues to include will be made based on research prepared by NLPA as well as consultations with counsel. The bottom line is that if Mr. Thomas pursues a post-conviction action with counsel and our assistance, he has some chance of relief.

NB: This evaluation is provided for the sole purpose of identifying potential issues and avenues of relief and relaying that information to counsel. The issues discussed and identified in this evaluation, including any time deadlines, have been developed based on information provided by [the defendant]. These avenues for relief are subject to change upon further review of documents provided to NLPA and any further materials later provided by [the defendant]. The issues and recommendations contained in this memorandum may be consolidated, eliminated, or expanded to include additional issues once NLPA is retained to assist counsel in the actual preparation of pleadings or motions to be filed in court. Therefore, the evaluation is not in a form that can be filed in court and it should not be used for that purpose. It is solely for the purpose of assisting counsel evaluate the subject case with the defendant. Any unauthorized use of the research contained in this evaluation is not the responsibility of NLPA.

16

**Exhibit B - Motion to Correct Illegal Sentence and Memorandum of Law in Support**

**IN THE SUPERIOR COURT OF
THE DISTRICT OF COLUMBIA**

| UNITED STATES OF AMERICA | * | |
|---|---|---|
| | * | Trial Case Nos. F-5258-96 |
| Respondent, | * | F-5329-95 |
| | * | |
| v. | * | |
| | * | |
| ROY THOMAS, | * | |
| | * | |
| Petitioner. | * | |

---

## MOTION TO CORRECT ILLEGAL SENTENCE
## PURSUANT TO D.C. SUPERIOR COURT CRIMINAL RULE 35(a)
## AND REQUEST FOR EVIDENTIARY HEARING

---

NOW COMES, the Petitioner, Roy Thomas, by and through counsel, and hereby moves

this Honorable Court to vacate the sentence imposed in this case, based upon violations of the

Petitioner's rights as guaranteed by the Sixth Amendment to the United States Constitution and

his Fifth Amendment right to due process of law. His rights were further violated when he was

sentenced based upon facts not submitted to or proved to a jury. The Petitioner further moves

this Court to order an evidentiary hearing on the issues raised.

In support, the Petitioner provides the following statement of facts and procedural history:

1.      On February 16, 1991, a District of Columbia grand jury returned a nine count indictment

against Petitioner and two co-defendants. The charges included: first degree murder

while armed (D.C. Code §§ 22-2401 and 22-3202); assault with intent to murder while

armed (D.C. Code §§ 22-503, 22-2403 and 22-3202); assault with intent to kill while

armed (D.C. Code §§ 22-501 and 22-3202); three counts of carrying a pistol without a

license (D.C. Code § 22-3204 (a)); and three counts of possession of a firearm during the commission of a crime of violence or dangerous offense (D.C. Code § 22-3204 (b)). The indictment did not charge conspiracy.

2.  On October 1, 1992, Petitioner was convicted by a jury in the Superior Court of the District of Columbia, Criminal Division, for the lesser included offenses of assault with a dangerous weapon, carrying a pistol without a license, and possession of a firearm during the commission of a crime of violence or dangerous offense. The jury was unable to reach a verdict on the first-degree murder while armed charge and on October 6, 1992, the trial court declared a mistrial on that count.

3.  On February 10, 1993, Judge Taylor sentenced Petitioner to concurrent terms of imprisonment totaling five to fifteen years, one year imprisonment for carrying a pistol without a license, and separate five to fifteen year terms of imprisonment for assault with a dangerous weapon and possession of a firearm during the commission of a crime of violence.

4.  On June 13, 1995, Petitioner was retried for the first-degree murder while armed charged.

5.  On June 18, 1995, Petitioner was found guilty by jury on the first-degree murder while armed charge.

6.  On June 27, 1995, Judge Burnett sentenced Petitioner to twenty years to life to run consecutive the sentence being served.

7.  On July 6, 1995, Petitioner filed a timely notice of appeal. However, prior to briefing the appeal, Petitioner filed a District of Columbia post-conviction motion pursuant to § 23-

2

110, which resulted in a stay of the appeal. Petitioner raised the following issues in his §

23-110 motion:

I.  Ineffective assistance of counsel resulted in a structurally defective
    trial mechanism.

    A.  Counsel's deficient performance resulted in a constructive
        amendment of the indictment which permitted the prosecutor to
        effectively alter the charge against Petitioner to fit the
        government's proof.

    B.  The prosecutor persuaded the trial court to take action which
        effectively amended the indictment without meaningful opposition
        from the defense.

    C.  The grand jury clause limited the possible basis for Petitioner'
        conviction to permit jury findings solely on the elements of the
        crime as charged by the grand jury.

    D.  Conspiracy to commit an assault is not a lesser included offense of
        first-degree murder while armed.

    E.  Conspiracy is a separate and distinct statutory offense unlike aiding
        and abetting; conviction of a substantive crime, based on
        conspiracy findings requires an indicted conspiracy.

    F.  Counsel's deficient performance resulted in the government being
        relieved of its burden of proof.

    G.  Counsel's deficient performance deprived Petitioner of a
        unanimous jury verdict.

    H.  Counsel's summation was pro forma.

8.  On October 8, 1998, the court denied Petitioner' post-conviction motion without a

hearing. Petitioner filed a timely notice of appeal in the District of Columbia Court of

Appeals on October 19, 1998.

9.      On March 26, 1999, the Court of Appeals consolidated the direct appeal, No 95-CF-912,

and the post-conviction appeal, No. 98-CO-1545. The issues presented for appeal were

as follows:

I.      Whether the trial court constructively amended the indictment
        which charged Petitioner with a single count of first degree murder
        while armed by shooting the decedent with a pistol, and the trial
        court instructed the jury to convict Petitioner if it found that he was
        a member of an unchanged conspiracy to assault the decedent.

II.     Whether the trial court properly instructed the jury on vicarious
        liability for co-conspirator acts where the only evidence of a
        conspiracy was evidence that four assailants acted in concert in
        assaulting the decedent with weapons.

III.    Whether the government was relieved of its burden of proof on the
        elements of armed first degree murder by a jury instruction that
        Petitioner should be convicted if the government proved he was a
        member of a conspiracy to commit a simple assault against the
        decedent, absent a requirement that the government prove that the
        murder was committed in furtherance of the conspiracy, was within
        the scope of Petitioner' agreement, and was a reasonably
        foreseeable consequence of the assault.

The issues presented on post-conviction appeal (No. 98-CO-1545) are as follows:

A.      Whether Petitioner was denied the effective assistance of counsel
        where the government's primary theory of the case was Petitioner's
        vicarious liability for acts of a co-conspirator, and counsel was
        unaware of the legal and factual components of that theory until
        after the evidence closed and consequently failed to prepare and
        present a defense.

B.      Whether Petitioner was denied effective assistance of counsel
        where counsel failed to raise an available objection under the jury
        clause to an instruction which constructively amended the
        indictment.

        (1)     Whether Petitioner was denied effective assistance of counsel
                when counsel failed to provide the trial court with an available
                judicially approved instruction on vicarious liability for co-

4

conspirators acts where the governments proposed instruction removed its burden of proof on armed first-degree murder.

(2)    Whether Petitioner was denied effective assistance of counsel where counsels belated recognition of the governments primary theory of the case resulted in a pro forma summation that was not responsive to the governments detailed argument on it's conspiracy theory.

C.    Whether Petitioner was denied effective assistance of counsel where counsel refused a special instruction and verdict form for a uninformed, frivolous reason and the jury was instructed on three theories of liability presenting a likelihood of non-unanimity.

D.    Whether Petitioner was denied effective assistance of counsel where an expert witness' opinion that four firearms were used in the crime charged was unsupported, the evidence supported the fact that three firearms were fired, Petitioner was one of four possible assailants and claimed he did not fire a weapon, and counsel failed to challenge the experts opinion.

10.    Both the conviction and the denial of the post-conviction motion were affirmed by the District of Columbia Court of Appeals on April 13, 2000.

11.    A timely petition for a rehearing en banc was filed and that petition was denied on April 25, 2001.

12.    A petition for certiorari to the United States Supreme Court was sought and denied on October 4, 2001.

13.    On January 31, 2002, Petitioner filed a pro se motion to recall the mandate in the Court of Appeals. This motion was subsequently denied on March 27, 2002.

14.    On May 7, 2002, a timely pro se petition for rehearing en banc was filed and later denied by the Court of Appeals on July 24, 2002.

15.    On August 7, 2003, Petitioner filed a timely pro se petition for writ of certiorari with the Supreme Court of the United States. This petition was later denied on October 6, 2003.

WHEREFORE, in consideration of the foregoing, Petitioner requests that this Honorable Court  issue an order correcting his illegal sentence, so that he can receive due process of law. The Petitioner further requests an evidentiary hearing so that he can present evidence in support of his meritorious claims.

Respectfully submitted,

_____

Charles A. Murray
Attorney for Petitioner
1300 Third Street South, Suite 302B
Naples, FL  34102
Telephone: (239) 649-7773

# IN THE SUPERIOR COURT OF
# THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | Trial Case No. F-5258-96 |
| Respondent, | * | F-5329-95 |
| | * | |
| v. | * | |
| | * | |
| Roy Thomas, | * | |
| | * | |
| Petitioner. | * | |

---

## PETITIONER'S MEMORANDUM IN SUPPORT
## OF MOTION TO CORRECT ILLEGAL SENTENCE
## PURSUANT TO D.C. SUPERIOR COURT CRIMINAL RULE 35(a)
## AND REQUEST FOR EVIDENTIARY HEARING

---

As a matter of introduction, the Petitioner respectfully submits that the events which transpired in the instant case constitute a denial of the Petitioner's right to a jury trial as guaranteed by the Sixth Amendment to the United States Constitution, as well as the right to due process of law as guaranteed by the Fifth Amendment. The Petitioner's Fifth and Sixth Amendment rights were also violated when he was sentenced based upon facts not contained in the verdict. Specifically, the existence of these violations have been clarified in the recent U.S. Supreme Court opinions Blakely v. Washington, 124 S.Ct. 2531 (2004) and United States v. Booker, 125 S.Ct. 738 (2005). Furthermore, the Petitioner contends that he is entitled to an evidentiary hearing on these issues.

## STATEMENT OF ISSUES

I.    Petitioner's sentence is illegal in violation of the Fifth and Sixth amendments to the U.S.

Constitution and contra to his rights to a jury trial and to be punished solely on facts

proven beyond a reasonable doubt.

## JURISDICTION

The Petitioner's present motion for post-conviction relief is properly before this court.

D.C. Superior Court Criminal Rule 35(a) provides:

> Correction of sentence. The court may correct an illegal sentence at
> any time and may correct a sentence imposed in an illegal manner
> within the time provided herein for the reduction of sentence.

D.C. SCR-Crim. Rule 35(a)

An illegal sentence may be challenged at any time. The purpose of this rule is to allow

the trial court to consider, after further reflection, whether the sentence originally imposed was

too harsh in light of the defendant's pretrial conduct. Williams v. United States, App. D.C., 470

A.2d 302 (1983); aff'd, App. D.C., 485 A.2d 950, cert. denied, 472 U.S. 1019, 105 S.Ct. 3483,

87 L.Ed. 2d 617 (1985). Where a sentence is illegal in the sense the court goes beyond its

authority by acting without jurisdiction or imposing a sentence in excess of the statutory

maximum provided, then such sentence – because of the gravity of the error, the unqualified

deprivation of one's liberty – may be challenged at any time. Robinson v. United States, App.

D.C., 454 A.2d 810 (1982).

Therefore, Petitioner contends that he is serving an illegal sentence through the judge's

unconstitutional use of his discretion, and this instant motion to correct it is properly brought

pursuant D.C. Superior Court Criminal Rule 35(a).

3

## ARGUMENT

**I.    PETITIONER'S SENTENCE IS ILLEGAL IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS TO THE U.S. CONSTITUTION AND CONTRA TO HIS RIGHTS TO A JURY TRIAL AND TO BE PUNISHED SOLELY ON FACTS PROVEN BEYOND A REASONABLE DOUBT.**

The importance of considering a motion for a correction of an illegal sentence pursuant D.C. Superior Court Criminal Rule 35(a) is why it is appropriate even if the defendant fails to appeal his conviction at all. Byrd v. United States, 487 A.2d 616, 617 (D.C. 1985). Because an illegal sentence is void from the start, the trial court may correct it at any time on its own motion, even if the defendant has failed to seek any relief. Id. Moreover, this Court has the power to entertain a Rule 35(a) motion even if a prior motion to the same effect was denied. Neverdon v. District of Columbia, 468 A.2d 974, 975 (D.C. 1983).

Where a fundamental constitutional right has been denied, an accused should not be precluded from relief because he cannot satisfy a court that he had good cause for any delay in seeking it. United States v. Hamid, App. D.C., 531 A.2d 628 (1987). Furthermore, Rule 35(a) is modeled on former Federal Rule of Criminal Procedure 35(a), under which it was settled that a sentence can be attacked as illegal regardless of whether the point could have been raised on an earlier direct appeal. Brown v. United States, 795 A.2d 56, (2002). A prisoner's right to a ruling on a Rule 35 motion, coupled with an extremely limited right of appeal form the trial court's exercise of discretion cuts substantially in favor of a liberal reading of the "reasonable time" requirement; a prisoner who timely files a Rule 35 motion should not be penalized unfairly because of circumstances beyond his control. Garcia v. United States, App. D.C., 542 A.2d 1237 (1988).

4

Where a sentence is "illegal" in the sense that the court goes beyond its authority by acting without jurisdiction or imposing a sentence in excess of the statutory maximum provided, then such sentence – because of the gravity of the error, the unqualified deprivation of one's liberty – may be challenged at any time. Robinson v. United States, App. D.C., 454 A.2d 810 (1982).

## A. Many Criminal Sentencing Practices Across the United States are Being Called Into Question as Possibly Violative of the U.S. Constitution.

Recently, the Supreme Court has begun to realize the fundamental defects in way our justice system determines sentences for criminal defendants in a series of decisions. In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In Ring v. Arizona, 536 U.S. 584 (2002), the Supreme Court clarified and reaffirmed this rule. The Ring holding is straightforward and clear-cut: The Apprendi rule applies to any aggravating fact necessary to expose a defendant to punishment beyond an otherwise mandatory statutory limit. Id. As recently observed by the United States District Court for the district of Massachusetts regarding the Sentencing Guidelines, "the Sixth Amendment guarantee of trial by jury has been eroded as never before in the history of our nation, while the institutional judiciary complacently slips into forms of expression and modes of thought that unconsciously reinforce the Department agenda in a powerfully Orwellian way. United States v. Green, 2004 U.S.Dist. LEXIS 11292, *13 (D.Mass June 18, 2004).

5

After Apprendi, the various courts throughout the country assumed the term "statutory maximum" referred to in Apprendi and Ring, was the maximum sentence set forth under the statute listed in the indictment. The courts have assumed that the term "statutory maximum" does not apply to the various sentencing thresholds established under the federal sentencing guidelines.

The Blakely decision not only clarified what was meant by the term "statutory maximum," but also calls into question the constitutionality of current sentencing practices in federal court. The Court noted that the rule announced in Apprendi reflected two longstanding tenets of common-law criminal jurisprudence: "that the truth of every accusation against the defendant should afterwards be confirmed by a unanimous [jury verdict], and that an accusation which lacks any particular fact which the law makes essential to the punishment is ... no accusation within the requirements of the common law and it is no accusation in reason." (cites omit) Id. at *10  The Court then noted the principle in American jurisprudence that "'every fact which is legally essential to the punishment' must be charged in the indictment and proved to a jury." Id.

The decision in Blakely was further bolstered by the recent decision issued in United States v. Booker, 125 S.Ct. 738 (2005). In Booker, the Court ruled that the federal Sentencing Guidelines were not mandatory in issuing federal sentences, but are to be used merely as an advisory tool. Id. at *7. The decision flowed from Justice Stevens' worry that as sentencing enhancements became greater, "the jury's finding of the underlying crime became less significant." Id. at *33. As such, the Sixth Amendment right to a jury trial was being usurped, requiring change in order to preserve "Sixth Amendment substance." Id. at *34. Furthermore,

6

the court again reiterated its commitment to the ideal that any fact other than a prior conviction which is necessary to support a sentence exceeding the statutory maximum authorized by the jury's finding must be proved to a jury beyond a reasonable doubt. Id. at *45-6.

The Petitioner submits that compliance with the Sixth Amendment requires "any fact that increases the penalty for a crime beyond the prescribed statutory maximum" to be proved beyond a reasonable doubt. Apprendi, 530 U.S. at 490. The prescribed "'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Booker, 125 S.Ct. at *45-6; Blakely, 124 S. Ct. at 2536. The jury verdict alone - or the defendant's admission alone - "must authorize the sentence." Id. Therefore, the upper bound of the appropriate guideline range, based on facts proven to a jury beyond a reasonable doubt or admitted by the defendant, establishes the relevant statutory maximum for sentencing purposes. Under the federal Sentencing Guidelines, drug amounts, enhancements based on a specific offense characteristic, and upward departures all have the same effect - namely, they all *increase* the maximum permissible sentence under the guidelines. A judge's reliance on such factors at sentencing is therefore unconstitutional.

Petitioner contends that his sentence violates the constitution in a similar regard. That is, there were facts and considerations outside of that found specifically in the jury verdict, that determined his sentence. This has resulted in a sentence that exceeds the statutory maximum as explained and elaborated on in Blakely and Booker. Therefore, Petitioner argues that his sentence must be vacated and corrected to be in compliance with the principles and black letter law encapsulated in the U.S. Constitution.

7

**B.     Petitioner's Sentence is Illegal Through the Extra-Verdict Determination and Discretion Used by the Sentencing Judge to Exceed Statutory Maximum.**

As an initial matter, Petitioner recognizes that the District of Columbia Code currently

has a provision that allows consecutive sentences to be imposed under the circumstances of this

case, to wit:

> A sentence imposed on a person for conviction of an offense shall,
> unless the court imposing such sentence expressly provides
> otherwise, run consecutively to any other sentence imposed on
> such person for conviction of an offense, whether or not the
> offense (1) arises out of another transaction, or (2) arises out of the
> same transaction and requires proof of a fact which the other does
> not.

D.C. Code § 23-112.

Petitioner, however, contends that either the statute itself is unconstitutional or it is

unconstitutional as applied to him.

It is well settled that "consecutive sentences for separate crimes are normal and ordinary

in the enforcement of state and federal criminal laws. Bryant v. Civiletti, 663 F.2d 286 (D.C. Cir.

Aug. 21, 1981).  However, there are exceptions to this practice, which have even been codified in

D.C. law, to wit:

> No person shall be consecutively sentenced for the same act or
> course of conduct for the following:
>
> (1)     Theft and fraud;
>
> (2)     Theft and unauthorized use of a vehicle;
>
> (3)     Theft and commercial piracy;
>
> (4)     Identity theft and theft; or
>
> (5)     Identity theft and fraud.

8

D.C. Code § 22-3203.

Further, the enactment in D.C. Code § 23-112 of a general canon of construction, which presumes multiple sentences for offenses to run consecutively unless stated to be concurrent, was not intended to alter the substantive law of murder, and to that extent premeditated murder and felony murder are not separate offenses for consecutive sentencing purposes. United States v. Ammidown, 497 F.2d 615 (D.C. Cir. May 10 , 1974). Therefore, the current situation in that the "trial judge [is] free to impose consecutive sentences", Petitioner argues, is violative of the constitution in light of Blakely and Booker.

A recent case in Ohio has picked up on the hazardous practice of letting a judge decide if a defendant is to serve consecutive sentences based on separate convictions. In State v. Bruce, 1st Dist. No. C-040421, 2005 Ohio 373, the trial court imposed a maximum sentence on the defendant, following a finding by the court that Bruce had committed the "worst form of the offense." Such a finding is required under R.C. § 2929.14(C) in order for a maximum sentence to be imposed. The court found that following Booker, a trial court could not impose such a sentence because the prescribed statutory maximum sentence is not "the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Bruce at *P8, quoting Blakely at 2537. This left the maximum possible sentence of nine years, the longest the court could impose without making any additional findings of acts. While Petitioner's circumstances are not a perfect analogy to Bruce's, the similarity is that the sentencing judge in Petitioner's case could have made the decision to impose the murder sentence to run concurrently with his previously imposed sentences. Needless to say,

9

this discretion can be abused, because it is completely up to the judge whether or not to impose a consecutive sentence. *See* D.C. Code § 23-112.

Furthermore, just as the <u>Booker</u> court reasoned that it was the mandatory application of the United States Sentencing Commission's Guidelines or the U.S.S.G. that made it violative of the constitution, the near mandatory nature of § 23-112 is also troublesome. Ordinarily a defendant could have separate sentences imposed consecutively, without the judge finding additional facts – yet if the judge chooses to, he or she could use his or her discretion to not impose the sentences consecutively. In other words, this gives the judge too much power to tack sentences on to one another or not. This could be remedied if the prosecution was to come out in the beginning of the trial that it is looking to seek consecutive sentences, and let the jury decide if such should be done. The facts that would support punishment beyond the statutory maximum of one offense by the conviction of the another offense is something that must be proven beyond a reasonable doubt according to the Sixth amendment to the U.S. Constitution, as well as <u>Blakely</u> and <u>Booker</u>.

10

## <u>CONCLUSION</u>

In consideration of the foregoing, Petitioner has been given an illegal sentence which must be vacated and corrected, he also requests that this Honorable Court order an evidentiary hearing on the Petitioner's claims of constitutional violations, so that the Petitioner can put on evidence establishing such violations.

Respectfully submitted,

_____

Charles A. Murray
Attorney for Petitioner
1300 Third Street South, Suite 302B
Naples, FL 34102
Telephone: (239) 649-7773

11

## <u>VERIFICATION</u>

Roy Thomas, being first duly sworn, verifies that the facts stated in the foregoing motion and the attached memorandum in support are true to the best of his knowledge and belief.

_____
Roy Thomas


Pursuant to 28 U.S.C. § 1746, I, Roy Thomas, declare under the penalty of perjury that the foregoing is true and correct. Executed on this _____ day of _____ 2005.


_____
Roy Thomas

12

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was sent this ____ day of

_____, 2005, by regular U.S. mail with sufficient postage affixed to the United States

Attorney's Office, 555 4th Street, N.W., Washington, D.C. 20001.

 

 

 

_____

Charles A. Murray
Attorney for Petitioner

13

**Exhibit C - Motion Pursuant To D.C. Code § 23-110**

## DISTRICT OF COLUMBIA SUPERIOR COURT
## CRIMINAL DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| Respondent, | * |
| v. | * |
| **ROY THOMAS** | * |
| Petitioner. | * |

**CASE NOS. F-5258-96/F-5329-95**

## PETITIONER'S MOTION TO VACATE HIS SENTENCE
## PURSUANT D.C. CODE § 23-110

Petitioner, ROY THOMAS, Pro Se, hereby moves this Honorable Court to vacate the

sentence imposed in this case, based upon violations of the Petitioner's rights as guaranteed by

the Sixth Amendment to the United States Constitution. Also, Petitioner's Fifth Amendment

right to due process of law has been affected. His rights were further violated when he was

sentenced based upon facts not submitted to or proved beyond a reasonable doubt by a jury. The

Petitioner further moves this Court to order an evidentiary hearing on the issues raised.

In support of his motion, Petitioner provides the following statement of facts and

procedural history.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On February 16, 1991, a District of Columbia grand jury returned a nine count indictment against Petitioner and two co-defendants. The charges included: first degree murder while armed (D.C. Code §§ 22-2401 and 22-3202); assault with intent to murder while armed (D.C. Code §§ 22-503, 22-2403 and 22-3202); assault with intent to kill while armed (D.C. Code §§ 22-501 and 22-3202); three counts of carrying a pistol without a license (D.C. Code § 22-3204 (a)); and three counts of possession of a firearm during the commission of a crime of violence or dangerous offense (D.C. Code § 22-3204 (b)). The indictment did not charge conspiracy.

On October 1, 1992, Petitioner was convicted by a jury in the Superior Court of the District of Columbia, Criminal Division, for the lesser included offenses of assault with a dangerous weapon, carrying a pistol without a license, and possession of a firearm during the commission of a crime of violence or dangerous offense. The jury was unable to reach a verdict on the first-degree murder while armed charge and on October 6, 1992, the trial court declared a mistrial on that count.

On February 10, 1993, Judge Taylor sentenced Petitioner to concurrent terms of imprisonment totaling five to fifteen years, one year imprisonment for carrying a pistol without a license, and separate five to fifteen year terms of imprisonment for assault with a dangerous weapon and possession of a firearm during the commission of a crime of violence.

On June 13, 1995, Petitioner was retried for the first-degree murder while armed charge. On June 18, 1995, Petitioner was found guilty by jury on the first-degree murder while armed charge. On June 27, 1995, Judge Burnett sentenced Petitioner to twenty years to life to run consecutive to the sentence being served.

2

On July 6, 1995, Petitioner filed a timely notice of appeal. However, prior to briefing the appeal, Petitioner filed a District of Columbia postconviction motion pursuant to § 23-110, which resulted in a stay of the appeal. Petitioner raised the following issues in his § 23-110 motion:

I.    Ineffective assistance of counsel resulted in a structurally defective trial mechanism.

    A.    Counsel's deficient performance resulted in a constructive amendment of the indictment which permitted the prosecutor to effectively alter the charge against Petitioner to fit the government's proof.

    B.    The prosecutor persuaded the trial court to take action which effectively amended the indictment without meaningful opposition from the defense.

    C.    The grand jury clause limited the possible basis for Petitioner' conviction to permit jury findings solely on the elements of the crime as charged by the grand jury.

    D.    Conspiracy to commit an assault is not a lesser included offense of first-degree murder while armed.

    E.    Conspiracy is a separate and distinct statutory offense unlike aiding and abetting; conviction of a substantive crime, based on conspiracy findings requires an indicted conspiracy.

    F.    Counsel's deficient performance resulted in the government being relieved of its burden of proof.

    G.    Counsel's deficient performance deprived Petitioner of a unanimous jury verdict.

    H.    Counsel's summation was pro forma.

On October 8, 1998, the court denied Petitioner' postconviction motion without a

hearing. Petitioner filed a timely notice of appeal in the District of Columbia Court of Appeals

on October 19, 1998.

On March 26, 1999, the Court of Appeals consolidated the direct appeal, No 95-CF-912,

and the postconviction appeal, No. 98-CO-1545. The issues presented for appeal were as

follows:

I.      Whether the trial court constructively amended the indictment
which charged Petitioner with a single count of first degree murder
while armed by shooting the decedent with a pistol, and the trial
court instructed the jury to convict Petitioner if it found that he was
a member of an unchanged conspiracy to assault the decedent.

II.     Whether the trial court properly instructed the jury on vicarious
liability for co-conspirator acts where the only evidence of a
conspiracy was evidence that four assailants acted in concert in
assaulting the decedent with weapons.

III.    Whether the government was relieved of its burden of proof on the
elements of armed first degree murder by a jury instruction that
Petitioner should be convicted if the government proved he was a
member of a conspiracy to commit a simple assault against the
decedent, absent a requirement that the government prove that the
murder was committed in furtherance of the conspiracy, was within
the scope of Petitioner' agreement, and was a reasonably
foreseeable consequence of the assault.

The issues presented on postconviction appeal (No. 98-CO-1545) are as follows:

A.     Whether Petitioner was denied the effective assistance of counsel
where the government's primary theory of the case was Petitioner's
vicarious liability for acts of a co-conspirator, and counsel was
unaware of the legal and factual components of that theory until
after the evidence closed and consequently failed to prepare and
present a defense.

B.     Whether Petitioner was denied effective assistance of counsel
where counsel failed to raise an available objection under the jury

4

clause to an instruction which constructively amended the indictment.

    (1)    Whether Petitioner was denied effective assistance of counsel when counsel failed to provide the trial court with an available judicially approved instruction on vicarious liability for co-conspirators acts where the governments proposed instruction removed its burden of proof on armed first-degree murder.

    (2)    Whether Petitioner was denied effective assistance of counsel where counsels belated recognition of the governments primary theory of the case resulted in a pro forma summation that was not responsive to the governments detailed argument on it's conspiracy theory.

C.    Whether Petitioner was denied effective assistance of counsel where counsel refused a special instruction and verdict form for a uninformed, frivolous reason and the jury was instructed on three theories of liability presenting a likelihood of non-unanimity.

D.    Whether Petitioner was denied effective assistance of counsel where an expert witness' opinion that four firearms were used in the crime charged was unsupported, the evidence supported the fact that three firearms were fired, Petitioner was one of four possible assailants and claimed he did not fire a weapon, and counsel failed to challenge the experts opinion.

Both the conviction and the denial of the postconviction motion were affirmed by the District of Columbia Court of Appeals on April 13, 2000. A timely petition for a rehearing en banc was filed and that petition was denied on April 25, 2001.

A petition for certiorari to the United States Supreme Court was sought and denied on October 4, 2001. On January 31, 2002, Petitioner filed a pro se motion to recall the mandate in the Court of Appeals. This motion was subsequently denied on March 27, 2002.

On May 7, 2002, a timely pro se petition for rehearing en banc was filed and later denied by the Court of Appeals on July 24, 2002.

On August 7, 2003, Petitioner filed a timely pro se petition for writ of certiorari with the Supreme Court of the United States. This petition was later denied on October 6, 2003.

WHEREFORE, in consideration of the foregoing, Petitioner requests that this Honorable Court issue an order vacating his sentence. The Petitioner further requests an evidentiary hearing so that he can present evidence in support of these meritorious claims.

Respectfully submitted,


_____

Roy Thomas, pro se
Reg. # 11340-007
USP Big Sandy
P.O. Box 2067
Inez, KY 30315

6

## DISTRICT OF COLUMBIA SUPERIOR COURT
## CRIMINAL DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| Respondent, | * |
| v. | * |
| **ROY THOMAS** | * |
| Petitioner. | * |

CASE NOS. F-5258-96/F-5329-95

## PETITIONER'S MEMORANDUM IN SUPPORT OF MOTION FOR VACATION OF CONVICTION AND SENTENCE AND MOTION FOR EVIDENTIARY HEARING PURSUANT TO D.C. CODE § 23-110

As a matter of introduction, the Petitioner respectfully submits that the events which transpired in the instant case constitute a denial of the Petitioner's rights as guaranteed by the Sixth Amendment to the United States Constitution. His rights were violated when he was sentenced based upon facts not submitted to or proved beyond a reasonable doubt by a jury. Specifically, the existence of these violations have been clarified in the recent U.S. Supreme Court opinions Blakely v. Washington, 124 S.Ct. 2531 (2004) and United States v. Booker, 125 S.Ct. 738 (2005). Furthermore, the Petitioner contends that he is entitled to an evidentiary hearing on these issues.

## STATEMENT OF ISSUES

I.    Petitioner's sentence is illegal in violation of the Fifth and Sixth amendments to the U.S. constitution and contra to his rights to a jury trial and to be punished solely on facts proven beyond a reasonable doubt.

II.   Whether the Petitioner is entitled an evidentiary hearing to present evidence in support of the issues raised.

## STATEMENT OF JURISDICTION

Petitioner's present motion for post-conviction relief is properly before this court. Section

23-110 of the D.C. Code provides:

> A prisoner in custody under sentence of the Superior Court
> claiming the right to be released upon the ground that (1) the
> sentence was imposed in violation of the Constitution of the United
> States or the laws of the District of Columbia . . . may move the
> court to vacate, set aside, or correct the sentence.D.C. Code Ann. §
>
> 23-110(a).

The Petitioner contends that he was denied his rights to a jury trial, as guaranteed by the

Sixth Amendment to the United States Constitution, and also violative of his Fifth amendment

protections. "A convicted defendant in custody may attack his sentence on constitutional

grounds at any time by filing a motion under D.C. Code § 23-110 (1996)." Woodard v. United

States, 719 A.2d 966, 972 (D.C. 1998). Where a sentence is illegal in the sense the court goes

beyond its authority by acting without jurisdiction or imposing a sentence in excess of the

statutory maximum provided, then such sentence – because of the gravity of the error, the

unqualified deprivation of one's liberty – may be challenged at any time. Robinson v. United

States, App. D.C., 454 A.2d 810 (1982).

The Petitioner took a direct appeal of his conviction to the District of Columbia Court of

Appeals. Therefore, this motion is properly before this Court.

3

## ARGUMENT

I. **PETITIONER'S SENTENCE IS ILLEGAL IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS TO THE U.S. CONSTITUTION AND CONTRA TO HIS RIGHTS TO A JURY TRIAL AND TO BE PUNISHED SOLELY ON FACTS PROVEN BEYOND A REASONABLE DOUBT**

### A. Many Criminal Sentencing Practices Across the United States are Being Called Into Question as Possibly Violative of the U.S. Constitution

Recently, the Supreme Court has begun to realize the fundamental defects in way our justice system determines sentences for criminal defendants in a series of decisions. In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In Ring v. Arizona, 536 U.S. 584 (2002), the Supreme Court clarified and reaffirmed this rule. The Ring holding is straightforward and clear-cut: The Apprendi rule applies to any aggravating fact necessary to expose a defendant to punishment beyond an otherwise mandatory statutory limit. Id. As recently observed by the United States District Court for the district of Massachusetts regarding the Sentencing Guidelines, "the Sixth Amendment guarantee of trial by jury has been eroded as never before in the history of our nation, while the institutional judiciary complacently slips into forms of expression and modes of thought that unconsciously reinforce the Department agenda in a powerfully Orwellian way. United States v. Green, 2004 U.S.Dist. LEXIS 11292, *13 (D.Mass June 18, 2004).

After Apprendi, the various courts throughout the country assumed the term "statutory maximum" referred to in Apprendi and Ring, was the maximum sentence set forth under the statute listed in the indictment. The courts have assumed that the term "statutory maximum"

4

does not apply to the various sentencing thresholds established under the federal sentencing guidelines.

The <u>Blakely</u> decision not only clarified what was meant by the term "statutory maximum," but also calls into question the constitutionality of current sentencing practices in federal court.   The Court noted that the rule announced in <u>Apprendi</u> reflected two longstanding tenets of common-law criminal jurisprudence: "that the truth of every accusation against the defendant should afterwards be confirmed by a unanimous [jury verdict], and that an accusation which lacks any particular fact which the law makes essential to the punishment is ... no accusation within the requirements of the common law and it is no accusation in reason." (cites omit) <u>Id</u>. at *10.  The Court then noted the principle in American jurisprudence that "'every fact which is legally essential to the punishment' must be charged in the indictment and proved to a jury." <u>Id</u>.

The decision in <u>Blakely</u> was further bolstered by the recent decision issued in <u>United States v. Booker</u>, 125 S.Ct. 738 (2005).  In <u>Booker</u>, the Court ruled that the federal Sentencing Guidelines were not mandatory in issuing federal sentences, but are to be used merely as an advisory tool.  <u>Id</u>. at *7.  The decision flowed from Justice Stevens' worry that as sentencing enhancements became greater, "the jury's finding of the underlying crime became less significant." <u>Id</u>. at *33.  As such, the Sixth Amendment right to a jury trial was being usurped, requiring change in order to preserve "Sixth Amendment substance." <u>Id</u>. at *34.  Furthermore, the court again reiterated its commitment to the ideal that any fact other than a prior conviction which is necessary to support a sentence exceeding the statutory maximum authorized by the jury's finding must be proved to a jury beyond a reasonable doubt. <u>Id</u>. at *45-6.

The Petitioner submits that compliance with the Sixth Amendment requires "any fact that increases the penalty for a crime beyond the prescribed statutory maximum" to be proved beyond a reasonable doubt. Apprendi, 530 U.S. at 490. The prescribed "'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Booker, 125 S.Ct. at *45-6; Blakely, 124 S. Ct. at 2536. The jury verdict alone – or the defendant's admission alone – "must authorize the sentence." Id. Therefore, the upper bound of the appropriate guideline range, based on facts proven to a jury beyond a reasonable doubt or admitted by the defendant, establishes the relevant statutory maximum for sentencing purposes. Under the federal Sentencing Guidelines, drug amounts, enhancements based on a specific offense characteristic, and upward departures all have the same effect – namely, they all *increase* the maximum permissible sentence under the guidelines. A judge's reliance on such factors at sentencing is therefore unconstitutional.

Petitioner contends that his sentence violates the constitution in a similar regard. That is, there were facts and considerations outside of that found specifically in the jury verdict, that determined his sentence. This has resulted in a sentence that exceeds the statutory maximum as explained and elaborated on in Blakely and Booker. Therefore, Petitioner argues that his sentence must be vacated and corrected to be in compliance with the principles and black letter law encapsulated in the U.S. Constitution.

**B.    Petitioner's Sentence is Illegal Through the Extra-Verdict Determination and Discretion Used by the Sentencing Judge to Exceed Statutory Maximum**

6

As an initial matter, Petitioner recognizes that the District of Columbia Code currently

has a provision that allows consecutive sentences to be imposed under the circumstances of this

case, to wit:

> A sentence imposed on a person for conviction of an offense shall,
> unless the court imposing such sentence expressly provides
> otherwise, run consecutively to any other sentence imposed on
> such person for conviction of an offense, whether or not the
> offense (1) arises out of another transaction, or (2) arises out of the
> same transaction and requires proof of a fact which the other does
> not.

D.C. Code § 23-112.

Petitioner, however, contends that either the statute itself is unconstitutional or it is

unconstitutional as applied to him.

It is well settled that "consecutive sentences for separate crimes are normal and ordinary

in the enforcement of state and federal criminal laws. Bryant v. Civiletti, 663 F.2d 286 (D.C. Cir.

Aug. 21, 1981). However, there are exceptions to this practice, which have even been codified in

D.C. law, to wit:

> No person shall be consecutively sentenced for the same act or course of conduct
> for the following:
>
> (1)    Theft and fraud;
>
> (2)    Theft and unauthorized use of a vehicle;
>
> (3)    Theft and commercial piracy;
>
> (4)    Identity theft and theft; or
>
> (5)    Identity theft and fraud.

D.C. Code § 22-3203.

7

Further, the enactment in D.C. Code § 23-112 of a general canon of construction, which presumes multiple sentences for offenses to run consecutively unless stated to be concurrent, was not intended to alter the substantive law of murder, and to that extent premeditated murder and felony murder are not separate offenses for consecutive sentencing purposes. <u>United States v. Ammidown</u>, 497 F.2d 615 (D.C. Cir. May 10 , 1974). Therefore, the current situation in that the "trial judge [is] free to impose consecutive sentences", Petitioner argues, is violative of the constitution in light of <u>Blakely</u> and <u>Booker</u>.

A recent case in Ohio has picked up on the hazardous practice of letting a judge decide if a defendant is to serve consecutive sentences based on separate convictions. In <u>State v. Bruce</u>, 1st Dist. No. C-040421, 2005 Ohio 373, the trial court imposed a maximum sentence on the defendant, following a finding by the court that Bruce had committed the "worst form of the offense." Such a finding is required under R.C. § 2929.14(C) in order for a maximum sentence to be imposed. The court found that following <u>Booker</u>, a trial court could not impose such a sentence because the prescribed statutory maximum sentence is not "the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." <u>Bruce</u> at *P8, *quoting* <u>Blakely</u> at 2537. This left the maximum possible sentence of 9 years, the longest the court could impose without making any additional findings of acts. While Petitioner's circumstances are not a perfect analogy to Bruce's, the similarity is that the sentencing judge in Petitioner's case could have made the decision to impose the murder sentence to run concurrently with his previously imposed sentences. Needless to say, this discretion can be abused, because it is completely up to the judge whether or not to impose a consecutive sentence. *See* D.C. Code § 23-112.

8

Furthermore, just as the <u>Booker</u> court reasoned that it was the mandatory application of the United States Sentencing Commission's Guidelines or the U.S.S.G. that made it violative of the constitution, the near mandatory nature of § 23-112 is also troublesome. That is because, ordinarily a defendant could have separate sentences imposed consecutively, without the judge finding additional facts – yet if the judge chooses to, he or she could use his or her discretion to not impose the sentences consecutively. In other words, this gives the judge too much power to tack sentences on to one another or not. This could be remedied if the prosecution was to come out in the beginning of the trial that it is looking to seek consecutive sentences, and let the jury decide if such should be done. That is because, the facts that would support punishment beyond the statutory maximum of one offense by the conviction of another offense is something that must be proven beyond a reasonable doubt according to the Sixth amendment to the U.S. Constitution, as well as <u>Blakely</u> and <u>Booker</u>.

## II.    THE PETITIONER IS ENTITLED TO AN EVIDENTIARY HEARING

The Petitioner contends that he is entitled to an evidentiary hearing on the claims raised in the motion for post-conviction relief. D.C. Code § 23-110(c) provides that the trial court must promptly grant a hearing on a 23-110 motion "unless the motion and files and records of the case conclusively show the prisoner is entitled to no relief". "[A]ny question regarding the appropriateness of a hearing should be resolved in favor of holding a hearing". <u>Gillis v. United States</u>, 586 A.2d 726, 728 (D.C. 1991).

The Petitioner submits that the claims he has raised in the present petition are neither frivolous nor incredible. Also, the scope of the review necessary to resolve these issues necessarily goes beyond the record. Therefore, the Petitioner suggests that a studied examination

by this Court could best occur in an evidentiary hearing. The Petitioner requests that this Court

therefore, order an evidentiary hearing to consider the petitioner's claims for relief.

## **CONCLUSION**

In consideration of the foregoing, Petitioner has been given an illegal sentence which must be vacated and corrected, also he requests that this Honorable Court order an evidentiary hearing on the Petitioner's claims of constitutional violations, so that the Petitioner can put on evidence establishing such violations.

Respectfully submitted,

_____

Roy Thomas, pro se

11

## **VERIFICATION**

Roy Thomas, being first duly sworn, verifies that the facts stated in the foregoing motion and the attached memorandum in support are true to the best of his knowledge and belief.

_____
Roy Thomas

Pursuant to 28 U.S.C. § 1746, I, Roy Thomas, declare under the penalty of perjury that the foregoing is true and correct. Executed on this _____ day of _____ 2005.

_____
Roy Thomas

12

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was sent this ____ day of

_____, 2005, by regular U.S. mail with sufficient postage affixed to the United States

Attorney's Office, 555 4th Street, N.W., Washington, D.C. 20001.


_____

Roy Thomas, pro se

13

**Exhibit D - Petition Pursuant To 28 U.S.C. § 2241**

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY

ROY THOMAS,                          )
Reg. No. 11340-007,                  )
                                     )
    Petitioner,              )
                                     )    Case Nos. F-5258-96/F-5329-95
    v.                       )
                                     )
SUZANNE HASTINGS, WARDEN,            )
USP Big Sandy,                       )
                                     )
    Respondent.              )

## PETITION FOR HABEAS CORPUS RELIEF
## PURSUANT TO 28 U.S.C. § 2241

    Petitioner, ROY THOMAS, by and through counsel, hereby moves this Honorable Court to vacate the sentence imposed in this case, based upon violations of Thomas' rights as guaranteed by the Sixth Amendment to the United States Constitution. Also, Thomas' Fifth Amendment right to due process of law has been affected. His rights were further violated when he was sentenced based upon facts and factors not submitted to or proved beyond a reasonable doubt by a jury. See Jones v. United States, 526 U.S. 227 (1999); Apprendi v. New Jersey, 530 U.S. 466 (2000); and Ring v. Arizona, 536 U.S. 584 (2002); Blakely v. Washington, 124 S. Ct. 2531 (2004); and United States v. Booker, 125 S. Ct. 738 (2005). Thomas further moves this Court to order an evidentiary hearing on the issues raised.

    As such, his sentence is constitutionally invalid, and he should be re-sentenced without regard to those factors. Further, § 2241 is the appropriate vehicle to pursue relief in this instance pursuant to D.C. Code § 16-1901. In support thereof, Thomas states the following:

1.  On February 16, 1991, a District of Columbia grand jury returned a nine count indictment against Petitioner and two co-defendants. The charges included: first degree murder while armed (D.C. Code §§ 22-2401 and 22-3202); assault with intent to murder while armed (D.C. Code §§ 22-503, 22-2403 and 22-3202); assault with intent to kill while armed (D.C. Code §§ 22-501 and 22-3202); three counts of carrying a pistol without a license (D.C. Code § 22-3204 (a)); and three counts of possession of a firearm during the commission of a crime of violence or dangerous offense (D.C. Code § 22-3204 (b)). The indictment did not charge conspiracy.

2.  On October 1, 1992, Thomas was convicted by a jury in the Superior Court of the District of Columbia, Criminal Division, for the lesser included offenses of assault with a dangerous weapon, carrying a pistol without a license, and possession of a firearm during the commission of a crime of violence or dangerous offense. The jury was unable to reach a verdict on the first-degree murder while armed charge and on October 6, 1992, the trial court declared a mistrial on that count.

3.  On February 10, 1993, Judge Taylor sentenced Thomas to concurrent terms of imprisonment totaling five to fifteen years, one year imprisonment for carrying a pistol without a license, and separate five to fifteen year terms of imprisonment for assault with a dangerous weapon and possession of a firearm during the commission of a crime of violence.

4.  On June 13, 1995, Thomas was retried for the first-degree murder while armed charged.

5.  On June 18, 1995, Thomas was found guilty by jury on the first-degree murder while armed charge.

2

6.  On June 27, 1995, Judge Burnett sentenced Thomas to twenty years to life to run

consecutive the sentence being served.

7.  On July 6, 1995, Thomas filed a timely notice of appeal.  However, prior to briefing the

appeal, Thomas filed a District of Columbia post-conviction motion pursuant to § 23-110,

which resulted in a stay of the appeal.  Thomas raised the following issues in his § 23-110

motion:

I.    Ineffective assistance of counsel resulted in a structurally defective
trial mechanism.

    A.    Counsel's deficient performance resulted in a constructive
amendment of the indictment which permitted the prosecutor to
effectively alter the charge against Thomas to fit the government's
proof.

    B.    The prosecutor persuaded the trial court to take action which
effectively amended the indictment without meaningful opposition
from the defense.

    C.    The grand jury clause limited the possible basis for Thomas'
conviction to permit jury findings solely on the elements of the
crime as charged by the grand jury.

    D.    Conspiracy to commit an assault is not a lesser included offense of
first-degree murder while armed.

    E.    Conspiracy is a separate and distinct statutory offense unlike aiding
and abetting; conviction of a substantive crime, based on
conspiracy findings requires an indicted conspiracy.

    F.    Counsel's deficient performance resulted in the government being
relieved of its burden of proof.

    G.    Counsel's deficient performance deprived Thomas of a unanimous
jury verdict.

    H.    Counsel's summation was pro forma.

3

8.    On October 8, 1998, the court denied Thomas' post-conviction motion without a hearing. Thomas filed a timely notice of appeal in the District of Columbia Court of Appeals on October 19, 1998.

9.    On March 26, 1999, the Court of Appeals consolidated the direct appeal, No 95-CF-912, and the post-conviction appeal, No. 98-CO-1545. The issues presented for appeal were as follows:

I.    Whether the trial court constructively amended the indictment which charged Thomas with a single count of first degree murder while armed by shooting the decedent with a pistol, and the trial court instructed the jury to convict Thomas if it found that he was a member of an unchanged conspiracy to assault the decedent.

II.    Whether the trial court properly instructed the jury on vicarious liability for co-conspirator acts where the only evidence of a conspiracy was evidence that four assailants acted in concert in assaulting the decedent with weapons.

III.    Whether the government was relieved of its burden of proof on the elements of armed first degree murder by a jury instruction that Thomas should be convicted if the government proved he was a member of a conspiracy to commit a simple assault against the decedent, absent a requirement that the government prove that the murder was committed in furtherance of the conspiracy, was within the scope of Thomas' agreement, and was a reasonably foreseeable consequence of the assault.

The issues presented on post-conviction appeal (No. 98-CO-1545) are as follows:

A.    Whether Thomas was denied the effective assistance of counsel where the government's primary theory of the case was Thomas' vicarious liability for acts of a co-conspirator, and counsel was unaware of the legal and factual components of that theory until after the evidence closed and consequently failed to prepare and present a defense.

4

B.   Whether Thomas was denied effective assistance of counsel where counsel failed to raise an available objection under the jury clause to an instruction which constructively amended the indictment.

    (1).   Whether Thomas was denied effective assistance of counsel when counsel failed to provide the trial court with an available judicially approved instruction on vicarious liability for co-conspirators acts where the governments proposed instruction removed its burden of proof on armed first-degree murder.

    (2)   Whether Thomas was denied effective assistance of counsel where counsels belated recognition of the governments primary theory of the case resulted in a pro forma summation that was not responsive to the governments detailed argument on it's conspiracy theory.

C.   Whether Thomas was denied effective assistance of counsel where counsel refused a special instruction and verdict form for a uninformed, frivolous reason and the jury was instructed on three theories of liability presenting a likelihood of non-unanimity.

D.   Whether Thomas was denied effective assistance of counsel where an expert witness' opinion that four firearms were used in the crime charged was unsupported, the evidence supported the fact that three firearms were fired, Thomas was one of four possible assailants and claimed he did not fire a weapon, and counsel failed to challenge the experts opinion.

10.   Both the conviction and the denial of the post-conviction motion were affirmed by the District of Columbia Court of Appeals on April 13, 2000.

11.   A timely petition for a rehearing en banc was filed and that petition was denied on April 25, 2001.

12.   A petition for certiorari to the United States Supreme Court was sought and denied on October 4, 2001.

13.   On January 31, 2002, Thomas filed a *pro se* motion to recall the mandate in the Court of Appeals. This motion was subsequently denied on March 27, 2002.

14. On May 7, 2002, a timely pro se petition for rehearing en banc was filed and later denied by the Court of Appeals on July 24, 2002.

15. On August 7, 2003, Thomas filed a timely *pro se* petition for writ of certiorari with the Supreme Court of the United States. This petition was later denied on October 6, 2003.

16. Thomas is currently in the custody of the United States Penitentiary, Big Sandy in Inez, Kentucky. Thomas' inmate registration number is 11340-007.

WHEREFORE, in accordance with the well established constitutional principles of due process and the right to a jury trial and the Supreme Court decisions in Jones v. United States, 526 U.S. 227 (1999); Apprendi v. New Jersey, 530 U.S. 466 (2000); Ring v. Arizona, 536 U.S. 584 (2002), Blakely v. Washington, 124 S. Ct. 2531 (2004), and United States v. Booker, 125 S. Ct. 738 (2005), Thomas submits that his current confinement is illegal and he must be released from incarceration.

Respectfully submitted,

By: _____

Roy Thomas, *pro se*

6

## MEMORANDUM OF LAW IN SUPPORT

### I.    THOMAS' CLAIMS ARE PROPERLY RAISED IN A PETITION PURSUANT TO 28 U.S.C. § 2241.

Thomas' claims are properly raised through this motion pursuant to 28 U.S.C. § 2241.

Generally, a federal prisoner must file a motion pursuant to 28 U.S.C. § 2255 to challenge his

conviction or sentence. Tripati v. Henman,843 F.2d 1160, 1162 (9th Cir.) *cert. denied* 488 U.S.

982 (1988). A § 2255 motion is the appropriate remedy for violations that occur at or prior to the

time of sentencing. Id. A petition pursuant to 28 U.S.C. § 2241 is generally used to challenge

the execution of an individual's sentence. Id.; See also United States v. Mittelsteadt, 790 F.2d

39, 40-41 (7th Cir. 1986) (habeas corpus proceeding pursuant to §2241 is the proper remedy for

challenging information in the presentence investigation report).

A § 2241 petition is also appropriate if "it also appears that the remedy by [§ 2255]

motion is inadequate or ineffective to test the legality of his detention." Id.; United States v.

Pirro, 104 F.3d 297 (9th Cir. 1997) (holding that delay in considering a §2255 motion caused by a

pending appeal is not sufficient to make the §2255 inadequate or ineffective); See also

Tripati,843 F.2d at 1162-63 (finding that a § 2255 motion was not inadequate or ineffective

merely because the sentencing court denied relief on the merits); Estep v. United States, 316 F.2d

767, 769 (9th Cir. 1963)( ruling that movant's unspecified fears of unequal treatment by the

sentencing courts did not render § 2255 motion inadequate); Stirone v. Markley, 345 F.2d 473,

475 (7th Cir. 1963) (suggesting that a § 2255 remedy might be ineffective where the sentencing

court refuses to hear a § 2255 petition altogether or where the court delays in hearing the petition

inordinately).

7

Although there is no clear definition of what constitutes inadequate or ineffective, the Second Circuit held in Triestman that "inadequate or ineffective" means "at least cases where the petitioner cannot utilize § 2255 and in which failure to allow for collateral review would raise serious constitutional questions." See United States v. Triestman, 124 F.3d 361 (2nd Cir. 1997). In Triestman, the Second Circuit held that the defendant could raise a claim of actual innocence to a 924(c) charge by means of a motion pursuant to 28 U.S.C. § 2241.

Furthermore, since the instant case originates from the District of Columbia (D.C.), Thomas is using D.C. Code § 16-901 to file the instant motion. That is, the D.C. statute calls for petitions for *writ* of *habeas corpus* directed at federal officers and employees, to be filed in the United States District Court for the District of Columbia. D.C. Code § 16-901(b). However, since Thomas is in the custody of a federal prison outside of D.C., he must pursue his *habeas corpus* relief in the proper federal court in the state in which he is housed. *See* United States v. Crockett, 861 A.2d 604 (D.C. 2004). As stated, Thomas is now serving his sentence at USP Big Sandy, Inez, Kentucky, which is within the jurisdiction of the U.S. District Court, Eastern District of Kentucky.

In the instant case, Thomas has set forth issues of constitutional magnitude that raise questions about the legality of his incarceration. He argues that intervening Supreme Court decisions demonstrate that he was sentenced in excess of the statutory maximum under the Sixth Amendment. In light of these claims, 28 U.S.C. § 2255 provides an inadequate remedy for Thomas to test the legality of his detention. Accordingly, Thomas' constitutional challenges to his current confinement under § 2241 is appropriate and this Court should address the merits of his claims.

8

II.     **THOMAS' SENTENCE IS ILLEGAL IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS TO THE U.S. CONSTITUTION AND CONTRA TO HIS RIGHTS TO A JURY TRIAL AND TO BE PUNISHED SOLELY ON FACTS PROVEN BEYOND A REASONABLE DOUBT**

   A.      **Many Criminal Sentencing Practices Across the United States are Being Called Into Question as Possibly Violative of the U.S. Constitution.**

Recently, the Supreme Court has begun to realize the fundamental defects in the way our

justice system determines sentences for criminal defendants in a series of decisions. In <u>Apprendi</u>

<u>v. New Jersey</u>, 530 U.S. 466, 490 (2000), the Supreme Court held that "other than the fact of a

prior conviction, any fact that increases the penalty for crime beyond the prescribed statutory

maximum must be submitted to a jury, and proved beyond a reasonable doubt." In <u>Ring v.</u>

<u>Arizona</u>, 536 U.S. 584 (2002), the Supreme Court clarified and reaffirmed this rule. The <u>Ring</u>

holding is straightforward and clear-cut: The <u>Apprendi</u> rule applies to any aggravating fact

necessary to expose a defendant to punishment beyond an otherwise mandatory statutory limit.

<u>Id.</u> As recently observed by the United States District Court for the District of Massachusetts

regarding the Sentencing Guidelines, "the Sixth Amendment guarantee of trial by jury has been

eroded as never before in the history of our nation, while the institutional judiciary complacently

slips into forms of expression and modes of thought that unconsciously reinforce the Department

agenda in a powerfully Orwellian way. <u>United States v. Green</u>, 2004 U.S.Dist. LEXIS 11292,

*13 (D.Mass June 18, 2004).

After <u>Apprendi</u>, the various courts throughout the country assumed the term "statutory

maximum" referred to in <u>Apprendi</u> and <u>Ring</u>, was the maximum sentence set forth under the

statute listed in the indictment. The courts have assumed that the term "statutory maximum"

9

does not apply to the various sentencing thresholds established under the federal sentencing guidelines.

The Blakely decision not only clarified what was meant by the term "statutory maximum," but also calls into question the constitutionality of current sentencing practices in federal court. The Court noted that the rule announced in Apprendi reflected two longstanding tenets of common-law criminal jurisprudence: "that the truth of every accusation against the defendant should afterwards be confirmed by a unanimous [jury verdict], and that an accusation which lacks any particular fact which the law makes essential to the punishment is ... no accusation within the requirements of the common law and it is no accusation in reason." (cites omit) Id. at *10. The Court then noted the principle in American jurisprudence that "'every fact which is legally essential to the punishment' must be charged in the indictment and proved to a jury." Id.

The decision in Blakely was further bolstered by the recent decision issued in United States v. Booker, 125 S.Ct. 738 (2005). In Booker, the Court ruled that the federal Sentencing Guidelines were not mandatory in issuing federal sentences, but are to be used merely as an advisory tool. Id. at *7. The decision flowed from Justice Stevens' worry that as sentencing enhancements became greater, "the jury's finding of the underlying crime became less significant." Id. at *33. As such, the Sixth Amendment right to a jury trial was being usurped, requiring change in order to preserve "Sixth Amendment substance." Id. at *34. Furthermore, the court again reiterated its commitment to the ideal that any fact other than a prior conviction which is necessary to support a sentence exceeding the statutory maximum authorized by the jury's finding must be proved to a jury beyond a reasonable doubt. Id. at *45-6.

10

Thomas submits that compliance with the Sixth Amendment requires "any fact that increases the penalty for a crime beyond the prescribed statutory maximum" to be proved beyond a reasonable doubt. <u>Apprendi</u>, 530 U.S. at 490. The prescribed "'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." <u>Booker</u>, 125 S.Ct. at *45-6; <u>Blakely</u>, 124 S. Ct. at 2536. The jury verdict alone - or the defendant's admission alone - "must authorize the sentence." <u>Id.</u> Therefore, the upper bound of the appropriate guideline range, based on facts proven to a jury beyond a reasonable doubt or admitted by the defendant, establishes the relevant statutory maximum for sentencing purposes. Under the federal Sentencing Guidelines, drug amounts, enhancements based on a specific offense characteristic, and upward departures all have the same effect - namely, they all *increase* the maximum permissible sentence under the guidelines. A judge's reliance on such factors at sentencing is therefore unconstitutional.

Thomas contends that his sentence violates the constitution in a similar regard. That is, there were facts and considerations outside of that found specifically in the jury verdict, that determined his sentence. This has resulted in a sentence that exceeds the statutory maximum as explained and elaborated on in <u>Blakely</u> and <u>Booker</u>. Therefore, Thomas argues that his sentence must be vacated and corrected to be in compliance with the principles and black letter law encapsulated in the U.S. Constitution.

11

**B.    Thomas' Sentence is Illegal Through the Extra-Verdict Determination and Discretion Used by the Sentencing Judge to Exceed Statutory Maximum.**

As an initial matter, Thomas recognizes that the District of Columbia Code currently has a provision that allows consecutive sentences to be imposed under the circumstances of this case, to wit:

> A sentence imposed on a person for conviction of an offense shall, unless the court imposing such sentence expressly provides otherwise, run consecutively to any other sentence imposed on such person for conviction of an offense, whether or not the offense (1) arises out of another transaction, or (2) arises out of the same transaction and requires proof of a fact which the other does not.

D.C. Code § 23-112.

Thomas, however, contends that either the statute itself is unconstitutional or it is unconstitutional as applied to him.

It is well settled that "consecutive sentences for separate crimes are normal and ordinary in the enforcement of state and federal criminal laws. <u>Bryant v. Civiletti</u>, 663 F.2d 286 (D.C. Cir. Aug. 21, 1981). However, there are exceptions to this practice, which have even been codified in D.C. law, to wit:

> No person shall be consecutively sentenced for the same act or course of conduct for the following:
>
> (1)    Theft and fraud;
>
> (2)    Theft and unauthorized use of a vehicle;
>
> (3)    Theft and commercial piracy;
>
> (4)    Identity theft and theft; or
>
> (5)    Identity theft and fraud.

12

D.C. Code § 22-3203.

Further, the enactment in D.C. Code § 23-112 of a general canon of construction, which

presumes multiple sentences for offenses to run consecutively unless stated to be concurrent, was

not intended to alter the substantive law of murder, and to that extent premeditated murder and

felony murder are not separate offenses for consecutive sentencing purposes. United States v.

Ammidown, 497 F.2d 615 (D.C. Cir. May 10 , 1974). Therefore, the current situation in that the

"trial judge [is] free to impose consecutive sentences", Thomas argues, is violative of the

constitution in light of Blakely and Booker.

A recent case in Ohio has picked up on the hazardous practice of letting a judge decide if

a defendant is to serve consecutive sentences based on separate convictions. In State v. Bruce, 1st

Dist. No. C-040421, 2005 Ohio 373, the trial court imposed a maximum sentence on the

defendant, following a finding by the court that Bruce had committed the "worst form of the

offense." Such a finding is required under R.C. § 2929.14(C) in order for a maximum sentence

to be imposed. The court found that following Booker, a trial court could not impose such a

sentence because the prescribed statutory maximum sentence is not "the maximum sentence a

judge may impose after finding additional facts, but the maximum he may impose without any

additional findings." Bruce at *P8, *quoting* Blakely at 2537. This left the maximum possible

sentence of 9 years, the longest the court could impose without making any additional findings of

acts. While Thomas' circumstances are not a perfect analogy to Bruce's, the similarity resides in

that the sentencing judge in Thomas' case could have made the decision to impose the murder

sentence to run concurrently with his previously imposed sentences. Needless to say, this

13

discretion can be abused, because it is completely up to the judge whether or not to impose a consecutive sentence. *See* D.C. Code § 23-112.

Furthermore, just as the <u>Booker</u> court reasoned that it was the mandatory application of the United States Sentencing Commission's Guidelines or the U.S.S.G. that made it violative of the constitution, the near mandatory nature of § 23-112 is also troublesome. Ordinarily a defendant could have separate sentences imposed consecutively, without the judge finding additional facts – yet if the judge chooses to, he or she could use his or her discretion to not impose the sentences consecutively. In other words, this gives the judge too much power to tack sentences on to one another or not. This could be remedied if the prosecution was to come forward in the beginning of the trial stating that it is looking to seek consecutive sentences, and let the jury decide if such should be done. The facts that would support punishment beyond the statutory maximum of one offense by the conviction of another offense is something that must be proven beyond a reasonable doubt according to the Sixth amendment to the U.S. Constitution, as well as <u>Blakely</u> and <u>Booker</u>.

## CONCLUSION

In consideration of the foregoing, Petitioner Thomas prays this Court to issue an Order vacating the Petitioner's sentence and provide for re-sentencing so that the Petitioner may receive a constitutionally valid sentence.

Respectfully submitted,

_____

Roy Thomas, *pro se*

14

## **VERIFICATION**

Roy Thomas, being first duly sworn, verifies that the facts stated in the foregoing motion and the attached memorandum in support are true to the best of his knowledge and belief.

_____
Roy Thomas

Pursuant to 28 U.S.C. § 1746, I, Roy Thomas, declare under the penalty of perjury that the foregoing is true and correct. Executed on this _____ day of _____ 2005.

_____
Roy Thomas

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was sent this ____ day of _____, 2005, by regular U.S. mail with sufficient postage affixed to the United States Attorney's Office, 555 4th Street, N.W., Washington, D.C. 20001.

_____
Roy Thomas, *pro se*

15

**Exhibit E - Murray Letterhead**

LAW OFFICES

# CHARLES A. MURRAY, P.A.

27499 RIVERVIEW CENTER BLVD., SUITE 113

BONITA SPRINGS, FLORIDA 34134-4313

Licensed to Practice:

State Courts:

State of Florida
State of Maryland
District of Columbia
DC Superior Court
DC Court of Appeals

U.S. District Courts:

Northern District of Florida
Middle District of Florida
Western District of Tennessee
Eastern District of Wisconsin
Western District of Wisconsin
District of Columbia

U.S. Courts of Appeal:

First Circuit
Third Circuit
Fourth Circuit
Fifth Circuit
Sixth Circuit
Seventh Circuit
Eighth Circuit
Ninth Circuit
Tenth Circuit
Eleventh Circuit
DC Circuit

U.S. Court of Federal Claims

U.S. Supreme Court

Various Military Tribunals

Memberships:

National Association of
Criminal Defense Lawyers

Academy of Florida
Trial Lawyers

Association of Trial Lawyers
of America

Association of Federal
Defense Attorneys

Education:

B.S. - U.S.M.A. 1962
J.D. - U. Maryland 1971
M.A. - C.M.U. 1978

Telephones 239-649-7773 & 866-349-7486 / Facsimile 239-262-3517
E-mail: Charles@CAMurrayLaw.com

**Exhibit F - Murray Victory List**

## CHARLES A. MURRAY, P.A.
## LIST OF RECENT VICTORIES @ 11/08/07

| | | |
|---|---|---|
| Florida v. Rende<br>20th Judicial Circuit<br>03-3236-CF | 2 Felony Counts - (1) Sexual Battery w/Deadly Weapon or Great Force; and (2) Aggravated Assault w/Deadly Weapon | Dismissed |
| Florida v. Cohen<br>20th Judicial Circuit<br>02-2726-MMA | Charged with possession of marijuana after being improperly stopped for illegal window tinting. | Dismissed |
| Florida v. Spencer<br>20th Judicial Circuit<br>02-2868-CFA | 1 Felony Charge of Driving While License Suspended or Revoked and Causing Serious Bodily Injury (in this case death). | Dismissed |
| Florida v. Moody<br>12th Judicial Circuit<br>97-4429T | Defendant received lifetime suspension of his driver's license after third DUI | On 5/12/06 reduced to 10 years suspension (1998 to 2008). Defendant eligible for a business exception license for the remaining 2 years of suspension. |
| Florida v. Noto<br>20th Judicial Circuit<br>05-596-CP(HDH) | Defendant faced indefinite term of incarceration after serving his sentence under the provisions of the Jimmy Ryce Act (for sexual offenders and/or predators) | After one (1) week of trial, State agreed to a settlement that immediately released Defendant. |
| Florida v. Krimmel<br>20th Judicial Circuit<br>03-152-CFA | 32 felony counts including Directing or Promoting a Sexual Performance of a Child and Possession of Photos Depicting Sexual Conduct by a Child. | Pled no contest to a lesser included charge of contributing to the delinquency of a minor; adjudication withheld; credit for one day time served; no probation. |
| US v. Roffman<br>USDC WD of MO<br>4:00-CF-00469 | 42 felony counts of Conspiracy to Defraud the United States (Medicare Fraud); According to US Attorney he was facing 105 years if convicted on all counts. | Pled guilty to 1 count; 41 counts dismissed; Sentenced to 29 months. |
| US v. Dailey<br>USDC SD of FL<br>01-6140-CR | 16 felony counts of bankruptcy fraud. | Pled guilty to 1 count; Sentenced to three years supervised release w/ the first year under home confinement. |
| DC v. Bates<br>97-CF-1896<br>01-CO-1373<br>02-CO-839 | Direct appeal of 1st degree murder conviction. Defendant was serving a life sentence without the possibility of parole. | Court of appeals vacated the order denying motion for new trial and remanded to the trial court for further proceedings. |

| | | |
|---|---|---|
| Virginia v. Tillery<br>Circuit Court of<br>Suffolk County<br>CR-00F00-236, 237,<br>239, 240, 304, 305,<br>306 & 307 | Habeas Corpus Petition - Defendant alleged that he was wrongly deprived of his right to appeal to the Supreme Court of the Commonwealth of Virginia. | Right to appeal was reinstated. |
| US v. Horne<br>USDC MD of PA<br>1:CR-00-274-01 | Defendant faced a 70 month prison sentence. | Sentence reduced to 46 months, with credit for time served in both the state and federal prison systems, resulting in a 5 month sentence. |
| Maine v. Curtis<br>Superior Court of<br>Franklin County<br>FARSC-CR-2003-00080 | Defendant was serving a 7 year sentence for a state conviction which was to be followed by additional time for a federal conviction. | Federal and state sentences will now be served concurrently rather than consecutively. |
| NC v. McKenzie<br>7th DCA from<br>Edgecombe County<br>97-CRS 8598, 8600,<br>8601, 8602 & 8603 | Petition for Writ of Certiorari re: Denial of Motion for Appropriate Relief | Writ was granted and the case remanded for an evidentiary hearing. |
| US v. Sineriz<br>USDC MD of FL<br>97-CR-79-ALL | 6 felony counts of wire fraud.<br>Tried before a jury. | Acquitted. |
| Florida v. Strom | 17 felony counts - RICO, wire fraud, mail fraud and money laundering.  Tried before a jury. | Acquitted. |
| Florida v. Rios<br>7th Judicial Circuit<br>Putnam County<br>97-1631-CF-52 | Defendant was serving a <u>life sentence without the possibility of parole</u>. | Judgment & Sentence vacated.  Remanded for new trial. *Ultimately negotiated by local counsel to 10 years in lieu of a new trial. |
| USA v. Gallimore | Defendant was sentenced as a career offender based upon two prior state court convictions. | Brought motion to vacate underlying conviction in state court.  State conviction vacated and case nolle prossed. |
| US v. Gallimore<br>US Court of Appeals<br>Eleventh Circuit<br>04-12457 | Defendant faced 360 months federal prison sentence. | Sentence was vacated and remanded for resentencing. |

| | | |
|---|---|---|
| US v. Brinson<br>US Court of Appeals<br>Eleventh Circuit<br>04-16178 | Defendant faced 360 months federal prison sentence. | Sentence was vacated and remanded for re-sentencing. |
| State of Florida v Christensen<br>12th Judicial Circuit<br>06-003279CF | 4 Felony Counts –<br>(1) Trafficking in Heroin (4 grams or more)<br>(2) Possession of Controlled Substance<br>(3) Possession of Controlled Substance<br>(4) Possession of Prescription Drug without Prescription | Dismissed |
| State of Florida v Kupetz<br>12th Judicial Circuit<br>07-000693CF | Felony Driving While License Suspended/Revoked Third Degree Felony | Insufficient Evidence to prove beyond reasonable doubt. No charge filed. |
| U.S.A. v. Brooks<br>11th Circuit Court of Appeals<br>2:06-cr-126-FtM | Count Two:<br>Possession with intent to distribute and distribution of fifty grams or more of cocaine base "Crack" cocaine | Reduced sentence of 140 Months below PSI Guidelines of 188 to 235 Months. |
| U.S.A. v. Bekic<br>06:20439-MA<br>US District Ct.<br>WD of Tenn. | Counts One through Four:<br>Transportation of Child Pornography and Aiding and Abetting | Reduced sentence of 60 Months below PSI Guidelines of a possible 180 Months. |

**The hiring of a lawyer is an important decision that should not be based solely upon advertisement.**
**Feel free to ask us about our qualifications and experience.**